XAVIER BECERRA
Attorney General of California
EDWARD OCHOA
Supervising Deputy Attorney General
DENNIS A. RAGEN, State Bar No. 106468
Deputy Attorney General
  600 West Broadway Suite 1800
  P.O. Box 85266
  San Diego, CA  92186-5266
  Telephone: (619) 738-9345
  Fax: (619) 645-2012
  E-mail:  Dennis.Ragen@doj.ca.gov
*Attorneys for Plaintiff State of California,*
*ex. rel. California Department of Health*
*Service, Hazardous Substance Account, and*
*Hazardous Substance Cleanup Fund*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA, et al.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**SHELL OIL COMPANY, et al.,**<br><br>Defendants | CASE NO. CV 91-00589 VAP<br><br>**JOINT STATUS REPORT**<br><br>Courtroom:  Spring Street 14<br>Judge:  Hon. Virginia A. Phillips |

## INTRODUCTION

The Parties present this Joint Status Report to update the court on the decision of the Federal Circuit in *Shell Oil Co. v. United States*, 896 F.3d. 1299 (Fed. Cir. 2018), which directly affects the present case, and to inform the Court that the Parties are in the process of discussing settlement.  The issues before this Court involve claims by the United States and the State of California against the Oil Companies for recovery of response costs pursuant to the Comprehensive

Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., at the McColl Superfund Site in Fullerton, California ("McColl Site" or "Site"), as detailed in the Parties' Joint Status Report filed on December 6, 2013 (Docket No. 630) and attached hereto as Exhibit A ("2013 Joint Status Report"). The present Joint Status Report: (1) summarizes relevant events that have occurred since the 2013 Joint Status Report was filed; (2) informs the Court of upcoming settlement discussions among the Parties; and (3) suggests that the Court set a Status Conference after receiving a report, to be filed no later than June 10, 2019, regarding the results of those negotiations.

## PARTIES

The two plaintiffs in this action to recover environmental cleanup costs are: (1) the United States of America ("United States"); and (2) the State of California, ex rel. California Department of Health Services, Hazardous Substance Account, and Hazardous Substance Cleanup Fund ("State"). The four defendants are: (1) Shell Oil Company; (2) Union Oil Company of California; (3) Atlantic Richfield Company; and (4) Texaco, Inc. (the "Oil Companies").

## SUMMARY OF LITIGATION AND REMAINING CLAIMS

### I.    CASE HISTORY SINCE THE 2013 JOINT STATUS REPORT

At the time of the 2013 Joint Status Report, the United States and the Oil Companies had briefed an appeal before the Federal Circuit Court of Appeals regarding the Court of Federal Claims' grant of summary judgment to the United States regarding the Oil Companies' contract-based claims. The Federal Circuit reversed the grant of summary judgment and remanded the case to the Court of Federal Claims for further proceedings "regarding what portion of the non-benzol waste . . . was created 'by reason of the avgas program.'" *Shell Oil Co. v. United States*, 751 F.3d 1282, 1302 (Fed. Cir. 2014) (internal quotes and citations omitted).

The Court of Federal Claims ultimately awarded the Oil Companies $99.5 million in past costs and interest incurred through November 30, 2015.  *Shell Oil Co. v. United States*, 130 Fed. Cl. 8 (Fed. Cl. 2017).  The United States appealed the decision, and the Federal Circuit affirmed the Court of Federal Claims, holding that the United States is "liable for all of the Oil Companies' clean-up costs for non-benzol waste at the McColl Site" pursuant to the indemnification provisions of the avgas contracts between the United States and the Oil Companies.  *Shell*, 896 F.3d at 1306.

On September 11, 2018, the Mandate was entered in the Court of Federal Claims pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure. (Docket No. 232, Federal Court of Claims, <u>Shell Oil Co., at al. v. United States</u> (Consl. Ct. No. 06-141 C).)  The United States did not seek review in the Supreme Court of the United States, the time for seeking review has now expired, and the judgment is accordingly final.  The Defendants' contract case is thus concluded.

On September 19, 2017, the State resolved its CERCLA cost recovery claim against the United States, in its capacity as a liable party for the 6.25 percent of the State's response costs related to the Site that is attributable to benzol waste, for the period of July 2011 through June 2016, with the entry of another Partial Consent Decree (Docket No. 635).

## II.    REMAINING CLAIMS

The only claims pending in this case are Plaintiffs' claims for CERCLA response costs, consisting of: (1) the United States' claim for environmental response costs incurred generally between July 1, 1990 and July 31, 2018, plus related prejudgment interest, in an amount that the United States estimates to total approximately $45.7 million; and (2) the State's claim for environmental response costs incurred generally between October 1990 and June 30, 2018, plus related prejudgment interest.  As noted above, the State has settled with the United States

1   for the 6.25 percent of the State's claim for costs incurred between October 1990

2   through June 2016 that were attributable to benzol waste.  The State's claims for the

3   remainder of its costs have been stayed for more than a decade, pending the

4   outcome of the litigation between the Oil Companies and the United States in the

5   Federal Circuit.  Given the passage of time, Plaintiffs intend to append their

6   additional costs and interest incurred, and the State intends to credit any payments

7   that may have been received.  Plaintiffs estimate that this updated accounting will

8   be completed within the next thirty days.

9   **III.   PROPOSAL FOR TIMING OF SETTLEMENT DISCUSSIONS AND SECOND
            STATUS REPORT**

10           Although Sections III through V of the 2013 Joint Status Report remain

11  informative of the Parties' various perspectives on the history of the case, the

12  question whether to stay proceedings in this Court until the Court of Federal Claims

13  action is now moot.  The Parties agree that it is in their interests and in the

14  interest of judicial economy that they discuss a potential settlement that could

15  resolve the Plaintiffs' remaining claims in this case.  The Parties further agree that it

16  is appropriate for the stay to remain in place to allow settlement discussions to

17  proceed.  However, in the event the Parties are unable to reach a settlement of the

18  Plaintiffs' claims for response costs by May 25, 2019, the Parties will notify the

19  Court by filing an updated Joint Status Report no later than June 10, 2019 and

20  request that a status conference with the Court be conducted at the Court's earliest

21  convenience.  If the Court wishes to hold a status conference before June 10, 2019,

22  the Parties will be prepared to attend such a conference and to answer any questions

23  the Court may have.

24

25

26

27

28

1    Dated:  March 4, 2019                         Respectfully submitted,

2                                              XAVIER BECERRA

3                                              Attorney General of California

/s/ Dennis A. Ragen

4

5                                              DENNIS A. RAGEN

                                              Deputy Attorney General

6                                              *Attorneys for Plaintiff State of California*

7

8    Dated:  March 4, 2019                         PLAINTIFF UNITED STATES OF AMERICA

9

10                                              /s/ William A Weinischke

11                                            WILLIAM A. WEINISCHKE

                                            Senior Trial Attorney

12                                            Environmental Enforcement Section

                                            Environment and Natural Resources Division

13                                            United States Department of Justice

14                                            Counsel for the United States

15

16    Dated:  March 4, 2019                         DEFENDANTS SHELL OIL COMPANY, UNION OIL COMPANY OF CALIFORNIA, ATLANTIC RICHFIELD COMPANY AND TEXACO, INC.

17

18

19                                            /s/ Greg A. Christianson

20                                            GREG A. CHRISTIANSON, ESQ.

                                            Morgan Lewis & Bockius LLP

21                                            Counsel for Shell Oil Company, Union Oil Company of California, Atlantic Richfield Company and Texaco, Inc.

22

23

24

25

26

27

28

EXHIBIT A

Kamala D. Harris
Attorney General of California
TIMOTHY R. PATTERSON
Supervising Deputy Attorney General
State Bar No. 72209
 110 West A Street, Suite 1100
San Diego, CA 92101
P.O. Box 85266
San Diego, CA 92186-5266
Telephone: (619) 645-2013
Fax: (619) 645-2012
E-mail: Tim.Patterson@doj.ca.gov
*Attorneys for Plaintiff State of California,*
*ex. rel. California Department of Health Service,*
*Hazardous Substance Account, and Hazardous*
*Substance Cleanup Fund*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DISTRICT

| | |
|---|---|
| **UNITED STATES OF AMERICA, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**SHELL OIL COMPANY, et al.,**<br><br>Defendants. | CASE NO. CV 91-00589 BRO<br><br>**JOINT STATUS REPORT**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: Spring Street 14<br>Judge: Hon. Beverly Reid O'Connell |

## INTRODUCTION

This case was reassigned to the Honorable Beverly Reid O'Connell on November 21, 2013. The parties submit this joint report pursuant to the Court's order of November 22, 2013, which requires a Joint Status Report "as to any remaining claims and/or parties in this action."

1

**PARTIES**

The two plaintiffs in this action to recover environmental cleanup costs are (1) the United States of America ("United States") and (2) the State of California, *ex rel.* California Department of Health Services, Hazardous Account, and Hazardous Substance Cleanup Fund ("State"). The four remaining defendants are (1) Shell Oil Company, (2) Union Oil Company of California, (3) Atlantic Richfield Company and (4) Texaco, Inc. (collectively, the "Oil Companies").

**SUMMARY OF LITIGATION AND REMAINING CLAIMS**

**I.   CASE HISTORY**

The McColl Superfund Site ("McColl Site") is located in Fullerton, California. During World War II, the real property that now comprises the McColl Site received oil refinery wastes generated by the Oil Companies in the production of civilian petroleum products and military petroleum products, including high-octane aviation fuel ("avgas") manufactured for the United States. In the 1980's and thereafter, the United States, the State and the Oil Companies incurred costs addressing the investigation and cleanup of the acid sludge and other hazardous substances at the McColl Site. A long-term remedy was selected and implemented during 1995-1997, involving a capping and containment of the hazardous substances, plus a perpetual gas collection and treatment system and groundwater monitoring. The Oil Companies subsequently preformed the remedy at the Site. Costs continue to be incurred by the United States, the State and the Oil Companies in relation to the ongoing implementation of the remedy.

In 1991, the United States and the State (collectively, "government plaintiffs") filed suit against the Oil Companies (and other entities that have settled out of the case), to recover the government plaintiffs' respective environmental response costs related to McColl Site, pursuant to the Comprehensive Environmental, Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601, et seq. Also in 1991, the Oil Companies counterclaimed against the United States.

1       In 1993, the Court granted the government plaintiffs' Motions for Summary

2    Judgment, holding the Oil Companies jointly and severally liable under CERCLA,

3    42 U.S.C. § 9607(a), for environmental response costs related to contamination at

4    the McColl Site, in *United States of America, et al. v. Shell Oil Company, et al.*,

5    841 F. Supp. 962 (C.D. Cal. 1993).  The United States Court of Appeals for the

6    Ninth Circuit affirmed this judgment on June 28, 2002.  (Docket No. 505.)

7       On December 12, 1994, the Court entered a consent decree entitled "Partial

8    Consent Decree Among Plaintiffs and Oil Company Defendants Regarding Certain

9    Cost Claims and Order" ("1994 Consent Decree").  (Docket No. 270).  Pursuant to

10   the 1994 Consent Decree, the Oil Companies paid $13,248,000.00 to resolve the

11   United States' claim for "Past United States Response Costs," and $4,752,000.00 to

12   resolve the State's claim for "Past State Response Costs," which generally

13   consisted of costs incurred by the United States and the State during the 1980's and

14   a portion of 1990.  In Section VII of the 1994 Consent Decree, the parties to the

15   decree acknowledged that the Court's September 28, 1993, judgment and order

16   constituted a declaratory judgment pursuant to Section 113(g)(2) of CERCLA in

17   favor of the United States and the State against the Oil Companies for "Ongoing

18   Response Costs," as defined in the 1994 Consent Decree.  The parties further

19   acknowledged in the 1994 Consent Decree the rights of the United States and the

20   State to seek to recover these Ongoing Response Costs in this case and the rights of

21   the Oil Companies to challenge such costs.  1994 Consent Decree, pp. 6, 13.

22   However, the parties also agreed that "[n]o such final judgment shall be entered

23   against the [Oil Companies] prior to entry of judgment on the counterclaims

24   asserted by these defendants in this action."  *Id.* at ¶ 14.

25      On September 18, 1995, the Court adjudged the United States, in its capacity

26   as a counterclaim defendant, to be a liable party with respect to the McColl Site

27   pursuant to Section  107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).  (Docket No.

28   379.)

1      On August 11, 1998, the Court issued a Memorandum and Order finding the

2  United States to be responsible for 100 percent of the response costs incurred by the

3  government plaintiffs in relation the McColl Site. (Docket No. 478.)

4      A stipulated Final Judgment Pursuant to Rule 54(b) FRCP was entered on

5  October 13, 1999, allowing the CERCLA liability issues of the Oil Companies and

6  the United States to be appealed. (Docket No. 489.)

7      On June 28, 2002, the United States Court of Appeals for the Ninth Circuit

8  affirmed this judgment with respect to the liability of the Oil Companies for

9  CERCLA response costs related to the McColl Site and also the liability of the

10  United States with respect to wastes at the McColl Site resulting from the

11  production of benzol. The Court also ruled that United States was not liable under

12  CERCLA as an arranger for disposal of the non-benzol wastes, and therefore the

13  trial court's allocation of 100 percent of the liability for all such wastes at the site

14  was moot. *United States, et al. v. Shell Oil Company, et al.*, 294 F.3d 1045, 1048-

15  1049, 1059-1061 (9th Cir. 2002). Two petitions for certiorari subsequently filed by

16  the Oil Companies were denied by the Supreme Court of the United States on

17  January 13, 2003.

18      In August 2003, to resolve the Oil Companies' CERCLA-based counterclaims

19  against the United States, the Oil Companies and the United States stipulated that

20  the United States' share of legal responsibility under CERCLA for response costs

21  related to the McColl Site, based on the United States' liability pursuant to

22  CERCLA for the benzol wastes deposited at the Site, is 6.25%. Joint Request For

23  Status Conference (Aug. 12, 2003) at 1-2, n. 1 (Docket No. 507). On October 29,

24  2003, this Court denied the request of the Oil Companies to conduct further

25  allocation proceedings regarding the non-benzol wastes at the Site and associated

26  response costs (Docket No. 510).

27      As a result of the stipulation and the Court's ruling described above, the Oil

28  Companies are legally responsible under CERCLA for 93.75 percent of the

1   response costs incurred by the United States and the State in relation to the McColl

2   Site. With respect to the costs previously resolved pursuant to the 1994 Consent

3   Decree, the United States is responsible under CERCLA for reimbursing the Oil

4   Companies for the United States' 6.25 percent share of the costs paid by the Oil

5   Companies to the State pursuant to the 1994 Consent Decree.

6   On April 8, 2005, pursuant to the Court's Amended Order to Transfer Certain

7   Counterclaims to the Court of Federal Claims, all remaining counterclaims filed by

8   the Oil Companies against the United States were dismissed or transferred to the

9   Court of Federal Claims. (Docket No. 529.)

10   During February 2006, the United States and the State each filed motions for

11   summary judgment for their respective CERCLA response costs incurred generally

12   from mid-1990 through June 1994. The Oil Companies filed an ex parte

13   application to deny or stay the motions on February 22, 2006. The Hon. Robert J.

14   Kelleher issued a Minute Order on March 20, 2006, finding that "the Motions for

15   Summary Judgment are appropriate for decision without oral argument." The

16   motions were deemed submitted and the hearing date was vacated. (Docket No.

17   583.)

18   The United States, the State and the Oil Companies filed a Joint Request for

19   Decisions on Submitted Motions for Summary Judgment on December 5, 2006.

20   (Docket No. 593.) On January 31, 2007, the parties filed a Joint Request to Chief

21   Judge to Establish an Intended Decision Date Pursuant to L.R. 83-9.4. (Docket No.

22   594.) On May 21, 2007, Chief Judge Stotler issued an Order Establishing an

23   Intended Decision Date, which required a decision to be rendered on the plaintiffs'

24   summary judgment motions no later than 120 days after the decision by the Court

25   of Federal Claims, in Washington, D.C., on certain dispositive motions in that court

26   (i.e., the Oil Companies' motion for summary judgment and the United States'

27   motion to dismiss) becomes final. (Docket No. 598.) On June 26, 2007, the State

28   filed a Motion for Modification of Intended Decision Date and the United States

5

1  filed a Motion for Reconsideration of Intended Decision Date on June 27, 2007.

2  The Oil Companies opposed the motions. (Docket Nos. 599, 600, 604.)

3       Chief Judge Stotler issued a Tentative Ruling on Law & Motion Matters on

4  August 31, 2007, stating the Chief Judge will consult with the judge assigned to the

5  summary judgment motions. (Docket No. 608.)

6       On October 1, 2007, Judge Kelleher issued a Minute Order vacating the

7  Court's order of submission dated March 20, 2006, stating that the Court had

8  signed the Oil Companies' Proposed Order Granting Defendants' Ex Parte

9  Application for an Order Denying Without Prejudice Plaintiffs' Premature Motions

10  for Summary Judgment. This order denied the United States' and the State's

11  motions for summary judgment without prejudice and further provided that "No

12  party to this action shall file any dispositive motions, including motions for

13  summary judgment, until further order of the Court, which order may be requested

14  by any party by noticed motion." (Docket No. 610.) Chief Judge Stotler took

15  judicial notice of this order and, on October 4, 2007, denied as moot the

16  government plaintiffs' motions for modification and reconsideration. (Docket No.

17  611.)

18       On July 10, 2009, the State resolved its CERCLA cost recovery claim against

19  the United States, in its capacity as a liable party for 6.25 percent of the State's

20  response costs related to the McColl Site, for the period of October 1990 through

21  June 2008, with the entry of a Partial Consent Decree. (Docket No. 619.) The

22  alleged liability of the Oil Companies for 93.75 percent of the State's response

23  costs for this time period was not resolved.

24       On March 16, 2012, the State resolved its CERCLA cost recovery claim

25  against the United States, in its capacity as a liable party for 6.25 percent of the

26  State's response costs related to the McColl Site, for the period of July 2008

27  through June 2011, with the entry of another Partial Consent Decree. (Docket No.

28

1    622.) The alleged liability of the Oil Companies for 93.75 percent of the State's

2    response costs for this time period was not resolved.

3         In Washington, D.C., the Oil Companies' non-CERCLA, contract-based

4    claims against the United States concerning the production of avgas have been

5    litigated since 2005 in both the Court of Federal Claims and the United States Court

6    of Appeals for the Federal Circuit. In those proceedings, the Oil Companies have

7    sought in excess of $84 million in alleged costs and interest from the United States.

8    In 2008 and 2009, Senior Judge Smith of the Court of Federal Claims issued final

9    decisions in favor of the Oil Companies as to both liability and damages. *See Shell*

10   *Oil Company, et al. v. United States*, 80 Fed. Cl. 411 (Fed. Cl. 2008); 86 Fed. Cl.

11   470, 475 (2009). Subsequently, however, Judge Smith discovered and informed the

12   parties that his wife owned a small amount of stock in a parent company of two of

13   the Oil Companies. On the United States' motion, the United States Court of

14   Appeals for the Federal Circuit vacated these judgments and required Judge Smith

15   to recuse himself from the case. *Shell Oil Company, et al. v. United States*, 672

16   F.3d 1283 (Fed. Cir. 2012). On January 14, 2013, a different Court of Federal

17   Claims judge, Judge Wheeler, granted summary judgment for the United States.

18   *Shell Oil Company, et al. v. United States*, 108 Fed. Cl. 422 (2013). The Oil

19   Companies have appealed that decision to the United States Court of Appeals for

20   the Federal Circuit. Briefing in that appeal, *Shell Oil Company, et al. v. United*

21   *States*, Case No. 2013-5051, is now complete and the matter is set for oral

22   argument on January 7, 2014.

23   **II.   REMAINING CLAIMS**

24        The remaining claims in this case consist of (1) the United States' claim under

25   CERCLA for environmental response costs incurred generally between July 1,

26   1990 and June 30, 2012, plus related prejudgment interest, in an amount that the

27   United States alleges totals approximately $43 million and (2) the State's claim

28   under CERCLA for environmental response costs incurred generally between

1    October 1990 and the June 30, 2013, plus related prejudgment interest, in an

2    amount that the State alleges totals approximately $5.7 to $6 million. As noted

3    above, the State has settled with the United States for 6.25 percent of the State's

4    claim for costs incurred between October 1990 through June 2011.

5    **III. GOVERNMENT PLAINTIFFS' STATEMENT**

6       **A.   This Case Has Been Delayed Too Long**

7       The key question for the Court to resolve at this juncture is whether the United

8    States and the State can proceed with their outstanding cost recovery claims in this

9    case, while the Oil Companies' contract-related claims against the United States are

10   pending in the United States Court of Appeals for the Federal Circuit in

11   Washington, D.C. The United States and the State wish to proceed; the Oil

12   Companies do not.

13      The Oil Companies' contract-based counterclaims that were transferred away

14   from this case to the Court of Federal Claims over eight years ago, in April 2005,

15   are still being litigated, currently in the Federal Circuit Court of Appeals. There is

16   no well-defined time frame for that separate litigation to end. It is no longer

17   reasonable to prevent the United States and the State from pursuing their cost

18   claims in this case, due to that separate non-CERCLA litigation, especially in light

19   of the fact that on several occasions throughout the long history of this case this

20   Court has recognized the government plaintiffs' unfettered rights to proceed to

21   judgment, notwithstanding the Oil Companies' breach of contract counterclaims, as

22   described below.

23      **B.   When the Court Granted Summary Judgment for the Plaintiffs
         in 1993, It Recognized Congress' Intent to Allow Government
24       Plaintiffs to Recover Their Costs While Counterclaims Are
         Pending**
25

26      The law of CERCLA, including the law of this case, provides for the

27   resolution of government cost recovery claims before counterclaims are resolved.

28

8

1    When granting summary judgment to the United States and the State in 1993, the

2    Court stated:

3         CERCLA clearly provides that cost recovery claims can be sought

4         before counterclaims are resolved.  And the legislative history of

5         CERCLA indicates that Congress intended for the Governments to be

6         entitled to its costs prior to the resolution of any counterclaims or cross-

7         claims for contribution.

8    *United States v. Shell Oil Co.*, 841 F.Supp. 962, 975 (C.D. Cal. 1993.)

9    This Court further stated:

10        The possibility of partial liability on the part of the governments

11        ought not to stand as a bar to expeditious recovery of response costs, as

12        Defendants will be reimbursed in the event the governments are found

13        liable.  *U.S.  v. Western Processing Company*, 748 F.Supp. 930, 939-40

14        (W.D. Wash. 1990).  The Court is of the opinion that allowing the

15        governments to recover their response costs before resolving Defendants'

16        counterclaims and cross-claims will not unduly prejudice Defendants as

17        they will be reimbursed in the future for any costs paid to the Superfund

18        that are properly attributable to other parties.  *Id.*

19   These explicit rulings are inconsistent with the delay of this litigation that has

20   been in effect since 2007, when the plaintiffs' motions for summary judgment to

21   recover costs incurred from 1990 forward were dismissed without reaching the

22   merits of the motions.

23   **C.    The 1994 Consent Decree Allows the United States and the State**
            **to Recover Their Ongoing Response Costs**
24

25   Ever since December 1994, when this Court approved the 1994 Consent

26   Decree and declared that its Judgment and Order of September 28, 1993, constitutes

27   a declaratory judgment for "Ongoing Response Costs," this Court has recognized

28   the rights of the United States and the  State to pursue their response costs.  1994

1   Consent Decree) ¶ 10, p. 13.(Docket No. 270.)  Paragraph 19 of the 1994 Consent

2   Decree provides: "Settling Defendants likewise agree they will not seek to stay or

3   otherwise delay the supplemental response cost claim and further agree that the

4   supplemental claim may proceed simultaneously with the counterclaims."  1994

5   Consent Decree ¶ 19, p. 19, l. 22-26.  Nevertheless, since 2006 the Oil Companies

6   have continued to attempt to do exactly the opposite.

7        When the United States and the State respectively moved for summary

8   judgment in 2006, they were not acting in contravention of Paragraph 14 of the

9   1994 Consent Decree (Docket No. 270, p. 16, lines 14-19), as the Oil Companies

10  assert, because they were not seeking a final judgment to terminate all of their

11  claims for cost recovery in the District Court.  Instead, the government plaintiffs

12  were seeking summary judgments for specific sets of their respective response costs

13  incurred up through June 2004.   Additional United States and State response costs

14  had been – and still are being -- incurred and the government plaintiffs have the

15  right to seek them as Ongoing Response Costs pursuant to the 1994 Consent Decree.

16       Any continued delay is wholly unwarranted, especially in light of the

17  overarching reservation of rights the government plaintiffs included in Paragraph

18  12 of the 1994 Consent Decree, which provides:  "The United States and State

19  reserve, and this Consent Decree is without prejudice to, all rights against Settling

20  Defendants with respect to all other matters, including, but limited to: . . . liability

21  for Ongoing Response Costs; . . . ."  (1994 Consent Decree ¶ 12, p. 14), l. 20-23; p.

22  15, l. 10.)

23       In summary, Paragraphs 19 and 12 of the 1994 Consent Decree establish the

24  rights of the United States and the State to proceed with their unresolved claims for

25  response costs.  Now is the time to move this case forward.

26

27

28

**D. The 1999 Final Judgment Continues to Recognize the Government Plaintiffs' Rights to Obtain Judgments for Their Costs**

The stipulated Final Judgment Pursuant to Rule 54(b) FRCP entered on October 13, 1999, contains a recital approved by the Oil Companies stating "the parties agree that Plaintiffs [the United States and the State] *retain all of their rights to pursue their claims for response costs to judgment in this Court, . . . .*" Final Judgment Pursuant to Rule 54(b) FRCP, p. 4, , l. 1-3 (emphasis added). (Docket No. 489.)  It is improper for the Oil Companies to attempt to argue away a provision to which they fully agreed, nearly five years after entry of the 1994 Consent Decree, and which the Court adopted in the form of a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.  During 1999, the government plaintiffs included this specific provision in the final judgment to ensure that their rights to pursue their respective ongoing response costs, as recognized in the 1994 Consent Decree, remained in full force and effect after entry of a final judgment on other issues.  The judgment has not been amended or abrogated in any way since 1999.

**E. The Oil Companies Breach of Contract Counterclaims Were Removed from this Case in April 2005**

This Court no longer possesses jurisdiction over any of the counterclaims filed by the Oil Companies against the United States. On April 8, 2005, all remaining counterclaims were dismissed or transferred to the Court of Federal Claims by the Court's Amended Order to Transfer Certain Counterclaims to the Court of Federal Claims. (Docket No. 529, p. 2.)  The transfer was unequivocal, with no conditions connecting this case to any proceeding in Washington, D.C., much less delaying this case in any way.  Therefore, there is no basis for binding the United States and the State, as plaintiffs in a CERCLA cost recovery case pending in the U.S. District Court in Los Angeles, to an entirely separate breach of contract lawsuit the Oil Companies are pursuing against the United States.  Ever since December 1994, the

11

1   Oil Companies have been liable to the United States and the State for Ongoing

2   Response Costs, subject to the liability stipulation between the United States and

3   the Oil Companies entered into in August 2003. (Docket No. 507.)  The Oil

4   Companies will remain liable for Ongoing Response Costs until all such claims of

5   the government plaintiffs are settled or adjudicated.  Therefore, this Court should

6   not allow the mere existence of the Oil Companies' unresolved litigation in the

7   Court of Federal Claims and the Court of Appeals for the Federal Circuit, over

8   which this Court has no jurisdiction, to serve as road block to the United States'

9   and the State's legitimate pursuit of their outstanding environmental response costs.

10  **F.   Indemnification Rights, If Any Exist, Are Legally Irrelevant to**
    **the Oil Companies' CERCLA Liability**

11

12  The basic contention of the Oil Companies has been that a ruling against the

13  United States in the contract claim litigation occurring in the Court of Appeals for

14  the Federal Circuit could effectively moot this action.  This is legally incorrect.

15  The Oil Companies have been found to be liable under the Comprehensive

16  Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C.

17  § 9607, for the environmental response costs the United States and the State have

18  incurred, and will incur, in a manner not inconsistent with the National

19  Contingency Plan, 40 C.F.R. Part 300, in connection with the McColl Site.  All

20  appellate avenues on the major issue of the Oil Companies' CERCLA liability have

21  been exhausted.  Thus, the Oil Companies will be liable under CERCLA regardless

22  of the outcome of the contract litigation and until all judgments liquidating the

23  United States' and the State's claims for CERCLA response costs have been

24  entered and resolved.  A contractual right of indemnity, if found to exist by the

25  Court of Federal Claims in favor of the Oil Companies, unequivocally is not a

26  defense to the Companies' existing CERCLA liability to the government plaintiffs.

27  As CERCLA  plainly states:

28

1    No indemnification, hold harmless, or similar agreement or
2    conveyance shall be effective to transfer from the owner or operator of
3    any vessel or facility or from any person who may be liable for a release
4    or threat of release under this section, to any other person the liability
5    imposed under this section.

6    42 U.S.C. § 9607(e)(1).

7    Thus, the issue of whether the Oil Companies might obtain a right of
8    indemnity against the United States is irrelevant.

9    **G.    Conclusion**

10   In summary, there is no legal reason to delay this matter by tying it to the
11   outcome of contract litigation in another case. The United States and the State
12   respectfully request the Court to allow them to proceed with their outstanding cost
13   recovery claims. If the Court believes further briefing is appropriate or a hearing
14   before the Court would be helpful, the government plaintiffs are ready to respond.

15   **IV.  STATE'S SUPPLEMENTAL STATEMENT**

16   The State is in a unique position here. The Oil Companies never filed any
17   counterclaims against the State, based on contracts or any other matter. The
18   contract-based and other counterclaims filed by the Oil Companies against the
19   United States in 1991 were at issue, but never litigated against the United States for
20   14 years, until April 2005, when the contract claims were transferred belatedly, but
21   appropriately, to the Court of Federal Claims. The State is not a party to that
22   contract litigation. Based on the rulings, consent decrees and stipulation in this
23   case, as discussed above, the Oil Companies will be liable to the State under
24   CERCLA until the Oil Companies' liability for 93.75 percent of the State's
25   recoverable CERCLA response costs incurred generally since October 1990 is
26   resolved in the instant litigation. Moreover, regardless of the eventual outcome of
27   the contract claim litigation in Washington, D.C., the Oil Companies never will
28   possess a right of indemnification against the State for any outstanding costs related

13

1   to the McColl Site.  Given these circumstances, there is no equitable basis for

2   delaying this case as to the State.

3        If the Court allows this case to proceed, as a first step, the State requests the

4   Court to order mediation between the State and Oil Companies, pursuant to the

5   Court-Directed ADR Program.  Given the State's unique position here, mediation is

6   a reasonable initial means of resolving the State's relatively minor cost claim in this

7   matter.  The State successfully has settled almost all of its claims against the United

8   States regarding the United States' 6.25 percent share of liability for the States'

9   costs related to the McColl Site.  As it always has been during this litigation, the

10  State is very interested at this time in resolving the Oil Companies' 93.75 percent

11  share of the liability for State response costs.  A court-ordered settlement effort

12  between the State and the Oil Companies at this time would promote the efficient

13  administration of this case.

14  **V.   OIL COMPANIES' STATEMENT**

15       This action has been stayed since 2007 to allow the Oil Companies' claims

16  against the United States to be resolved in the Court of Federal Claims prior to

17  further proceedings in this action.  For many years, the United States and State have

18  made no effort whatsoever to overturn or terminate the stay.  However, they are

19  now attempting, through this Joint Status Report, to capitalize on the recent re-

20  assignment of this action by seeking to re-litigate issues that have already been

21  resolved by the prior judge.  These efforts should be denied.

22       The stay should remain in place for four reasons:  (A) the United States and

23  State, in accepting the prior $18 million payment from the Oil Companies for

24  certain costs, already agreed that no judgment on any of their additional costs will

25  be entered prior to entry of a judgment on the Oil Companies' claims against the

26  United States;  (B) continuation of the stay will advance judicial economy; (C) the

27  original judge on this case, in consultation with the former Chief Judge of this

28  Court, already determined, based on the same arguments presented in this Joint

1   Status Report, that this action should be stayed; and (D) since the stay was granted,

2   the Oil Companies have continued to pursue their claims against the United States

3   diligently, and proceedings are moving forward in the Court of Federal Claims and

4   the U.S. Court of Appeals for the Federal Circuit.

**A.   The United States and State Should Not Be Allowed to Renege on Their Agreement Not to Seek a Judgment on Their Remaining Claims Prior to a Judgment on the Oil Companies' Claims**

8   In 1994, the Oil Companies paid $18 million to the United States and State to

9   resolve claims for certain costs at the McColl site. *See* 1994 Consent Decree.  In

10  exchange, the United States and State agreed not to seek a final judgment to require

11  the Oil Companies to pay any additional response costs prior to a judgment on the

12  Oil Companies' claims against the United States. *Id*.  The 1994 Consent Decree

13  provides:

14          "No final judgment has been entered in this action from which

15          an appeal as of right may be taken and, by agreement of the

16          parties, no such final judgment shall be entered against the

17          Settling Defendants prior to the entry of judgment on the

18          counterclaims asserted by these defendants in this action."

19          (Emphasis added.)  1994 Consent Decree, ¶ 14.

20  This agreement made good sense at the time and still makes sense today.  As

21  noted above, the Oil Companies are pursuing contract claims against the United

22  States that could both effectively moot the United States' cost claims and obviate

23  any need for the Oil Companies to challenge the State's costs.  If the Oil

24  Companies prevail on their claims against the United States now pending in the

25  Federal Circuit, the United States will be responsible for the costs at issue in this

26  action, including the State's costs.

27  While the United States and State accepted the $18 million under the terms of

28  the 1994 Consent Decree, they have since attempted to breach their agreement by

15

1   seeking a judgment on their claims prior to the resolution of the Oil Companies'
2   claims.  In December 2005, the United States and State notified the Oil Companies
3   that they intended to seek summary judgment on their additional alleged costs.  *See*
4   Declaration of Peter R. Taft in Support of Defendants' Opposition to United States'
5   *Ex Parte* Application for Issuance of a Protective Order, ¶ 10 (Docket No. 563).
6   The Oil Companies noted in a subsequent meet and confer that these motions
7   would violate the 1994 Consent Decree, since the Oil Companies' claims against
8   the United States were still pending, and proposed that the parties seek this Court's
9   guidance on this issue in a joint status conference request.  *See* Declaration of
10  Cynthia L. Burch in Support of Defendants' Opposition to United States' *Ex Parte*
11  Application for Issuance of a Protective Order, ¶ 10 (Docket No. 562).  The United
12  States and State refused and filed their motions in February 2006.  (*Id.*; *see also*
13  Docket No. 532.)  The Oil Companies opposed those motions as premature and
14  were required to expend substantial time and money doing so.

15      In numerous motions, oppositions and status reports filed with this Court since
16  2006, the United States and State have asserted various arguments, including the
17  arguments repeated above, seeking to renege on their prior agreement.  None of
18  their arguments has merit.

19      First, the United States and State have argued that paragraph 14 of the 1994
20  Consent Decree was rendered void by a "whereas" provision in a 1999 order
21  (Docket No. 489), which recites that plaintiffs "retain all of their rights to pursue
22  their claims for response costs to judgment in this Court."  The Oil Companies have
23  never argued that the United State and State lost their right to pursue their claims.
24  The question is timing.  The 1994 Consent Decree expressly provides that a
25  judgment on the United States and State's additional costs must await entry of a
26  final judgment on the defendants' claims.  1994 Consent Decree, ¶ 14.  The 1999
27  Order does not alter that agreement.

28

1    Second, the United States and State argue that paragraph 14 of the 1994

2    Consent Decree should be disregarded, asserting that it conflicts with paragraph 19,

3    which provides: "Settling Defendants likewise agree that they will not seek to stay

4    or otherwise delay the supplemental response cost claim and further agree that the

5    supplemental cost claim may proceed simultaneously with the counterclaims." In

6    fact, the two provisions can be reconciled. Paragraph 19 merely provides that the

7    cost claims "may proceed simultaneously with the counterclaims," while paragraph

8    14 addresses the timing and order of the judgments on those claims. Whether or

9    not it is possible under paragraph 19 for the parties to pursue these claims

10   simultaneously through discussions or discovery, the United States and State cannot

11   seek a judgment on their claims until a judgment has been issued on the Oil

12   Companies' contract claims. Since a judgment on the Oil Companies' contract

13   claims could effectively moot the claims against the Oil Companies in this

14   litigation, it still makes good sense to maintain the stay as described in greater

15   detail below.

16   The government plaintiffs also cite various authority for the proposition that

17   contractual indemnification rights are no defense to CERCLA claims. However,

18   none of those cases support the proposition that the parties cannot decide among

19   themselves the order in which they will seek judgment against each other, as the

20   parties here did in agreeing to the terms of the 1994 Consent Decree.

21   Since the United States and State already agreed under the terms of the 1994

22   Consent Decree not to seek a judgment on their claims prior to entry of judgment

23   on the Oil Companies' claims against the United States, they should not be allowed

24   to breach that agreement and circumvent the decree now.

25   **B.   Continuation of the Stay Would Advance Judicial Economy**

26   A court has inherent authority to manage its docket and schedule in

27   furtherance of judicial economy. *See* Fed. R. Civ. P. 16(b); *Zivkovic v. Southern*

28   *California Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002) (district courts have

17

1  broad discretion to modify the trial schedule); *Stewart v. Ragland*, 934 F.2d 1033,

2  1042 (9th Cir. 1991) ("A trial judge is given broad discretion in supervising the

3  pretrial phase of the litigation. . . ."); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358,

4  1360 (C.D. Cal. 1997) (powers to stay or otherwise manage proceedings are within

5  the trial court's discretion).  Under the circumstances, it makes good sense for this

6  Court to continue the stay of this action to advance judicial economy.

7      As noted above, the parties and Court already have agreed that no judgment

8  will be issued on the claims of the United States and State prior to a judgment on

9  the Oil Companies' claims.  Therefore, even if the United States and State are

10  allowed to conduct fact and expert discovery and engage in motion practice at this

11  time, any judgment on the claims in this action would still need to await a final

12  judgment on the Oil Companies' claims in the Court of Federal Claims and Federal

13  Circuit.  Since a judgment on these claims could moot the United States' claims

14  while obviating any need for the Oil Companies to challenge the State's costs, any

15  further proceedings in this action or court-ordered mediation could constitute a

16  complete waste of time, money and resources.

17      Under the circumstances, this Court can and should enforce the 1994 Consent

18  Decree by exercising its discretion to continue the stay in this action to avoid the

19  substantial waste of resources that could result if this litigation resumes or the

20  parties are directed to court-ordered mediation prior to a resolution of the

21  proceedings in the Court of Federal Claims and Federal Circuit.

22  **C.  Judge Kelleher, in Consultation with the former Chief Judge of**
    **This Court, Already Determined Based on the Same Arguments**
23  **Presented Here That This Action Should Be Stayed**

24      After reviewing the arguments of the parties (including the same arguments

25  now put forward by the United States and State above), Judge Kelleher previously

26  determined that the United States and State should not be allowed to proceed with

27  their motions for summary judgment, and that this litigation should be stayed.

28  (Docket Nos. 609, 610.)  On October 1, 2007, Judge Kelleher signed the Oil

18

1 Companies' proposed order granting their *Ex Parte* Application, denying the
2 United States' and State's motions for summary judgment on their costs and staying
3 further proceedings.  (Docket No. 610.)

4     Judge Kelleher's decision to stay this action followed a hearing on the parties'
5 various motions presided over by Judge Stotler, the former Chief Judge of this
6 Court.  (*See* Docket No. 609.)  In issuing his order, Judge Kelleher expressly noted
7 that he issued the order for a stay "after meeting and extensive discussion with
8 Chief Judge Stotler." *Id.*

9     Therefore, the issues raised in the United States' and State's portion of this
10 Joint Status Report were previously fully argued, considered and resolved by the
11 prior judge.  Based on these arguments, the judge had determined to maintain the
12 stay consistent with the intent of the 1994 Consent Decree and considerations of
13 judicial economy.

14     **D.**    **The Oil Companies Have Diligently Pursued Their Claims**
15             **Against the United States**

16     Since before the stay was first granted in this action, the Oil Companies have
17 diligently pursued their claims against the United States, and proceedings are
18 moving forward in the Court of Federal Claims and the Federal Circuit

19     As described above, the Oil Companies and the United States have been
20 actively litigating in the Court of Federal Claims for several years.  Given the
21 recusal of the original trial judge upon the United States' motion, the original
22 rulings and orders in those proceedings were vacated, and it was necessary for the
23 parties to litigate many of the issues a second time.  As a result, the proceedings in
24 the Court of Federal Claims have taken more time than anticipated.  However, the
25 proceedings are moving forward, and oral arguments in the United States Court of
26 Appeals for the Federal Circuit are scheduled for January 7, 2014, as noted above.

27     Since the Oil Companies are continuing to diligently pursue their claims
28 against the United States in the Court of Federal Claims and the Federal Circuit,

1   there is no reason for this Court to change course by terminating the stay at this

2   time.

3       **E.    Conclusion**

4       For the foregoing reasons, the Oil Companies do not believe that any further

5   proceedings in this action are necessary at this time.  Once the Oil Companies'

6   contract claims are resolved, the parties, in consultation with this Court, can

7   determine whether any further proceedings are needed.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          Respectfully submitted,

2          PLAINTIFF STATE OF
           CALIFORNIA, et al.

3

4          TIMOTHY R. PATTERSON

   Dated:  December  6, 2013

5          Supervising Deputy Attorney
           General

6          California Department of Justice
           Counsel for the State of California, et

7          al.

8          PLAINTIFF UNITED STATES OF

9          AMERICA

10         *Timothy R. Patterson*
           *on behalf of*

11  Dated:  December  6, 2013     WILLIAM A. WEINISCHKE

12         Senior Trial Attorney
           Environmental Enforcement Section
           Environment and Natural Resources

13         Division
           United States Department of Justice

14         Counsel for the United States

15         COUNTERCLAIM DEFENDANT

16         UNITED STATES OF AMERICA

17         *Timothy R. Patterson*
           *on behalf of*

18  Dated:  December  6, 2013     JOSHUA M. LEVIN

19         Senior Trial Attorney
           Environmental Defense Section
           Environment and Natural Resources

20         Division
           United States Department of Justice

21         Counsel for the United States

22         DEFENDANTS SHELL OIL

23         COMPANY, UNION OIL
           COMPANY OF CALIFORNIA,

24         ATLANTIC RICHFIELD
           COMPANY and TEXACO, INC.

25         *Timothy R. Patterson*

26         *on behalf of*

27  Dated:  December  6, 2013     GREG A. CHRISTIANSON, Esq.

28         Bingham McCutchen LLP
           Counsel for Shell Oil Company, et al.

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **United States of America, et al. v. Shell Oil Company, et al.**
No.:         **U.S.D.C. Central District, No. 2:91-cv-00589 RJK**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On **December 6, 2013**, I served the attached **JOINT STATUS REPORT**

by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA  92186-5266, addressed as follows:

Greg A. Christianson, Esq.
James J. Dragna, Esq.
Sang (Alvin) Lee, Esq.
Bingham McCutchen LLP
355 South Grand Avenue, Ste. 4400
Los Angeles, CA 90071-3106
*Counsel for Shell Oil Company, Union Oil*
*Company of California, Atlantic Richfield*
*Company, and Texaco, Inc.*

William A. Weinischke, Esq.
Environmental Enforcement Section
Environment & Nat. Resources Division
United States Dept. of Justice
P. O. Box 7611 Ben Franklin Station
Washington, D.C. 20044
*Counsel for the United States as Plaintiff*

Joshua M. Levin, Esq.
Environmental Defense Section
Environment and Nat. Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
*Counsel for the United*
*States as Counterclaim Defendant*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **December 6, 2013**, at San Diego, California.

_____
            Linda Jean Fraley
                Declarant

_____
                Signature

## CERTIFICATE OF SERVICE

| Case Name: | **United States of America, et al. v. Shell Oil Company, et al.** | No. | **CV 91-0589 RJK (Ex)** |
|---|---|---|---|

I hereby certify that on <u>March 6, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### JOINT STATUS REPORT

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>March 6, 2019</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

| | |
|---|---|
| Kermit David Marsh<br>Beam Brobeck & West<br>1301 Dove Street, Suite 700<br>Newport Beach, CA 92660<br>***Attorney for Deft. McAuley LCX Corporation*** | Regina Liudzius Cobb<br>Demetriou Del Guercio Springer & Francis<br>801 S. Grand Ave., Ste. 1000<br>Los Angeles, CA 90017-4613<br>***Attorney for Deft. McAuley LCS Corporation*** |
| Peter R. Taft<br>Munger Tolles & Olson<br>355 S. Grand Ave., 35th FL<br>Los Angeles, CA 90071-1560<br>***Attorney for Deft.<br>Texaco, Inc.*** | Richard B. Stewart<br>U.S. Department of Justice<br>Environment Enforcement Section<br>301 Howard, Ste. 870<br>San Francisco, Ca 91405<br>***Attorney for Plaintiff<br>USA.*** |

| Sang Min Lee<br>11005 Marcliff Rd.<br>Rockville, MD 20852<br>***Attorney for Deft.***<br>***Atlantic Richfield Company*** | |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>March 6, 2019</u>, at San Diego, California.

| _____<br>Celia Valdivia<br>Declarant | _____<br>Signature |

SD2004104341
82129323.docx