XAVIER BECERRA
Attorney General of California
SPARSH KHANDESHI
sparsh.khandeshi@doj.ca.gov
CA Bar No. 266297
Deputy Attorney General
600 W. Broadway, Suite 1800
San Diego, CA 92101
Tel: (619) 738-9061

WILLIAM A. WEINISCHKE
Bill.weinischke@usdoj.gov
MS Bar No. 7082
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, N.W., Suite 2.900
Washington, D.C. 20002
Tel: (202) 514-4592

Attorneys for Plaintiffs State of California and United States of America

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | CASE NO. 91-00589 (CJC) |
| Plaintiffs, | |
| v. | MEMORANDUM IN SUPPORT OF MOTION TO LIFT STAY |
| SHELL OIL COMPANY, et al., | |
| Defendants. | Date:       TBD |
| | Time:       1:30 P.M. |
| | Courtroom:  7C, First Street Court House |
| | Judge:      Cormac J. Carney |

## INTRODUCTION

The Plaintiffs (United States and State of California) submit this memorandum in support of their Motion to Lift the Stay that has been in place since 2007.  The Stay has blocked the Plaintiffs from recovering response costs they incurred to respond to environmental threats in connection with the McColl Superfund Site in Fullerton, California from essentially 1990 to present.  Those costs are recoverable pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607.

The Plaintiffs' response cost claims were stayed by this Court in 2007 pending a resolution of Defendants Shell Oil Company, Union Oil Company of California, Atlantic Richfield Company, and Texaco, Inc.'s breach of contract claims against the United States filed in the Court of Federal Claims.  The contract case was finally concluded in 2018.  Accordingly, as the Parties agreed, (1) the issue of the stay is now moot; and (2) the only claims remaining in this case are the Plaintiffs' cost recovery claims.  See Docket No. 644, at 4.

Nevertheless, during the August 5, 2019 status conference, the Defendants urged the Court to maintain the Stay, suggesting that their yet-to-be-filed contract claims will moot the Plaintiffs' CERCLA cost recovery claims — essentially the same argument the Defendants made in 2007.  See Docket No. 571, at 10 (asserting "there would be no need for any judicial action on the United States' claims . . . [and] there will be no need for Defendants to challenge the State's costs in this Court," if they prevailed on their contract claims in the Court of Federal Claims). These assertions are baseless.  As has proven true for the Defendants' original contract claims, waiting for an additional round of litigation in the Court of Federal Claims will not resolve the Plaintiffs' cost recovery claims in the Central District of California.  The argument below explains why the Court should lift the stay and allow the Governments' cost recovery claims to proceed.

1

ARGUMENT

2

**A. The Stay Was Improperly Granted in the First Instance.**

3

    1.   CERCLA Allows the Governments to Recover Their Cleanup Costs

4

        Before Resolving Any Counterclaims.

5

CERCLA was enacted "to initiate and establish a comprehensive response

6

and financing mechanism to abate and control the vast problems associated with

7

abandoned and inactive hazardous waste disposal sites." U.S. v. R.W. Meyer, Inc.,

8

889 F. 2d 1497, 1498 (6th Cir. 1989). The Plaintiffs began the process of selecting

9

and implementing a cleanup plan for the McColl Site under CERCLA in 1982. In

10

1991, the Plaintiffs filed suit to establish the Defendants as liable parties and to

11

recover response costs. In 1993, this Court granted the Plaintiffs' Motion for

12

Summary Judgment with respect to liability, holding that the Defendants are jointly

13

and severally liable for the contamination at the Site and the Plaintiffs' response

14

costs. U.S. v. Shell Oil Company, 841 F. Supp. 962 (C.D. Cal. 1993).

15

Simultaneously, the Court granted the Plaintiffs' motion to bifurcate the

16

Defendants' counterclaims and proceed on the Governments' cost recovery claims.

17

Id. at 975. The Court explained that "CERCLA clearly provides that cost recovery

18

can be sought before any counterclaims and cross-claims are resolved." Id. (citing

19

132 Cong. Rec. S14,908 (daily ed. Oct. 3, 1986) ("The government should obtain

20

the full costs of cleanup from those it targets for enforcement, and leave remaining

21

costs to be recovered in private contribution actions.")).

22

Considering the equities, the Court reasoned that preventing the

23

Governments' "expeditious recovery of response costs . . . would inappropriately

24

prejudice the public welfare by slowing replenishment of the Superfund." Id.

25

(emphasis added). On the flip side, the Defendants would not be unduly prejudiced

26

because "they will be reimbursed in the future for any costs . . . that are properly

27

attributable to other parties." Id. The law of this case has not changed and the

28

3

1  equities still favor allowing the Plaintiffs to pursue their case to recover their

2  response costs.

3      2.    Nothing in the 1994 Consent Decree Prevents the Plaintiffs from

4            Proceeding With Their Cost Recovery Claims.

5      At the August 5, 2019 status conference, the Defendants contended that the

6  1994 Partial Consent Decree negated this Court's 1993 ruling.  Defendants are

7  wrong.  The Parties entered into a Partial Consent Decree in 1994 that required the

8  Defendants to pay the Plaintiffs $18 million in past response costs incurred in

9  connection with the site and allowed to the Defendants to pursue their

10  counterclaims.  See Docket No. 270.  The 1994 Partial Consent Decree did not

11  prohibit the Plaintiffs from pursuing their claims for costs.  It expressly provided

12  that the Plaintiffs could proceed with their cost claims "simultaneously with the

13  counterclaims."  Id. ¶ 19.  When the Court entered the partial Consent Decree on

14  December 12, 1994, it reaffirmed that its judgment of September 28, 1993,

15  constitutes a declaratory judgment for "Ongoing Response Costs."  See id. ¶ 10.

16      Furthermore, paragraphs 12 and 19 of the 1994 partial Consent Decree

17  explicitly recognize the Plaintiffs' rights to recover their response costs in this

18  action, regardless of any claims the Defendants may be pursuing in another action.

19  Paragraph 12 of the 1994 Consent Decree provides: "The United States and State

20  reserve, and this Consent Decree is without prejudice to, all rights against Settling

21  Defendants with respect to all other matters, including, but not limited to . . .

22  liability for Ongoing Response Costs."  Id. ¶ 12.  "Ongoing Response Costs" is a

23  defined term in the 1994 partial Consent Decree and it includes all costs, including

24  interest, incurred by the Plaintiffs not covered by the 1994 Consent Decree.

25  Id. ¶ 3.f.

26      Paragraph 19 of the 1994 Consent Decree provides: "Settling Defendants

27  likewise agree that they will not seek to stay or otherwise delay the supplemental

28

4

response cost claim and further agree that the supplemental response cost claim may proceed simultaneously with the counterclaims." Id. ¶ 19 (emphasis added). Defendants reneged on that agreement, and the Court, we submit, erred in allowing the delay by granting the stay.

Defendants rely on Paragraph 14 of the 1994 Consent Decree to support their argument that the 1994 Consent Decree negated the Court's 1993 published decision.[1] Defendants' reliance is misplaced. Paragraph 14 of the 1994 Consent Decree provides:

> No final judgment has been entered in this action
> from which an appeal as of right may be taken and,
> by agreement of the parties, no such final judgment
> shall be entered against Settling Defendants prior to
> the entry of judgment in the counterclaims asserted
> by these defendants in this action.

Docket No. 270 ¶ 14 (emphasis added).

First of all, there are no counterclaims "in this action." This Court entered a final judgment on the Defendants' CERCLA counterclaims against the United States for arranger liability on October 13, 1999. See Docket No. 489, at 5.[2] As for the Defendants' contract-based counterclaims, this Court lacked jurisdiction and transferred them to the Court of Federal Claims. See Docket No. 529 ¶ 1. In that same order, this Court stated that "All remaining counterclaims filed by the Oil

---

[1] Defendants originally made this argument in their Opposition to Plaintiffs' 2006 Motions for Summary Judgment, see Docket No. 571 at 8-9, and raised it again during the August 5, 2019 Status Conference.

[2] Ultimately, the decision on these counterclaims was reversed by the Ninth Circuit, holding the United States was not an arranger and has no liability under CERCLA for cleanup costs of non-benzol wastes. United States v. Shell Oil Company, et al., 294 F.3d 1045, 1048-1049, 1059 (9th Cir. 2002).

5

1    Companies against the United States not heretofore disposed of are dismissed."

2    Id. ¶ 2.   Accordingly, even if Paragraph 14 of the Consent Decree were incorrectly

3    interpreted to set preconditions on when the Plaintiffs could seek recovery of their

4    response costs, the 1999 Final Judgment and 2005 Amended Transfer Order make

5    clear those conditions are currently satisfied by the entry of judgment dismissing

6    Defendants' counterclaims.

7         Furthermore, in the above-referenced Stipulated Final Judgment Pursuant to

8    Rule 54(b) FRCP, the Defendants agreed that "Plaintiffs [the United States and the

9    State] retain all their rights to pursue their claims for response costs to judgment in

10   this Court . . . ."   See Docket No. 489, at 4.   Therefore, the Stipulated Final

11   Judgment not only constituted a final judgment in this action on the Defendants'

12   counterclaims, it expressly recognized the Plaintiffs' right to pursue their cost

13   recovery claims in this Court.   Thus, even if there were any ambiguity arising from

14   the 1994 Consent Decree, it was most certainly clarified by the Stipulated Final

15   Judgment entered by this Court five years later.

16        Finally, contrary to Defendants' assertion, their yet-to-be filed contract

17   claims against the United States are not counterclaims in this action.   Defendants'

18   assertion at the August 5, 2019 status conference that their contract-based claims,

19   which must be brought in the Court of Federal Claims, are similar to their original

20   transferred contract claims only supports this conclusion.   As this Court ruled in

21   2005, it lacks jurisdiction over contract claims against the United States,

22   Docket No. 529 ¶ 1, meaning that the Defendants' contract-based claims were

23   never properly a part of the action in this Court.   The same is true of the

24   Defendants' yet-to-be filed contract claims.

25        Certainly, Defendants are entitled to seek reimbursement in the Court of

26   Federal Claims for the response costs they pay to the Plaintiffs.   But, to the extent

27   that Defendants are entitled to indemnification of the response costs owed to the

28

1    Plaintiffs, such indemnification does not usurp the Plaintiffs' claims against them.

2    CERCLA Section 107(e)(1), 42 U.S.C. § 9607(e)(1), provides:

3              No indemnification, hold harmless, or similar agreement

4              or conveyance shall be effective to transfer from the owner

5              or operator of any vessel or facility or from any person who

6              may be liable for a release or threat of release under this

7              section, to any other person the liability imposed under this

8              section.

9    Accordingly, this Court should lift the 2007 stay and allow the Plaintiffs to

10   proceed with their CERCLA response cost claims as intended by the statute, the

11   1994 Consent Decree, and the 1999 Stipulated Final Judgement.  As this Court

12   ruled in 1993, the Defendants will not be unduly prejudiced since they will be

13   reimbursed for costs paid to the Superfund and the State that are properly

14   attributable to another party, even if that party is the federal government.

15   841 F. Supp. at 975.

16       **B.    There is No Continuing Justification for the Stay**

17   Defendants further argue that maintaining the stay, pending resolution of

18   their contract claims, will forestall unnecessary litigation of the Plaintiffs' response

19   cost claims.  Again, the Defendants are wrong.  Their position assumes that if the

20   Defendants are successful on their contract claims, the United States can, and

21   should, reimburse itself for the CERCLA response costs at issue.

22   That, however, would take an act of Congress.  The Appropriations Clause of

23   the Constitution prohibits shifting funds from one agency to another without a

24   specific statutory authorization.  U.S. Const. art. I, § 9, cl. 7.  Any reimbursement

25   that the Defendants obtain for their contract claims will come from the Judgment

26   Fund, which is entirely separate from the Superfund used to respond to the threat to

27   public health and the environment posed by hazardous waste sites around the

28

7

1    country.  26 U.S.C. § 9507.  One of the manners in which the Superfund is
2    replenished is from amounts recovered from liable parties such as the Defendants in
3    this case.  Id. § 9507(b)(2).

4        As the Judgment Fund's name implies, payments from it can only be triggered
5    by a judgment against the United States and certification from the Secretary of the
6    Treasury.  See 41 U.S.C. § 7108 and 31 U.S.C. § 1304.  The Defendants' claim
7    submitted to the General Services Administration on July 29, 2019, includes a sum
8    certain for costs Defendants have incurred and vaguely references the Plaintiffs'
9    cost recovery claims without providing a dollar amount. (Exhibit 1, at 7, 8).
10   Indeed, the Defendants cannot provide a dollar amount for Plaintiffs' response costs
11   until they have paid the Plaintiffs' response costs, which continue to accrue interest.
12   Accordingly, a decision by the General Services Administration on Defendants'
13   July 29, 2019 claim will not resolve the costs the Plaintiffs have incurred and
14   continue to incur and the Defendants have not paid.  Quite simply, the Defendants'
15   breach of contract claims can never resolve the Plaintiffs' CERCLA claims in this
16   Court.

17       There are two possible outcomes at the Court of Federal Claims:  the
18   Defendants are made whole for all CERCLA costs, including those paid to
19   reimburse the Governments' response costs, or the recovery of the Defendants'
20   costs is offset or reduced due to complex legal arguments over which this Court
21   lacks jurisdiction.  Regardless, the Plaintiffs' CERCLA cost recovery claims will
22   need to be resolved by this Court.

23       Even assuming arguendo that the United States could reimburse EPA's
24   Superfund from the Judgment Fund, the Court of Federal Claims contract litigation
25   cannot resolve the State of California's response cost claims against the
26   Defendants.  This is because, at most, the contracts at issue in the Court of Federal
27   Claims would require the United States to indemnify the Defendants for any
28

8

1    CERCLA response cost payments to California.  Those contracts do not require the
2    United States to defend the Defendants against California in this case.
3    Accordingly, even if the Defendants ultimately succeed on their contract claims
4    against the United States, California's response cost claims would remain
5    unresolved in this court.
6         For the foregoing reasons, the Governments' claims for reimbursement of
7    response costs in this Court should not be allowed to languish while the Defendants
8    again litigate their breach of contract claims in the Court of Federal Claims.  All
9    that would be achieved is further delay in resolving the Plaintiffs' decades-old
10   response cost claims against the Defendants.
11   ///
12   ///
13   ///
14   ///
15   ///
16   ///
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28

9

1

## CONCLUSION

2   The Plaintiffs request that the Court lift the stay so that the Plaintiffs can file

3   motions to recover their response costs.  The Plaintiffs appreciate the Court's desire

4   to move the case forward and will work swiftly to accommodate a speedy

5   resolution.

6                                                  Respectfully submitted,

7

8                                                  Plaintiff United States of America

9                                                  /s/ William A. Weinischke
                                                   William A. Weinischke
10                                                 Senior Attorney
                                                   Environmental Enforcement Section
11                                                 Environment and Natural Resources
12                                                     Division
                                                   United States Department of Justice
13                                                 (202) 514-4592
14                                                 Bill.weinischke@usdoj.gov

15
                                                   Plaintiff State of California
16                                                 /s/Sparsh Khandeshi
                                                   Sparsh Khandeshi
17                                                 Deputy Attorney General
18                                                 California Department of Justice
                                                   (619) 738-9061
19                                                 sparsh.khandeshi@doj.ca.gov

20

21

22

23

24

25

26

27

28

10

## CERTIFICATE OF SERVICE

Case Name:   **USA, et al., v. Shell Oil**       No.   **CV 91-00589 VAP**
             **Company, et al.**

I hereby certify that on August 30, 2019, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### MEMORANDUM IN SUPPORT OF MOTION TO LIFT STAY

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On August 30, 2019, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

| | |
|---|---|
| Kermit David Marsh<br>Beam Brobeck West Borges & Rosa LLP<br>1301 Dove Street, Suite 700<br>Newport Beach, CA 92660<br>*Attorney for Deft. McAuley LCX Corporation* | Jeffrey Zeddock B. Springer<br>Demetriou, Del Guercio, Springer, & Francis, LLP<br>915 Wilshire Blvd., Ste. 2000<br>Los Angeles, CA 90017-3496<br>*Attorney for Deft. McAuley LCX Corporation* |
| Peter R. Taft<br>Munger Tolles & Olson LLP<br>355 S. Grand Ave., 35th FL<br>Los Angeles, CA 90071-1560<br>*Attorney for Deft. Texaco, Inc.* | Richard B. Stewart<br>U.S. Department of Justice<br>Environment Enforcement Section<br>301 Howard, Ste. 870<br>San Francisco, Ca 91405<br>*Attorney for Plaintiff USA* |
| Sang Min Lee<br>11005 Marcliff Rd.<br>Rockville, MD 20852<br>*Attorney for Deft.*<br>*Atlantic Richfield Company* | |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>August 30, 2019</u>, at San Diego, California.

|  |  |
|---|---|
| C. Sheppard | |
| Declarant | Signature |

SD2019500473
71970296.docx