XAVIER BECERRA
Attorney General of California
EDWARD H. OCHOA
Supervising Deputy Attorney General
SPARSH KHANDESHI,
Deputy Attorney General
sparsh.khandeshi@doj.ca.gov
CA Bar No. 266297
600 W. Broadway, Suite 1800
San Diego, CA 92101
Tel: (619) 738-9061

WILLIAM A. WEINISCHKE
Bill.weinischke@usdoj.gov
MS Bar No. 7082
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
4 Constitution Square
150 M Street, N.W., Suite 2.900
Washington, D.C.  20002
Tel: (202) 514-4592

Attorneys for Plaintiffs State of California and United States of America

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | CASE NO. 91-00589 (CJC) |
| Plaintiffs, | |
| v. | CORRECTED MEMORANDUM IN SUPPORT OF MOTION TO LIFT STAY |
| SHELL OIL COMPANY, et al., | |
| Defendants. | Date:       October 28, 2019 |
| | Time:       1:30 P.M. |
| | Courtroom:  7C, First Street Court House |
| | Judge:      Cormac J. Carney |

1

*Corrected Memorandum in Support of Motion to Lift Stay* (CV 91-00589 (CJC))

## INTRODUCTION

The Plaintiffs (United States and State of California) submit this memorandum in support of their Motion to Lift the Stay that has been in place since 2007. The Stay has blocked the Plaintiffs from recovering response costs they incurred to respond to environmental threats in connection with the McColl Superfund Site in Fullerton, California from essentially 1990 to present. Those costs are recoverable pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607.

The Plaintiffs' response cost claims were stayed by this Court in 2007 pending a resolution of Defendants Shell Oil Company, Union Oil Company of California, Atlantic Richfield Company, and Texaco, Inc.'s breach of contract claims against the United States filed in the Court of Federal Claims. The contract case was finally concluded in 2018. Accordingly, as the Parties agreed, (1) the issue of the stay is now moot; and (2) the only claims remaining in this case are the Plaintiffs' cost recovery claims. See Docket No. 644, at 4.

Nevertheless, during the August 5, 2019 status conference, the Defendants urged the Court to maintain the Stay, suggesting that their yet-to-be-filed contract claims will moot the Plaintiffs' CERCLA cost recovery claims — essentially the same argument the Defendants made in 2007. See Docket No. 571, at 10 (asserting "there would be no need for any judicial action on the United States' claims . . . [and] there will be no need for Defendants to challenge the State's costs in this Court," if they prevailed on their contract claims in the Court of Federal Claims). These assertions are baseless. As has proven true for the Defendants' original contract claims, waiting for an additional round of litigation in the Court of Federal Claims will not resolve the Plaintiffs' cost recovery claims in the Central District of California. The argument below explains why the Court should lift the stay and allow the Governments' cost recovery claims to proceed.

ARGUMENT

**A.  The Stay Was Improperly Granted in the First Instance.**

    1.  <u>CERCLA Allows the Governments to Recover Their Cleanup Costs Before Resolving Any Counterclaims.</u>

CERCLA was enacted "to initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." <u>U.S. v. R.W. Meyer, Inc.</u>, 889 F. 2d 1497, 1498 (6th Cir. 1989).  The Plaintiffs began the process of selecting and implementing a cleanup plan for the McColl Site under CERCLA in 1982.  In 1991, the Plaintiffs filed suit to establish the Defendants as liable parties and to recover response costs.  In 1993, this Court granted the Plaintiffs' Motion for Summary Judgment with respect to liability, holding that the Defendants are jointly and severally liable for the contamination at the Site and the Plaintiffs' response costs.  <u>U.S. v. Shell Oil Company</u>, 841 F. Supp. 962 (C.D. Cal. 1993).

Simultaneously, the Court granted the Plaintiffs' motion to bifurcate the Defendants' counterclaims and proceed on the Governments' cost recovery claims.  <u>Id.</u> at 975.  The Court explained that "CERCLA clearly provides that cost recovery can be sought before any counterclaims and cross-claims are resolved." <u>Id.</u> (citing 132 Cong. Rec. S14,908 (daily ed. Oct. 3, 1986) ("The government should obtain the full costs of cleanup from those it targets for enforcement, and leave remaining costs to be recovered in private contribution actions.")).

Considering the equities, the Court reasoned that preventing the Governments' "expeditious recovery of response costs . . . <u>would</u> inappropriately prejudice the public welfare by slowing replenishment of the Superfund." <u>Id.</u> (emphasis added).  On the flip side, the Defendants would not be unduly prejudiced because "they will be reimbursed in the future for any costs . . . that are properly attributable to other parties." <u>Id.</u>   The law of this case has not changed and the

equities still favor allowing the Plaintiffs to pursue their case to recover their response costs.

### 2. Nothing in the 1994 Consent Decree Prevents the Plaintiffs from Proceeding With Their Cost Recovery Claims.

At the August 5, 2019 status conference, the Defendants contended that the 1994 Partial Consent Decree negated this Court's 1993 ruling. Defendants are wrong. The Parties entered into a Partial Consent Decree in 1994 that required the Defendants to pay the Plaintiffs $18 million in past response costs incurred in connection with the site and allowed to the Defendants to pursue their counterclaims. See Docket No. 270. The 1994 Partial Consent Decree did not prohibit the Plaintiffs from pursuing their claims for costs. It expressly provided that the Plaintiffs could proceed with their cost claims "simultaneously with the counterclaims." Id. ¶ 19. When the Court entered the partial Consent Decree on December 12, 1994, it reaffirmed that its judgment of September 28, 1993, constitutes a declaratory judgment for "Ongoing Response Costs." See id. ¶ 10.

Furthermore, paragraphs 12 and 19 of the 1994 partial Consent Decree explicitly recognize the Plaintiffs' rights to recover their response costs in this action, regardless of any claims the Defendants may be pursuing in another action. Paragraph 12 of the 1994 Consent Decree provides: "The United States and State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all other matters, including, but not limited to . . . liability for Ongoing Response Costs." Id. ¶ 12. "Ongoing Response Costs" is a defined term in the 1994 partial Consent Decree and it includes all costs, including interest, incurred by the Plaintiffs not covered by the 1994 Consent Decree. Id. ¶ 3.f.

Paragraph 19 of the 1994 Consent Decree provides: "Settling Defendants likewise agree that they will not seek to stay or otherwise delay the supplemental

response cost claim and further agree that the supplemental response cost claim may proceed simultaneously with the counterclaims." Id. ¶ 19 (emphasis added). Defendants reneged on that agreement, and the Court, we submit, erred in allowing the delay by granting the stay.

Defendants rely on Paragraph 14 of the 1994 Consent Decree to support their argument that the 1994 Consent Decree negated the Court's 1993 published decision.[1] Defendants' reliance is misplaced. Paragraph 14 of the 1994 Consent Decree provides:

> No final judgment has been entered in this action from which an appeal as of right may be taken and, by agreement of the parties, no such final judgment shall be entered against Settling Defendants prior to the entry of judgment in the counterclaims asserted by these defendants in this action.

Docket No. 270 ¶ 14 (emphasis added).

First of all, there are no counterclaims "in this action." This Court entered a final judgment on the Defendants' CERCLA counterclaims against the United States for arranger liability on October 13, 1999. See Docket No. 489, at 5.[2] As for the Defendants' contract-based counterclaims, this Court lacked jurisdiction and transferred them to the Court of Federal Claims. See Docket No. 529 ¶ 1. In that same order, this Court stated that "All remaining counterclaims filed by the Oil

---

[1] Defendants originally made this argument in their Opposition to Plaintiffs' 2006 Motions for Summary Judgment, see Docket No. 571 at 8-9, and raised it again during the August 5, 2019 Status Conference.

[2] Ultimately, the decision on these counterclaims was reversed by the Ninth Circuit, holding the United States was not an arranger and has no liability under CERCLA for cleanup costs of non-benzol wastes. United States v. Shell Oil Company, et al., 294 F.3d 1045, 1048-1049, 1059 (9th Cir. 2002).

Companies against the United States not heretofore disposed of are dismissed." Id. ¶ 2.  Accordingly, even if Paragraph 14 of the Consent Decree were incorrectly interpreted to set preconditions on when the Plaintiffs could seek recovery of their response costs, the 1999 Final Judgment and 2005 Amended Transfer Order make clear those conditions are currently satisfied by the entry of judgment dismissing Defendants' counterclaims.

Furthermore, in the above-referenced Stipulated Final Judgment Pursuant to Rule 54(b) FRCP, the Defendants agreed that "Plaintiffs [the United States and the State] retain all their rights to pursue their claims for response costs to judgment in this Court . . . ."  See Docket No. 489, at 4.  Therefore, the Stipulated Final Judgment not only constituted a final judgment in this action on the Defendants' counterclaims, it expressly recognized the Plaintiffs' right to pursue their cost recovery claims in this Court.  Thus, even if there were any ambiguity arising from the 1994 Consent Decree, it was most certainly clarified by the Stipulated Final Judgment entered by this Court five years later.

Finally, contrary to Defendants' assertion, their yet-to-be filed contract claims against the United States are not counterclaims in this action.  Defendants' assertion at the August 5, 2019 status conference that their contract-based claims, which must be brought in the Court of Federal Claims, are similar to their original transferred contract claims only supports this conclusion.  As this Court ruled in 2005, it lacks jurisdiction over contract claims against the United States, Docket No. 529 ¶ 1, meaning that the Defendants' contract-based claims were never properly a part of the action in this Court.  The same is true of the Defendants' yet-to-be filed contract claims.

Certainly, Defendants are entitled to seek reimbursement in the Court of Federal Claims for the response costs they pay to the Plaintiffs.  But, to the extent that Defendants are entitled to indemnification of the response costs owed to the

Plaintiffs, such indemnification does not usurp the Plaintiffs' claims against them. CERCLA Section 107(e)(1), 42 U.S.C. § 9607(e)(1), provides:

> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section.

Accordingly, this Court should lift the 2007 stay and allow the Plaintiffs to proceed with their CERCLA response cost claims as intended by the statute, the 1994 Consent Decree, and the 1999 Stipulated Final Judgement. As this Court ruled in 1993, the Defendants will not be unduly prejudiced since they will be reimbursed for costs paid to the Superfund and the State that are properly attributable to another party, even if that party is the federal government. 841 F. Supp. at 975.

### B. There is No Continuing Justification for the Stay

Defendants further argue that maintaining the stay, pending resolution of their contract claims, will forestall unnecessary litigation of the Plaintiffs' response cost claims. Again, the Defendants are wrong. Their position assumes that if the Defendants are successful on their contract claims, the United States can, and should, reimburse itself for the CERCLA response costs at issue.

That, however, would take an act of Congress. The Appropriations Clause of the Constitution prohibits shifting funds from one agency to another without a specific statutory authorization. U.S. Const. art. I, § 9, cl. 7. Any reimbursement that the Defendants obtain for their contract claims will come from the Judgment Fund, which is entirely separate from the Superfund used to respond to the threat to public health and the environment posed by hazardous waste sites around the

country. 26 U.S.C. § 9507. One of the manners in which the Superfund is replenished is from amounts recovered from liable parties such as the Defendants in this case. Id. § 9507(b)(2).

As the Judgment Fund's name implies, payments from it can only be triggered by a judgment against the United States and certification from the Secretary of the Treasury. See 41 U.S.C. § 7108 and 31 U.S.C. § 1304. The Defendants' claim submitted to the General Services Administration on July 29, 2019, includes a sum certain for costs Defendants have incurred and vaguely references the Plaintiffs' cost recovery claims without providing a dollar amount. (Exhibit 1, at 7, 8). Indeed, the Defendants cannot provide a dollar amount for Plaintiffs' response costs until they have paid the Plaintiffs' response costs, which continue to accrue interest. Accordingly, a decision by the General Services Administration on Defendants' July 29, 2019 claim will not resolve the costs the Plaintiffs have incurred and continue to incur and the Defendants have not paid. Quite simply, the Defendants' breach of contract claims can never resolve the Plaintiffs' CERCLA claims in this Court.

There are two possible outcomes at the Court of Federal Claims: the Defendants are made whole for all CERCLA costs, including those paid to reimburse the Governments' response costs, or the recovery of the Defendants' costs is offset or reduced due to complex legal arguments over which this Court lacks jurisdiction. Regardless, the Plaintiffs' CERCLA cost recovery claims will need to be resolved by this Court.

Even assuming arguendo that the United States could reimburse EPA's Superfund from the Judgment Fund, the Court of Federal Claims contract litigation cannot resolve the State of California's response cost claims against the Defendants. This is because, at most, the contracts at issue in the Court of Federal Claims would require the United States to indemnify the Defendants for any

CERCLA response cost payments to California. Those contracts do not require the United States to defend the Defendants against California in this case. Accordingly, even if the Defendants ultimately succeed on their contract claims against the United States, California's response cost claims would remain unresolved in this court.

For the foregoing reasons, the Governments' claims for reimbursement of response costs in this Court should not be allowed to languish while the Defendants again litigate their breach of contract claims in the Court of Federal Claims. All that would be achieved is further delay in resolving the Plaintiffs' decades-old response cost claims against the Defendants.

## CONCLUSION

The Plaintiffs request that the Court lift the stay so that the Plaintiffs can file motions to recover their response costs. The Plaintiffs appreciate the Court's desire to move the case forward and will work swiftly to accommodate a speedy resolution.

Respectfully submitted,

Plaintiff United States of America

/s/ William A. Weinischke
William A. Weinischke
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources
    Division
United States Department of Justice
(202) 514-4592
Bill.weinischke@usdoj.gov

                                        Plaintiff State of California

                                        /s/Sparsh Khandeshi
                                        Sparsh Khandeshi
                                        Deputy Attorney General
                                        California Department of Justice
                                        (619) 738-9061
                                        sparsh.khandeshi@doj.ca.gov

# CERTIFICATE OF SERVICE

Case Name:  USA, et al., v. Shell Oil Company, et al.           No.  CV 91-00589 VAP

I hereby certify that on September 4, 2019, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## CORRECTED MEMORANDUM IN SUPPORT OF MOTION TO LIFT STAY

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On September 4, 2019, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

| | |
|---|---|
| Kermit David Marsh<br>Beam Brobeck West Borges & Rosa LLP<br>1301 Dove Street, Suite 700<br>Newport Beach, CA 92660<br>***Attorney for Deft. McAuley LCX Corporation*** | Jeffrey Zeddock B. Springer<br>Demetriou, Del Guercio, Springer, & Francis, LLP<br>915 Wilshire Blvd., Ste. 2000<br>Los Angeles, CA 90017-3496<br>***Attorney for Deft. McAuley LCX Corporation*** |
| Peter R. Taft<br>Munger Tolles & Olson LLP<br>355 S. Grand Ave., 35th FL<br>Los Angeles, CA 90071-1560<br>***Attorney for Deft. Texaco, Inc.*** | Richard B. Stewart<br>U.S. Department of Justice<br>Environment Enforcement Section<br>301 Howard, Ste. 870<br>San Francisco, Ca 91405<br>***Attorney for Plaintiff USA*** |
| Sang Min Lee<br>11005 Marcliff Rd.<br>Rockville, MD 20852<br>***Attorney for Deft. Atlantic Richfield Company*** | |

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 4, 2019, at San Diego, California.

_____          _____
          C. Sheppard                                Signature
           Declarant

SD2019500473
POS- Memo of P's & A's.docx