# EXHIBIT 1

# Cooper & Kirk
### Lawyers
A Professional Limited Liability Company
## 1523 New Hampshire Avenue, N.W.
## Washington, D.C. 20036

Michael W. Kirk
(202) 220-9671
mkirk@cooperkirk.com

(202) 220-9600
Fax (202) 220-9601

July 29, 2019

**Via FedEx**

Emily W. Murphy
Administrator
United States General Services Administration
1800 F Street, NW
Washington, DC 20405

      Re:    **Claims on World War II Aviation Gasoline Contracts**

Dear Ms. Murphy:

      Pursuant to Section 13(a) of the Contract Settlement Act of 1944 (the "CSA" or the "Act"), 41 U.S.C. § 113(a), and the decisions of the United States Court of Appeals for the Federal Circuit in *Shell Oil Co. v. United States*, 896 F.3d 1299 (Fed. Cir. 2018), and *Shell Oil Co. v. United States*, 751 F.3d 1282 (Fed. Cir. 2014), Shell Oil Company ("Shell"), Union Oil Company of California ("Union"), Atlantic Richfield Company ("Atlantic Richfield"), and Texaco Inc. ("Texaco") (collectively referred to as the "Oil Companies"), by undersigned counsel, respectfully demand a decision and written findings addressing their termination claims on the contracts attached hereto as Exhibits 1-8 (collectively referred to as the "Avgas Contracts"). Specifically, the Oil Companies respectfully demand reimbursement for costs that the Oil Companies have been required to pay — and that they reasonably expect to be required to pay in the future — pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. §§ 9601 et seq., in connection with the McColl Superfund Site ("McColl Site" or the "Site"), located in Fullerton, California. In total, the Oil Companies demand $7,309,398.86 in costs and interest incurred from December 1, 2015 through June 30, 2019, under the terms of the Avgas Contracts and the Act, plus a determination and finding that the United States must pay all future McColl-Site-related costs that the Oil Companies will incur.

      We direct this letter to the United States General Services Administration ("GSA") as the successor-in-interest to the contracting agency, the Defense Supplies Corporation ("DSC"). Pursuant to Section 13(a) of the Act, the Oil Companies demand delivery of the GSA's determination and findings within 90 days of the receipt of this demand.

# Cooper & Kirk
### Lawyers

Emily W. Murphy
July 29, 2019
Page 2

## I.    Background[1]

During World War II, the Oil Companies or their predecessors-in-interest entered into contracts with the Defense Supplies Corporation for the production of aviation gasoline (avgas), "the most critically needed refinery product during World War II." *Shell Oil Co.*, 751 F.3d at 1285 (quotation marks omitted). The following Avgas Contracts are identical in all relevant respects:

1.    On April 10, 1942, Shell and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas. This contract is attached hereto as Exhibit 1.

2.    On May 1, 1943, Shell and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas. This contract is attached hereto as Exhibit 2.

3.    On December 31, 1942, Union and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas. This contract is attached hereto as Exhibit 3.

4.    On May 1, 1943, Union and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas. This contract is attached hereto as Exhibit 4.

5.    On February 3, 1942, Richfield Oil Corporation, a predecessor-in-interest to Atlantic Richfield, and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas. This contract is attached hereto as Exhibit 5.

6.    On February 20, 1943, Richfield Oil Corporation, a predecessor-in-interest to Atlantic Richfield, and the United States, through the DSC, entered into a contract

---

[1] A more detailed recitation of the background facts can be found in the two Federal Circuit decisions, *see Shell Oil Co.*, 896 F.3d at 1303–06; *Shell Oil Co.*, 751 F.3d at 1285–90, attached hereto as Exhibits 9 and 11.

Cooper & Kirk
    Lawyers

Emily W. Murphy
July 29, 2019
Page 3

       for the sale and purchase of large volumes of avgas. This contract is attached hereto as Exhibit 6.

7.      On January 17, 1942, The Texas Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas. This contract is attached hereto as Exhibit 7.

8.      On February 8, 1943, The Texas Company, a predecessor-in-interest to Texaco Inc., and the United States, through the DSC, entered into a contract for the sale and purchase of large volumes of avgas. This contract is attached hereto as Exhibit 8.

The Avgas Contracts each included an indemnification provision that provided as follows:

> <u>Buyer shall pay[,] in addition to the prices as established in [earlier provisions of the contract] hereof, any new or additional</u> taxes, fees, or <u>charges</u>, other than income, excess profits, or corporate franchise taxes, <u>which Seller may be required by any</u> municipal, state, or <u>federal law</u> in the United States or any foreign country <u>to</u> collect or <u>pay by reason of the production, manufacture, sale or delivery of the commodities delivered hereunder.</u>

*See, e.g.*, Ex. 1, Shell Avgas Contract, § XII(a) (emphases added).

      "The Oil Companies held up their end of the bargain: avgas production increased over twelve-fold from approximately 40,000 barrels per day in December 1941 to 514,000 barrels per day in 1945, and was crucial to Allied success in the war." *Shell Oil Co.*, 751 F.3d at 1287. The production of avgas necessarily led to the production of sulfuric acid waste, which the Oil Companies disposed of at the McColl Site during the war. *Id.* at 1288. The United States terminated the Avgas Contracts at the end of World War II. *Id.*

      In 1991, the United States and California sued the Oil Companies under CERCLA, alleging that they were responsible for the release of hazardous substances at the McColl Site. The Oil Companies counterclaimed for breach of contract, arguing that the United States was responsible for the cleanup costs at the McColl Site via the indemnification provision of the Avgas Contracts. The district court held that both the Oil Companies and the United States were

# Cooper & Kirk
### Lawyers

Emily W. Murphy
July 29, 2019
Page 4

liable as "arrangers" under CERCLA, *see United States v. Shell Oil Co.*, 294 F.3d 1045, 1048 (9th Cir. 2002), and, after a trial, it also held that the United States was responsible for 100 percent of the costs of cleaning up the waste at the McColl Site, *see United States v. Shell Oil Co.*, 13 F. Supp. 2d 1018, 1019, 1030 (C.D. Cal. 1998).

The United States Court of Appeals for the Ninth Circuit affirmed the district court's conclusion that the United States was liable for 100 percent of the cleanup costs of the benzol waste deposited at the Site (which was about 5.5 percent of the waste), but it reversed the holding that the United States was liable under CERCLA as an "arranger" for the cost of cleaning up the non-benzol sulfuric acid waste at the Site. *See Shell Oil Co.*, 294 F.3d at 1049. In accordance with this ruling, the Oil Companies have borne the cost of cleaning up the acid waste.

The district court transferred the Oil Companies' breach-of-contract counterclaim to the United States Court of Federal Claims (CFC), which had jurisdiction over the matter. The Oil Companies thereafter voluntarily dismissed their counterclaim without prejudice so that they could submit a demand for a decision and written findings to the GSA under the Contract Settlement Act. *See* Exhibit 13 attached. The GSA issued a decision on the Oil Companies' initial demand on February 15, 2006, *see* Exhibit 12 attached, less than 90 days after the Oil Companies submitted it. The GSA rejected the Oil Companies' demand for indemnification.

The Oil Companies thereafter filed a complaint in the CFC for breach of contract. The CFC granted summary judgment to the Oil Companies, holding that the United States was liable for 100 percent of the cleanup costs at the McColl Site. *See Shell Oil Co. v. United States*, 86 Fed. Cl. 470 (2009); *Shell Oil Co. v. United States*, 80 Fed. Cl. 411, 420 (2008). The United States Court of Appeals for the Federal Circuit later vacated that judgment because the CFC judge had a financial conflict of interest. *See Shell Oil Co. v. United States*, 672 F.3d 1283, 1291 (Fed. Cir. 2012).

The case was reassigned on remand, and the CFC granted summary judgment to the United States on liability. *See Shell Oil Co. v. United States*, 108 Fed. Cl. 422, 448 (2013). The Federal Circuit reversed, holding that "[t]he plain language of the new or additional charges provision thus requires the Government to indemnify the Oil Companies for CERCLA costs incurred 'by reason of' the avgas contracts." *Shell Oil Co.*, 751 F.3d at 1293. The Federal Circuit remanded "for the Court of Federal Claims to determine how much acid waste at the McColl site was 'by reason of' the avgas contracts." *Id.* at 1303.

# Cooper & Kirk
#### Lawyers

Emily W. Murphy
July 29, 2019
Page 5

On remand, the CFC held a trial on damages in early 2016, in accordance with the Federal Circuit's mandate. The CFC found that "*all* of the of the acid waste disposed of at the McColl Site was 'by reason of' the Avgas Contracts" and awarded the Oil Companies $99,509,847.32 in damages. *Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 42 (2017), *aff'd* 896 F.3d 1299 (Fed. Cir. 2018) (emphasis added) (attached as Exhibit 10). This represented 100 percent of the costs that the Oil Companies had incurred at the McColl Site through November 30, 2015, plus the interest on those costs that had accrued up to that point in time.

On July 18, 2018, the Federal Circuit unanimously affirmed the CFC's judgment. *Shell Oil Co.*, 896 F.3d at 1314 ("[W]e conclude the Court of Federal Claims did not err in its award of damages."). The United States chose not to seek rehearing or rehearing en banc, nor did it petition the United States Supreme Court for a writ of certiorari. The judgment in favor of the Oil Companies therefore became final, and the United States paid the Oil Companies on April 1, 2019, in accordance with the judgment.

Under the 2018 and 2014 decisions of the Federal Circuit, there can no longer be any doubt that, pursuant to the Avgas Contracts, the United States is responsible for indemnifying the Oil Companies for 100 percent of the cleanup costs that they have incurred or will incur at the McColl Site, plus 2.5 percent simple interest under the CSA.[2]

---

[2] Starting in the 1980s, "[e]ach of the Oil Compan[ies] . . . sued their insurers, claiming that . . . insurance policies . . . entitle[d] each Oil Company to be reimbursed for response costs at the McColl site." *Shell Oil Co.*, 896 F.3d at 1316 (third alteration added). Any insurance proceeds that may have been recovered as a result of those lawsuits, however, are irrelevant to the United States' indemnification obligations under the Avgas Contracts for at least three independent reasons. First, the Federal Circuit has held that an insurance offset is an affirmative defense, *see Shell Oil Co.*, 896 F.3d at 1314–15, and because the United States failed to raise that defense in the previous CFC litigation, *res judicata* bars the United States from raising the defense now. *See Heiser v. Woodruff*, 327 U.S. 726, 735 (1946). Second, consideration of any insurance proceeds recovered by the Oil Companies would violate the rule that damages owed for breach of contract will not be reduced when a victim passes all or part of the costs proximately caused by the breach to a third party in a transaction that was not itself proximately caused by the breach. *See Southern Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 533–34 (1918). Third, the

# Cooper & Kirk
#### Lawyers

Emily W. Murphy
July 29, 2019
Page 6

II.     <u>New Costs and Interest Incurred by the Oil Companies Since November 30, 2015</u>

Because the remediation of the McColl Site remains ongoing, the Oil Companies have continued to incur costs remediating the Site since November 30, 2015, the end of the period addressed in the CFC's 2016 damages trial. Through June 30, 2019, those costs amount to $1,464,646.72 paid to C2 REM, the contractor charged with maintaining the remedy at the Site, and $69,300.00 to McAuley LCX Corp., the contractor that provides security at the Site.

Under the terms of the CSA, "[e]ach contracting agency shall allow and pay interest on the amount due and unpaid from time to time on any termination claim under a prime contract at the rate of 2 ½ per centum per annum for the period beginning thirty days after the date fixed for termination *and ending with the date of final payment* . . . ." 41 U.S.C. § 106(f) (emphasis added) (repealed).[3] Interest continues to run on the costs the Oil Companies incurred after November 30, 2015. Through June 30, 2019, the interest amounts to $63,647.20 on the C2 REM costs and $2,914.40 on the McAuley costs. This interest will continue to accrue until final payment is made on the costs incurred after November 30, 2015.

---

collateral source rule bars consideration of any insurance proceeds recovered by the Oil Companies because doing so would provide the United States with an inequitable windfall. *See LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363, 1372 (Fed. Cir. 2003).

[3] "In 2011, the CSA was repealed and replaced by An Act To Enact Certain Laws Relating To Public Contracts, Pub. L. 111–350, 124 Stat. 3677. The 2011 Act contained a savings clause providing that, '[t]he laws . . . are repealed except for *rights and duties that matured,* penalties that were incurred, and proceedings that were begun before the date of enactment of this Act.' Pub. L. No. 111–350, § 7(b), 124 Stat. 3677, 3855 (2011) (emphasis added). Consequently, . . . the Oil Companies['] right to be reimbursed for environmental remediation costs under the Avgas Contracts matured prior to 2011," and "the Oil Companies may still recover for interest on the environmental remediation costs they have incurred." *Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 39 n.42 (2017), *aff'd* 896 F.3d 1299 (Fed. Cir. 2018). Moreover, because the United States failed to raise any argument against the applicability of the CSA to the Oil Companies' post-repeal costs and interest in the previous CFC litigation, any such argument is precluded. *See Heiser*, 327 U.S. at 735. Accordingly, the CSA applies to these claims notwithstanding the 2011 repeal.

# Cooper & Kirk
### Lawyers

Emily W. Murphy
July 29, 2019
Page 7

As noted above, on April 1, 2019, the United States made final payment on all costs the Oil Companies incurred through November 30, 2015, including $64,219,514.46 that the Oil Companies incurred through October 31, 1998 and costs paid to C2 REM and McAuley from 2002 through November 30, 2015. However, the payment made on the prior judgment did not include the interest that accrued on these costs between December 1, 2015 and March 31, 2019 (i.e., the day before the United States made payment). Because interest continued to accrue on these costs "until the date of final payment," 41 U.S.C. § 106(f), the Oil Companies are entitled to payment of interest covering this period in the following amounts:

- Interest on Costs Incurred Through Oct. 31, 1998: $5,351,626.40

- Interest on C2REM Costs Incurred From 2002 Through Nov. 30, 2015: $335,790.64

- Interest on McAuley Costs Incurred From 2002 Through Nov. 30, 2015: $21,473.51

In total, through June 30, 2019, the Oil Companies have incurred $7,309,398.86 in costs and interest owed to them by the United States in accordance with the Avgas Contracts and Section 6(f) of the CSA.

## III.    Future Costs and Interest

The Oil Companies will continue to incur remediation costs at the McColl Site well into the future. Regardless of the amount, the United States must indemnify the Oil Companies for 100 percent of future remediation costs at the Site and pay the Oil Companies 2.5 percent simple interest from the time the costs are incurred through the date of final payment of those costs.

In addition, the United States and California have continued to claim that the Oil Companies are liable under CERCLA for the costs that the United States and California incurred remediating the Site, with statutory interest. The United States claims approximately $45 million in costs and interest, while California claims approximately $8.1 million in costs and interest. Although the Oil Companies dispute these claims, if the Oil Companies are held liable, the United States must indemnify the Oil Companies for 100 percent of the costs and interest paid by the Oil Companies to the United States and California in the CERCLA litigation.

# Cooper & Kirk
### Lawyers

Emily W. Murphy
July 29, 2019
Page 8

## IV.  Conclusion

For the foregoing reasons, the Oil Companies are now entitled to reimbursement of $7,309,398.86 in costs and interest owed to them by the United States through June 30, 2019, in accordance with the Avgas Contracts and Section 6(f) of the CSA. As explained in the CFC's 2017 decision—and as affirmed by the Federal Circuit—those costs and interest should be paid to the Oil Companies in the following proportions and amounts:

| | |
|---|---|
| Shell (58.58 percent): | $4,281,845.85 |
| Union (18.94 percent): | $1,384,400.14 |
| Atlantic Richfield (18.94 percent): | $1,384,400.14 |
| Texaco (3.54 percent): | $258,752.72 |

In addition, the Oil Companies are entitled to a determination that the United States will pay for any response costs and interest that the Oil Companies incur in the future, as well as any costs and interest that the Oil Companies are required to pay to the United States or California in the ongoing CERCLA action. Thus, in accordance with § 13(a) of the CSA, 41 U.S.C. § 113(a), the Oil Companies respectfully demand that the contracting agency issue written findings determining the amount due on the Oil Companies' termination claims as described above.

Sincerely,

*Michael W. Kirk*

Michael W. Kirk
Counsel for the Oil Companies

# Cooper & Kirk
### Lawyers

Emily W. Murphy
July 29, 2019
Page 9


cc (w/enclosures):          Stephen C. Tosini, United States Department of Justice

cc (w/o enclosures):        William A. Weinischke
                            Sparsh Khandeshi
                            Madeline Gallo
                            Robin McGinnis
                            Greg A. Christianson