GREG CHRISTIANSON (State Bar No. 181231)
NATHANIEL P. JOHNSON (State Bar No. 294353)
**ALSTON & BIRD LLP**
560 Mission St., Suite 2100
San Francisco, CA 94105
Telephone: 415-243-1000
Facsimile: 415-243-1001
E-mail: greg.christianson@alston.com
nate.johnson@alston.com

Attorneys for SHELL OIL COMPANY, TEXACO INC., ATLANTIC RICHFIELD COMPANY and UNION OIL COMPANY OF CALIFORNIA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SHELL OIL COMPANY, et al., <br><br> Defendants. | Case No. 91-00589 (CJC) <br> Assigned to the Honorable Cormac J. Carney <br><br> **OPPOSITION TO MOTION TO LIFT STAY** <br><br> Date: October 28, 2019 <br> Time: 1:30 p.m. <br> Dept.: 7C, First Street Court House |

## I.  INTRODUCTION

This Court should deny the Motion to Lift Stay ("Motion") filed by the Plaintiffs United States and State of California. Continuing the stay is necessary to avoid needless litigation and to advance judicial economy.

In this action, the United States and State are seeking reimbursement of their alleged response costs at the McColl Superfund Site ("Site"). However, the United States itself had agreed in World War II-era contracts with Defendants to pay certain costs arising from operations at the Site. When the United States failed to accept responsibility for Defendants' costs at the Site, Defendants asserted breach of contract claims against the United States. Given special procedures for contract claims against the United States, Defendants' claims could not be resolved in this Court but have instead been litigated in the Court of Federal Claims. Since the United States' contract liability may also cover all the costs at issue in this action, the Court stayed this action in 2007 to allow Defendants and the United States to resolve their dispute regarding the United States' contract liability. The stay made good sense since there would be no need for Defendants to litigate the recoverability of the United States' and State's response costs at the Site if the United States itself ultimately is responsible for paying all such costs.

Last year, the Federal Circuit affirmed a Court of Federal Claims judgment holding the United States contractually liable for Defendants' response costs at the Site. *See Shell Oil Co. v. United States*, 896 F.3d 1299, 1306 (Fed Cir. 2018). As ordered by the Court of Federal Claims, the United States recently reimbursed Defendants nearly $100 million for the response costs Defendants incurred in cleaning up the Site.

The Federal Circuit ruling should have mooted this action. The United States is the real party in interest on both sides of its claims against Defendants in this Court and is also ultimately responsible for the State's recoverable response costs at the Site. Unfortunately, it appears that the United States is refusing to honor the

- 2 -
OPPOSITION TO MOTION TO LIFT STAY
LEGAL02/39277960v3

Federal Circuit's decision with respect to the costs at issue here. Instead, after thirteen years of litigation in the Court of Federal Claims, the United States is arguing that it should be allowed to re-litigate its liability for any additional costs under the rationale that it failed to raise an argument in the prior litigation and should be given a do-over to address that one issue.

While Defendants believe that their judgment against the United States constitutes res judicata and that the United States' additional argument would fail as matter of law, Defendants have submitted new claims with the United States under the Contract Settlement Act of 1944, seeking their additional response costs at the Site. See Mtn at Ex. 1. The United States' response to this claim is due October 28, 2019. If the United States denies the claim despite the Federal Circuit's ruling, Defendants will diligently pursue an action in the Court of Federal Claims to ensure that the United States' last remaining efforts to shirk its responsibility for Defendants' response costs at the Site are resolved as quickly as possible.

In the meantime, the stay of this action should remain in place. If the United States is again adjudged liable on Defendants' contract claims, there will be no need for any significant additional proceedings in this action. In their Motion, Plaintiffs argue that the United States cannot directly reimburse itself or pay the State even if it is ultimately responsible for all costs at issue in this action, suggesting that Defendants would need to act as a conduit for the United States' payments. See Mtn at 7:19–8:16. For example, they contend that the United States is powerless to transfer funds directly from its Judgment Fund to its Superfund and would need Defendants to front the money to the Superfund and the State and then seek reimbursement. *Id.* Even if this claim is true, these issues are mere logistics. Once the United States has exhausted its arguments on the contract claims and agrees to honor the rulings of the Court of Federal Claims, Defendants stand ready to work with the United States on these logistical issues to ensure that the United States finally fulfills its obligations at the Site.

However, if the stay is lifted now while the United States continues to dispute its contract liability, Defendants will be forced to litigate the recoverability of more than $50 million in alleged past response costs. Given the history of this litigation, no rulings have yet been issued regarding the recoverability of any costs, nor has any significant discovery been conducted into the costs claimed. As summarized in prior pleadings, Defendants have identified significant issues with Plaintiffs' costs claims that would need to be addressed. *See e.g.*, Dkt. 571 at 11–25 (3/13/2006 Consolidated Memo. of Points & Authorities in Opposition to Motion for Partial Summary Judgment). While Defendants issued certain discovery to Plaintiffs prior to the stay, Plaintiffs thwarted Defendants' discovery efforts, with the United States failing to appear at nine of ten duly-noticed depositions in violation of the Federal Rules of Civil Procedure. *Id.* at 6–8. Moreover, certain issues may require expert testimony. *Id.* at 19 –25. If the stay is lifted, additional fact discovery and expert disclosures will be required prior to any motion for summary judgment. These are the very efforts that this Court sought to avoid by staying this action in 2007. Now, twelve years later, when the United States has nearly exhausted its efforts to avoid responsibility for Defendants' costs at the Site, it would make no sense to lift the stay at the eleventh hour to force the parties to litigate these costs unnecessarily.

Continuing the stay would not impede ongoing efforts at the Site. In fact, Defendants completed the Site cleanup in 1998 and are continuing to perform ongoing operation and maintenance work. As noted on the U.S. Environmental Protection Agency website, "[t]he most recent review [in September 2017] concluded that response actions at the site are in accordance with the remedy selected by EPA and that the remedy continues to be protective of human health and the environment."[1] The majority of the Plaintiffs' costs at issue in this litigation

---

[1] U.S. E.P.A., *McColl Fullerton, CA: Cleanup Activities*, https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.cleanup&id=0901757 (accessed Oct. 1, 2019).

were incurred more than twenty years ago. Moreover, if the United States were truly concerned about the need for replenishing the general account of the Superfund with reimbursements for past costs, it could accomplish that result at any time by honoring the decision of the Federal Circuit and agreeing to fulfill its contractual obligations at this Site. It is the United States' ongoing refusal to accept responsibility for its contractual commitments that has delayed these payments to the Superfund and the State.

## II.  ARGUMENT

### A. Plaintiffs Have Not Shown That the Stay Was Improperly Granted.

In their Motion, Plaintiffs seek to relitigate prior decisions by this Court, arguing that this Court erred in issuing the stay in 2007. These arguments were already rejected by this Court in 2007 and are still without merit.

The United States and State contend that they should have been permitted to seek a judgment against Defendants in 2007 before the United States' own liability for these costs is determined by reaching back to a 1993 order issued by this Court, in which the Court concluded that cost recovery claims can proceed before counterclaims are resolved. Mtn at 3. They argue that this statement by the Court twenty-six years ago is the "law of the case" that should be followed. This argument fails for several reasons.

First, the circumstances present when the Court issued its 1993 order changed dramatically the following year when the United States and State voluntarily agreed to accept a different process. In the 1994 Partial Consent Decree issued by this Court, the United States and State agreed in exchange for a payment of $18 million from Defendants that they would not seek a final judgment on their claims "prior to entry of judgment in the counterclaims asserted by these defendants in this action." Dkt. 270 at ¶ 14. This 1994 Partial Consent Decree constitutes not just an order by the Court but also a binding contract between the parties. *See*

*United States v. Asarco, Inc.*, 430 F.3d 972, 980 (9th Cir. 2005) ("Without question courts treat consent decrees as contracts for enforcement purposes.").

Plaintiffs argue, however, that their agreement to defer the judgment on their claims became null and void when Defendants counterclaims were transferred to the Court of Federal Claims. Mtn. at 5–6. But when Defendants' counterclaims were transferred to the Court of Federal Claims, the Court clearly distinguished those transferred counterclaims from the "remaining counterclaims . . . [that] are dismissed." Dkt. 529 at 2. The provision of the 1994 Consent Decree was not rendered void merely because certain counterclaims were transferred to the Court of Federal Claims, especially when those claims indisputably concern the very same response costs at issue in this Court.

Plaintiffs' also fail to acknowledge that 2007 was the first time that this Court addressed the various arguments asserted by the parties regarding the proper order and timing of the litigation regarding recoverability of Plaintiffs' costs. In fact, Plaintiffs ignore the significant issues of judicial economy that were presented to the Court before it issued the stay in 2007. *See* Dkt. 595 (Defendants' Second Supplemental Report on Status). As the Court itself summarized, "Defendants claim that if they prevail on their motion before the Court of Federal Claims, the United States could be required to indemnify them for any and all alleged costs that Plaintiffs are seeking to recover from Defendants through their motions pending before the District Court." Dkt. 598 at 3. The Court ultimately "adopt[ed] the position of Defendants." *Id.* at 3–4.

Instead, Plaintiffs cite Section 107(e)(1) of CERCLA, 42 U.S.C. Section 9607(e)(1) for the proposition that claims for indemnification by third parties do not relieve any party of their underlying liability under CERCLA. Mtn at 7. Defendants have never argued that the United States' contractual liability for Defendants' response costs absolves them of liability under CERCLA. Rather, Defendants have noted the substantial waste of resources that would result if the parties litigate the

1 recoverability of more than $50 million of alleged costs when the United States
2 itself may ultimately be responsible for all of the costs sought in this action.
3       More fundamentally, Plaintiffs' argument that this Court should be bound by
4 prior purported "law of the case" fails to acknowledge that the 2007 order has
5 constituted the law of the case for twelve years. After weighing the parties'
6 arguments and assessing the same issues that Plaintiffs' raise again here, Judge
7 Kelleher, upon consultation with Chief Judge Stotler, concluded that the action
8 should be stayed. Dkt. 598 at 3–4. Both Judges concluded "that it is premature for
9 the Court to rule on the pending motions for summary judgment, and that the Court
10 ought to wait until the Court of Federal Claims issues its decision." *Id.* Plaintiffs
11 were then given an extraordinary opportunity to argue for reconsideration of that
12 stay order, "[p]rocedural defects notwithstanding." Dkt. 608 at 2. Even upon
13 reconsideration, Judge Kelleher decided a stay was warranted, and issued an order
14 that "[n]o party to this action shall file any dispositive motions, including motions
15 for summary judgment, until further order of Court . . . ." Dkt. 610 at 2. If any order
16 of this Court constitutes the "law of the case" with respect to the stay, it is the 2007
17 order in which the Court considered and rejected the arguments that Plaintiffs now
18 seek to rehash regarding the initiation of the stay.

19 **B. Continuation of the Stay Would Further Judicial Economy.**

20       Under the circumstances of this case, it makes good sense for this Court to
21 exercise its inherent authority to advance judicial economy by continuing the stay.
22 *See* Fed. R. Civ. P. 16(b); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087–88
23 (9th Cir. 2002) (district courts have broad discretion to modify the trial schedule).
24       Despite the United States' efforts to avoid responsibility for its contractual
25 obligations at the Site, Defendants continue to diligently pursue a final resolution of
26 those issues. While Defendants recently prevailed in the Court of Federal Claims
27 and Federal Circuit, it appears the United States may refuse to honor the Federal
28 Circuit ruling with respect to any additional costs. As discussed above, however,

the United States will soon exhaust any last remaining arguments on the contract claims. At that time, the parties can discuss the most efficient process for effectuating the transfer of funds from the United States to the Superfund and to the State. Any additional proceedings in this Court until that time could constitute a complete waste of time, effort and judicial resources.

### III. CONCLUSION

The case was stayed for good reason. If the United States once again is found liable for all of Defendants' response costs, there will be no need for Defendants to litigate the recoverability of any costs in this action. For that reason, this Court has consistently maintained the stay of this case for twelve years. Now that Defendants have prevailed in the Court of Federal Claims and Federal Circuit, the United States' efforts to shirk its contractual obligations at the Site are finally coming to an end. The stay should therefore continue until the United States accepts Defendants' pending claims under the Contract Settlement Act or, if the United States fails to honor the Federal Circuit ruling, until its one remaining argument against liability is resolved in the Court of Federal Claims.

Dated: October 7, 2019     **ALSTON & BIRD LLP**

By: /s/
        Nathaniel P. Johnson
Attorneys for SHELL OIL COMPANY, TEXACO INC., ATLANTIC RICHFIELD COMPANY and UNION OIL COMPANY OF CALIFORNIA

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2019, I caused a copy of OPPOSITION TO MOTION TO LIFT STAY to be served upon the following counsel in the manner described below:

Via the Court's CM/ECF system:

| | |
|---|---|
| Sparsh S Khandeshi<br>CAAG - Office of the Attorney General<br>California Department of Justice<br>600 West Broadway Suite 1800<br>San Diego, CA 92101<br>Email: sparsh.khandeshi@doj.ca.gov | William A Weinischke<br>US Department of Justice<br>Environment & Natural Resources Division<br>P O Box 7611<br>Washington, DC 20044<br>Email: bill.weinischke@usdoj.gov |
| Patrick E Breen<br>Allen Matkins Leck Gamble Mallory and Natsis<br>515 South Figueroa Street, 7th Floor<br>Los Angeles, CA 90071-3398<br>213-622-5555<br>Email: pbreen@allenmatkins.com | |

/s/
Nathaniel Johnson

Attorneys for SHELL OIL COMPANY, TEXACO INC., ATLANTIC RICHFIELD COMPANY and UNION OIL COMPANY OF CALIFORNIA