# EXHIBIT 42

Exhibit 42
5847



UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION IX
75 Hawthorne Street
San Francisco, Ca. 94105-3901

SFUND RECORDS CTR
1654-04611

AR2551

SFUND RECORDS CTR
88103156

December 19, 1991

Bill Duchie
Shell Oil Co.
511 Brookhurst St.
P.O. Box 4848
Aneheim, CA  92803

Dear Mr. Duchie: Bill

As you are aware, EPA has been examining ways in which the Agency could expedite the remedy selection process for the McColl Superfund Site. The National Contingency Plan (NCP) defines a two-stage process (screening and nine-criteria analysis) by which the Agency evaluates alternatives for consideration as the preferred remedy. The screening stage was devised to remove non-viable alternatives from further consideration. The nine criteria stage was devised to allow the Agency to select the preferred alternative from those identified as viable in the screening stage. When appropriate, screening helps streamline the detailed analysis and can expedite the remedy selection process by reducing the resources being directed at that alternative.

BACKGROUND

The February 1989 Proposed Plan identified thermal destruction as the preferred alternative. EPA has subsequently collected substantial information on that alternative. The 1990 trial excavation gave EPA an improved picture of what would be required for total site excavation. Further analysis of the thermal destruction remedy has enabled EPA to determine that rotary kiln incineration is the most appropriate thermal destruction technology, and has allowed EPA to choose on-site as the appropriate location for the treatment. During this additional analysis, EPA has also identified significant concerns about the thermal destruction alternative:

- Visual Impacts
- Noise Impacts
- Community Acceptance

*Printed on Recycled Paper*

Exhibit 42
5848

- Emission limitations and offsets
- Health and Safety Issues
- Increased Cost Estimates
- Timeframe for Remediation

In light of the new information, including these concerns, EPA decided to perform a screening analysis on the thermal destruction alternative. EPA's screening analysis for thermal destruction is summarized below.

## THE REQUIREMENTS OF THE NATIONAL CONTINGENCY PLAN

The screening process defined in the NCP [section 300.430(e)(7)] allows the Agency to consider three criteria in deciding whether to screen alternatives from further consideration.

- Effectiveness: This criterion considers the degree to which an alternative reduces toxicity, mobility, or volume through treatment, minimizes residual risk and affords long-term protection, complies with ARARs, minimizes short-term impacts, and the amount of time needed to achieve protection.

- Implementability: This criterion considers both technical and administrative feasibility.

- Cost: This criterion considers both the short and long-term costs associated with the implementation of an alternative. The NCP contains two methods by which an alternative can be screened using cost. First, if there is another alternative employing a similar method of treatment or engineering controls with similar effectiveness and implementability at a lower cost, then the alternative with a higher cost may be eliminated. Second, if the costs of the alternative are grossly excessive to the effectiveness of the alternative, then the alternative may be eliminated.

## OUTCOME OF THE SCREENING ANALYSIS

EPA has applied these criteria to information in the administrative record for the on-site thermal destruction alternative and has reached the following conclusions:

### Effectiveness:

EPA believes that on-site incineration would be an effective alternative. This belief is based on the following major factors: 1) All the contaminated soil and waste material would be destroyed and air emissions would be treated; 2) While short-term impacts are expected from the excavation and incineration activities, these impacts can be minimized; and 3) this alternative can likely be designed to comply with all ARARs.

Exhibit 42
5849

Implementability:

EPA believes that on-site incineration would be implementable but technically and administratively difficult. This belief is based on the following major factors: 1) The technology exists to both excavate and incinerate the McColl waste; 2) the technology is proven and available; and 3) the alternative could likely be constructed to meet SCAQMD and OSHA requirements.

However, we now recognize that the level of confidence in undertaking incineration today is less than it was in 1989 when the proposed plan was issued. This decrease in confidence is due to the following issues: 1) visual impact concerns, 2) noise impact concerns, 3) emissions inside and outside the enclosure, 4) OSHA concerns for worker safety, 5) SCAQMD concerns about air quality, and 6) length of implementation.

Cost:

While the estimated costs for incineration have increased since 1989, EPA believes that the current estimated cost for incineration is not grossly excessive to it's overall effectiveness.

The February 1989 proposed plan used a figure of $117 million as the cost for thermal destruction assuming that there would be 97,100 cubic yards of waste incinerated on-site, and the ash from the incinerator would be non-hazardous so it could be disposed of on-site. The February 1989 SROA report underlying the proposed plan presented a range of approximately $117 million to $399 million for thermal destruction based on varying assumptions. The assumptions for the high-end cost assumed that 265,800 cubic yards of waste would be incinerated on-site and the residual ash would need to be disposed of off-site. The proposed plan indicated EPA would be willing to implement the range of options.

The new information estimates the cost for on-site incineration to range from approximately $212 million to $399 million. These figures assume that 97,100 cubic yards of waste will be treated on-site, using a rotary kiln incinerator, and the ash will be disposed of on-site as non-hazardous waste. The range represents different excavation and incineration timeframes (from 2.5 years to 6.4 years). The 1989 figures were all based on excavation and incineration timeframes of approximately 1.4 to 4.0 years. In summary, even though cost ranges have increased, the Agency does not believe that the differences between the proposed plan and EPA's new feasibility studies dictate screening out of the alternative at this time. However, EPA will seriously reexamine the final cost estimates when EPA selects its preferred remedial alternative.

Exhibit 42
5850

CONCLUSIONS

Based on the review of the screening criteria and all new information to date, EPA has decided not to eliminate the thermal destruction alternative at the screening stage.

The agency has determined that it will continue to carry on-site incineration into the nine criteria stage of analysis.

The Agency is committed to a thorough and legally defensible remedy selection process based on an adequate administrative record. EPA will account for the above concerns in the nine-criteria analysis to compare the incineration alternative to the other available alternatives as we seek to determine the preferred remedy for the McColl site.

If you have any questions feel free to contact myself, or Pam Wieman or Steve Linder of my staff at (415) 744-2241, (415) 744-2242, or (415) 744-2243 respectively.

Sincerely,

John Blevins, Chief
Southern California Section

cc: IAC Members
    L. Goldshmidt, Sierra Club
    D. Bushey, Fullerton Hills Community Association
    K. Ritter, Fullerton Hills Community Association

Exhibit 42
5851

| | FAX TRANSMISSION | | |
|---|---|---|---|
| **TO** | Name : | John Kane | |
| | Organization : | | |
| | Mail Stop : | | |
| | Fax No. : | Area Code 714 | Number 992 - 2723 |
| | Verification No.: | Area Code | Number |
| **FROM** | Name : | John Blevins Hazardous Waste Management Division U.S. Environmental Protection Agency Region 9 75 Hawthorne Street San Francisco, California 94105 | |
| | Section : | H-6-1 | |
| | Branch : | H-6 | |
| | Mail Stop : | | |
| | Phone No. : | Area Code 415 | Number 744 - 2241 |
| | Fax No. : | Area Code 415 | Number 744-1796 FTS 484-1796 |
| | Verification No.: | Area Code 415 | Number |
| **DATE** | | | |
| **PAGES** | (Including Cover) | | |
| **SUB-JECT** | | | |
| **NOTE** | | | |

Exhibit 42
5852