# EXHIBIT 55

Exhibit 55
6755

SFUND RECORDS CTR
88108043

AR2463

# ALLEN, MATKINS, LECK, GAMBLE & MALLORY
ATTORNEYS AT LAW
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

515 SOUTH FIGUEROA STREET, EIGHTH FLOOR

LOS ANGELES, CALIFORNIA 90071-3398

TELEPHONE (213) 622-5555

TELECOPIER (213) 620-8816

FREDERICK L ALLEN
JOHN C GAMBLE
BRIAN C LECK
RICHARD C MALLORY
MICHAEL L MATKINS
MARVIN E GARRETT
MICHAEL E GLEASON*
MARK SHIPLEY
O'MALLEY M MILLER
THOMAS C FOSTER
ROBERT J CATHCART
R MICHAEL JOYCE
GERBEN HOEKSMA
THOMAS W HENNING
PATRICK E BREEN
LAWRENCE D LEWIS*
GEORGE T MCDONNELL
MICHAEL F SFREGOLA
JOSEPH E MCKEEVER
GLENN A SONNENBERG*
DAVID A B BURTON*
MONICA OLSON
THOMAS E GIBBS
VERNON C GAUNTT
DWIGHT L ARMSTRONG
PAUL D O'CONNOR
S LEE HANCOCK
BRUCE P HOWARD
MARK C MAZZARELLA
CYNTHIA L BURCH
DEBRA DISON HALL
ARCHIE T WRIGHT III
MICHAEL C PRUTER
MICHAEL H CERRINA
RICHARD E STINEHART
STEPHEN R THAMES
JOHN K MCKAY
DANA I SCHIFFMAN
ANNE E KLOKOW
CHERYL S RIVERS
LINDA K ENSBURY
NEIL N GLUCK
JOSEPH S KLEIN
DAVID W WENSLEY
GARY S MCKITTERICK
KEVIN E TEEL
KELLY STIRES
PATRICK J GRADY
WILLIAM J HARRIS
TIMISH M CHAIKOVSKY

RAY B GLINER
PAUL C GRACEY JR
ANTHONY S BOUZA
CHARLES N KENWORTHY
ROBERT M HAMILTON
MICHAEL J MURPHY
ANTHONY J OLIVA
DANA J DUNWOODY
DAVID R ZARO
JEFFREY R PATTERSON
JOHN B BERTERO, III
JANET A WINNICK
KARINA M BROWN
JEFFREY A HEINTZ
CRAIG D SWANSON
DEAN E ROEPER
RAMONA G SEE
BRADLEY N SCHWEITZER
BENNET M VAN OE BUNT
DANIEL R HATCH
MICHAEL L ABNEY
J CRAIG WILLIAMS
ALEXANDER SHIPMAN
GRETCHEN K HUDSON
DIONNE E CHRISTIAN
ROBYN B GRANT
THOMAS R SESTANOVICH
MARK R HARTNEY
PAMELA L ANDES
RICHARD L MILLER
JOSHUA D NELSON
THOMAS GALLI
JON S GRIZEL
BRIAN M HOYE
PHILIP M MOREMEN
REBECCA L GILBERT
MELLISA K GERARD
JENNIFER M CASEY
DAVID M GOOSENBERG
BRIAN J MOONEY
CLARA Y RUYAN
SCOTT S WELTMAN
LAWRENCE I WEINBERG
GREGORY B TRATTNER
CATHERINE M PAGE
MARK W HARRIGIAN
MICHAEL L SCHENKMAN
LEE ALI SHIRANI
ROBERT J SYKES
MATTHEW W KOART

*A PROFESSIONAL CORPORATION

ORANGE COUNTY OFFICE
18400 VON KARMAN, FOURTH FLOOR
IRVINE, CALIFORNIA 92715-1597
TELEPHONE (714) 553-1313
TELECOPIER (714) 553-8354

SAN DIEGO OFFICE
4370 LA JOLLA VILLAGE DRIVE, SUITE 300
SAN DIEGO, CALIFORNIA 92122
TELEPHONE (619) 552-1515
TELECOPIER (619) 552-1516

WEST LOS ANGELES OFFICE
11111 SANTA MONICA BLVD, SUITE 1220
LOS ANGELES, CALIFORNIA 90025-3342
TELEPHONE (213) 477-3581
TELECOPIER (213) 478-7162

OUR FILE NUMBER

S7694-002
187/1CLB

WRITER'S DIRECT DIAL NUMBER

714/851-5407

April 4, 1991

VIA FACSIMILE

Jean Rice, Esq.
Office of Regional Counsel
U.S. EPA, Region IX
75 Hawthorne Street
San Francisco, California  94105

   Re:  McColl Superfund Site

Dear Jean:

     On March 27, 1991, EPA informed representatives of Shell Oil Company, Union Oil Company of California, Atlantic Richfield Company, Texaco Refining and Marketing Inc. and Phillips Petroleum Company (the "Companies") that the Agency is delaying the Record of Decision ("ROD") for the McColl Site until late 1993.  EPA intends to reevaluate the February 1989 Supplemental Reevaluation of Alternatives ("SROA") before issuing the ROD.  According to newspaper accounts, the stated reasons for the delay are:  "to make sure we have followed the legal requirements of the law" and to "go back to the community, do our re-evaluation and present a new proposed plan" before a decision is made.  Yet, in the same conversation, the EPA informed the Companies that it has rejected their recent offer and that it would be issuing a fact sheet in mid-April announcing its recent decision.  The

Exhibit 55
6756

LAW OFFICES
ALLEN, MATKINS, LECK, GAMBLE & MALLORY
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Jean Rice, Esq.
April 4, 1991
Page 2

Companies inferred from the conversation that the EPA will be announcing its rejection of the selective excavation approach to remediation in the fact sheet. In light of the soon to be embarked upon feasibility study, a rejection at this time of a viable remedial alternative for McColl is clearly premature, violates the screening process set forth in the National Oil and Hazardous Substances Contingency Plan ("NCP"), fails to give the public an opportunity to consider and comment on the selective excavation approach, and threatens to turn the remedy selection process on its head. If the Agency proceeds on this course, in all probability, the Agency will end up being at precisely the same place in late 1993 that it was in 1987 and is presently.

Less than three months ago, we sent a letter to Greg Ritter outlining the many procedural shortcomings of the Agency's remedy selection process at McColl to date. The letter outlined in detail the specific process required to be followed in the course of remedy selection. To reiterate, under CERCLA Section 121, EPA is required to assess alternative technologies and alternative remedial actions according to certain criteria and to choose as a final remedy the alternative that best satisfies these criteria. The process is fully delineated in the NCP. Under the NCP, the EPA is first to screen potentially suitable alternatives. Then, as part of its feasibility study, the EPA is required to engage in a detailed analysis of the alternatives identified as viable approaches to remedial action after evaluation in the screening stage. 40 C.F.R. § 300.430(e)(9)(i). "The primary objective of the feasibility study is to ensure that appropriate remedial alternatives are developed and evaluated such that relevant information concerning the remedial action options can be presented to a decision-maker and an appropriate remedy selected." 40 C.F.R. § 300.430(e)(1).

If the EPA summarily rejects the Companies' selective excavation approach and fails to fully evaluate the approach in its upcoming evaluation process, the Agency will undermine the NCP requirement that each viable remedial alternative undergo a thorough analysis and opportunity for public comment. Clearly, the selective excavation approach represents a viable approach to remediation and deserves a thorough evaluation by the Agency in the upcoming feasibility study. The approach provides for the treatment of the material with the highest potential for risk (elevated arsenic and the mobile tarry waste) while avoiding the significant problems associated with total excavation. The

Exhibit 55
6757

LAW OFFICES
ALLEN, MATKINS, LECK, GAMBLE & MALLORY
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Jean Rice, Esq.
April 4, 1991
Page 3

approach satisfies all of the NCP criteria.  The end result of the selective excavation alternative leaves McColl with a residual risk of less than 1 in 100,000,000,000.  Moreover, the selective excavation alternative is an approach the Companies are willing to undertake to cleanup McColl.  A summary rejection of this alternative will be contrary to the process required to be followed under CERCLA and the NCP.

As mentioned above, in our January letter to Greg Ritter, we described in detail the many shortcomings present in the Agency's remedy selection process at McColl to date.  We included a discussion of the National Resources Defense Council, Inc. v. Callaway, 524 F.2d 79 (2d Cir. 1975), decision.  In Callaway, the Navy was dredging the Thames River to permit larger submarines up to its New London base.  The original Environmental Impact Study ("EIS") had selected a reef for disposal of the polluted dredging material from the river.  However, the permit, which was required from the Corps of Engineers, was rejected.  The Corps advised the Navy it should use a different site for disposal of the dredged material.  Thereafter, the Navy prepared an addendum to the EIS selecting the site recommended by the Corps for disposal of the polluted material.  The court enjoined the Navy from proceeding with the operation, finding the addendum to the EIS inadequate.  The most serious deficiency in the addendum was its complete failure "to compare the relative environmental pros and cons of all the dumping sites proposed and to explain the reasons for the change.  Such a statement is essential to enable all parties to examine the merits of the proposed change."  Id. at 93 (emphasis added).  The addendum also lacked "an evaluation of the containment characteristics of the New London site and a presentation of the risks of major or minor environmental damage peculiar to that site.  All of this information would certainly be necessary for the reader to understand and evaluate the proposed change in dumping site."  Id.

The Callaway court stressed the importance that the EIS discuss all alternatives in order to expose the reasoning behind the decision.  "By failing to present a complete analysis and comparison of the possible dumping sites, the Final EIS fails to perform its vital task of exposing the reasoning and data of the agency proposing the action to scrutiny by the public and by other branches of the government."  Id. at 94.  Although not a specific element in the court's opinion, the court was clearly

Exhibit 55
6758

LAW OFFICES
ALLEN, MATKINS, LECK, GAMBLE & MALLORY
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Jean Rice, Esq.
April 4, 1991
Page 4


influenced by the fact that the Corps of Engineers had already made up its mind prior to commencing the study.

The <u>Callaway</u> decision teaches an important lesson that should be heeded by the Agency in its new course of action at McColl. The upcoming feasibility study should evaluate the pros and cons of all viable remedial alternatives for remediating the McColl Site. A thorough evaluation of the Companies' selective excavation offer is necessary so that the public and other agencies can understand and evaluate the EPA's decision process. The Agency has delayed action at the Site, once again, to make certain it complies with the law and that the public is included in the decision-making process. A summary rejection of the selective excavation approach will run afoul of both of these objectives.

In conclusion, the Agency has embarked on a new course of action at McColl. It intends to reevaluate the remedial alternatives for the Site in order to make certain it complies with the law in the course of its remedy selection process and to make certain the public is sufficiently included in that process. If that is the case, the Agency should start out on the right foot and thoroughly evaluate the Companies' selective excavation alternative. It is unnecessary at this time for the Agency to reject the selective excavation approach. In fact, the law requires that the approach be given a thorough evaluation by the Agency. It is clearly improper for the Agency to adversely prejudice future public evaluation of the selective excavation approach by summarily rejecting the Companies' proposal in its upcoming newsletter before the approach is adequately evaluated in the upcoming feasibility study process.

Sincerely,

*Cynthia Burch*

Cynthia L. Burch, on behalf of Shell Oil Company, Union Oil Company of California, Atlantic Richfield Company, Texaco Refining and Marketing Inc. and Phillips Petroleum Company

CLB:pla

Exhibit 55
6759

LAW OFFICES
ALLEN, MATKINS, LECK, GAMBLE & MALLORY
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Jean Rice, Esq.
April 4, 1991
Page 5


cc:   Nancy J. Marvel, U.S. EPA, Region IX
      Greg Ritter, U.S. EPA, Region IX
      John Wise, U.S. EPA, Region IX
      Jeff Zelikson, U.S. EPA, Region IX
      Jerry Clifford, U.S. EPA, Region IX
      David Jones, U.S. EPA, Region IX
      John Blevins, U.S. EPA, Region IX
      Pam Wieman, U.S. EPA, Region IX
      William A. Weinischke, Department of Justice

Exhibit 55
6760