WILLIAM A. WEINISCHKE
Bill.weinischke@usdoj.gov
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
MS State Bar No. 7082
4 Constitution Square
150 M Street, N.W., Suite 2.900
Washington, D.C. 20002
Telephone: (202) 514-4592
Telefax:      (202) 514-2583

NICOLA T. HANNA
United States Attorney for the
Central District of California
Attorneys for the United States of America

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>                    Plaintiff,<br><br>                    v.<br><br>SHELL OIL COMPANY, et al.,<br>                    Defendants. | ) Civil No: CV 91-0589 CJC<br>)<br>) **UNITED STATES' STATEMENT**<br>) **OF UNCONTROVERTED FACTS**<br>) **AND CONCLUSIONS OF LAW IN**<br>) **SUPPORT OF UNITED STATES'**<br>) **MOTION FOR PARTIAL**<br>) **SUMMARY JUDGMENT AS TO**<br>) **THE AMOUNT OF**<br>) **RECOVERABLE RESPONSE**<br>) **COSTS**<br>)<br>) Date: August 10, 2020<br>) Time: 1:30 p.m.<br>) Judge: Hon. Cormac J. Carney<br>) Courtroom 7C, First Street Court<br>) House |

Case No. CV 91-0589 RJK (Ex)
United States' Statement of Uncontroverted Facts
And Conclusions of Law in Support of Motion

1

2                          <u>UNCONTROVERTED FACTS</u>

3          1.      This Court entered a judgment on September 29, 1993, against

4    the Defendants holding them liable under the Comprehensive Environmental

5    Response, Compensation, and Liability Act ("CERCLA") Section 107(a), 42

6    U.S.C. § 9607(a).    841 F. Supp. 962 (C.D. Cal. 1993).

7

8          2.      On December 9, 1994, the Court approved and entered a Partial

9    Consent Decree between the Plaintiffs and Defendants under which the

10   Defendants agreed to pay the Plaintiffs $18 million in past response costs.

11   Docket No. 270.

12

13         3.      Pursuant to the December 9, 1994, Consent Decree, the $18

14   million paid by the Oil Company Defendants represented a compromised

15   amount for activities and costs incurred through June 30, 1990, September

16   30, 1990, and June 30, 1991, and interest through July 31, 1993, depending

17   on the category of costs.    <u>Id.</u> ¶¶ 3-4.

18

19         4.      Under the December 1994 Consent Decree, the parties agreed

20   that the September 29, 1993 judgment constituted a declaratory judgment

21   under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) in favor of the

22   United States (and State) against the Defendants for on-going response costs,

23   i.e., those costs generally post-dating the costs recovered under the 1994

24   Consent Decree.    <u>Id.</u> ¶ 10.

25

26         5.      The United States has made available all supporting documents

27   relevant to the costs incurred in relation to the McColl Superfund Site.

28
                                  Case No. CV 91-0589 RJK (Ex)
                                  United States' Statement of Uncontroverted Facts
                                  And Conclusions of Law in Support of Motion

6.      The October 12, 1999, Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b) states that the United States retains all of its rights to pursue its claims for response costs to judgment in this Court.    Docket No. 489 at 4.

7.      The total costs incurred by the United States for response activities in connection with the McColl Site are at least $52,183,070.79 including prejudgment interest calculated through September 30, 2019, for EPA's costs from July 1, 1990, through July 31, 2018, and DOJ's costs from October 1, 1990, through September 30, 2019.    (Wright Decl. ¶ VI.)

8.      As of July 31, 2018, the United States has incurred a total of at least $8,554,829.81 for intramural expenditures in relation to the McColl Site, not including Department of Justice (DOJ) costs.    (Wright Decl. ¶ IV.E.)

9.      As of July 31, 2018, the United States has incurred a total of at least $8,423,381.57 for contractor costs and $4,339,565.45 in federal interagency agreements for response activities in connection with the McColl Site, including DOJ costs from October 1, 1990, through September 30, 2019.    (Wright Decl. ¶¶ IV.F, IV.G.)

10.      As of July 31, 2018, the United States has incurred a total of at least $4,709,719.91 in State of California contract expenditures for response activities in connection with the McColl Site.    (Wright Decl. ¶ IV.H.)

11.      As of July 31, 2018, the United States has collected a total of

$695,000 from the Defendants.    (Wright Decl. ¶ IV.I.)

12.    As of September 30, 2019, the prejudgment interest on unrecovered costs incurred by the United States for response activities in connection with the McColl Site is $26,934,007.81, which began to accrue on September 17, 1990.    (Wright Decl. ¶ IV.J.)

13.    Environmental Protection Agency ("EPA") Headquarters' employees performed response activities in connection with the McColl Site. (Fong Decl. ¶ 25; Mak Decl. ¶ 26.)

14.    As of July 31, 2018, the United States has incurred costs for response activities performed in connection with the McColl Site in the form of payroll expenses of EPA Headquarters' employees in the amount of a least $13,659.42.    (Wright Decl. ¶ IV.E.)

15.    EPA Region 9 employees have performed response activities in connection with the McColl Site.    (Fong Decl. ¶ 24; Mak Decl. ¶ 25.)

16.    As of July 31, 2018, the United States had incurred costs for the response activities in connection with the McColl Site in the form of payroll expenses of EPA Region 9's employees in the amount of at least $1,372,429.33.    (Wright Decl. ¶ IV.E.)

17.    As of July 31, 2018, the United States has incurred costs of at least $5,167.25 for travel expenses of EPA Headquarters employees in connection with response activities related to the McColl Site.    (Wright Decl. ¶ IV.E.)

18.     EPA Region 9 personnel have traveled in connection with response activities related to the McColl site.     (Fong Decl. ¶ 27; Mak Decl. ¶ 27.)

19.     As of July 31, 2018, the United States has incurred costs of at least $264,355.95 in paying for travel expenses of Region 9 employees traveling in connection with response activities related to the McColl Site. (Wright Decl. ¶ IV.E.)

20.     DTSC personnel have traveled in connection with response activities related to the McColl Site. (Fong Decl. ¶ 56.)

21.     In the ordinary course of business, EPA Region IX processes State Cooperative Agreement ("SCA") Costs, under which the United States makes payments to State agencies such as the California Department of Toxic Substances Control ("DTSC").    The Region maintains custody of vouchers and the U.S. Treasury confirmation schedules, inputs accounting information into the EPA accounting system, and scans vouchers and Treasury confirmation schedules into the SCORPIOS system.    (Fong Decl. ¶ 56.)

22.     As of July 31, 2018, the United States has incurred costs of at least $4,709,719.91 in SCA costs in connection with the McColl Site. (Wright Decl. ¶ IV.H.)

23.     As of July 31, 2018, the United States has incurred costs of at least $6,899,217.86 in indirect costs in connection with response activities

related to the McColl Site.    (Wright Decl. ¶ IV.E.)

24.    The U.S. Department of Health & Human Services, Agency for Toxic Substances Disease Registry ("ATSDR") performed response activities in connection with the McColl Site.

25.    As of July 31, 2018, the United States has incurred costs of at least $62,090.67 in payment to ATSDR for the response activities it performed in connection with the McColl Site.    (Wright Decl. ¶ IV.G.)

26.    CH2M Hill performed response activities in connection with the McColl Site pursuant to Contract No. 68-W9-0031 and Contract No. 68-W9-8225.

27.    As of July 31, 2018, United States has incurred costs of at least $192,288.17 in payment to CH2M Hill for the response activities it performed in connection with the McColl Site pursuant to Contract No. 68-W9-0031, and at least $845.35 pursuant to Contract No. 68-W9-8225. (Wright Decl. Schedule 1 at 1-2.)

28.    ICF Technology, Inc. performed response activities in connection with the McColl Site pursuant to Contract No. 68-W9-0059.

29.    As of July 31, 2018, United States has incurred costs of at least $4,782,149.74 in payment to ICF Technology for the response activities it performed in connection with the McColl Site, pursuant to Contract No. 68-W9-0059.    (Wright Decl. Schedule 1 at 1.)

30.    Bechtel Environmental performed response activities in

connection with the McColl Site pursuant to Contract No. 68-W9-0060.

31.    As of July 31, 2018, United States has incurred costs of at least $635,687.90 in payment to Bechtel Environmental for the response activities it performed in connection with the McColl Site, pursuant to Contract No. 68-W9-0060.    (Wright Decl. Schedule 1 at 1.)

32.    CET Environmental Services performed response activities in connection with the McColl Site pursuant to Contract No. 68-W1-0012.

33.    As of July 31, 2018, United States has incurred costs of at least $14,121.33 in payment to CET Environmental Services for the response activities it performed in connection with the McColl Site, pursuant to Contract No. 68-W1-0012.    (Wright Decl. Schedule 1 at 1.)

34.    Roy F. Weston performed response activities in connection with the McColl Site pursuant to Contract No. 68-03-3482.

35.    As of July 31, 2018, United States has incurred costs of at least $50,035.50 in payment to Roy F. Weston for Emergency Response Unit response activities it performed in connection with the McColl Site, pursuant to Contract No. 68-03-3482.    (Wright Decl. Schedule 1 at 1.)

36.    Pursuant to Contract Nos. 68-01-7456 and 68-D1-0135, ICF Technology, Inc. performed response activities in connection with the McColl Site.

37.    As of July 31, 2018, United States has incurred costs of at least $143,463.70 in payment to ICF Technology, Inc. for response activities it

performed in connection with the McColl Site pursuant to Contract No. 68-01-7456, and $157,117.33 pursuant to Contract No. 68-D1-0135.   (Wright Decl. Schedule 1 at 1.)

38.    Pursuant to Contract Nos. EPW13029 and EPW06041, ICF Incorporated performed response activities in connection with the McColl Site.

39.    As of July 31, 2018, United States has incurred costs of at least $2,511.49 in payment to ICF Incorporated for response activities it performed in connection with the McColl Site pursuant to Contract No. EPW13029, and $7,627.59 pursuant to Contract No. EPW06041.   (Wright Decl. Schedule 1 at 1.)

40.    Pursuant to Contract Nos. DW96955310, DW6955452, DW96955536, DW96955588, DW96922738, and DW96957990 and through an Interagency Agreement, the U.S. Army Corps of Engineers performed response activities in connection with the McColl Site.

41.    As of July 31, 2018, the United States has incurred costs of at least $348,803.00 in payment to the U.S. Army Corps of Engineers pursuant to the Interagency Agreement and Contract No. DW96955310, $625,047.19 pursuant to Contract No. DW69455452, $99,440.23 pursuant to Contract No. DW96955536, $346,942.92 pursuant to Contract No. DW96955588, $41,445.10 pursuant to Contract No. DW6922738, and $39,053.29 pursuant to Contract No. DW96957990 for activities performed in connection with

the McColl Site.    (Wright Decl. Schedule 1 at 1.)

42.     Pursuant to Contract No. 68-W0-0001 Techlaw, Inc. performed response activities in connection with the McColl Site.

43.     As of July 31, 2018, the United States has incurred costs of $5,093.33 in payment to Techlaw, Inc. for response activities it performed in connection with the McColl Site pursuant to Contract No. 68-W0-0001. (Wright Decl. Schedule 1 at 1.)

44.     Pursuant to Contract No. 4U2000NDLX and Contract No. 8U1020NALX, EPA used Federal Express for performance of response activities in connection with the McColl Site.

45.     As of July 31, 2018, the United States has incurred costs of $3.99 in payment to Federal Express pursuant to Contract No. 4U2000NDLX, and $3.75 pursuant to Contract No. 8U1020NALX for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 1-2.)

46.     Pursuant to Contract No. 68–02-4284, PEI Associates, Inc. performed response activities in connection with the McColl Site.

47.     As of July 31, 2018, the United States has incurred costs of $1,009,087.02 in payment to PEI Associates, Inc., pursuant to Contract No. 68-02-4284 for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 1.)

48.     Pursuant to Contract No. 68-03-3267, ACZ, Inc. Laboratory

Division performed response activities in connection with the McColl Site.

49.     As of July 31, 2018, the United States has incurred costs of $1,008.82 in payment to ACZ, Inc. Laboratory Division pursuant to Contract No. 68-03-3267 for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 1.)

50.     Pursuant to Contract No. 68-C0-0047 PRC/SSC performed response activities in connection with the McColl Site.

51.     As of July 31, 2018, the United States has incurred costs of $300,000 in payment to PRC/SSC pursuant to Contract No. 68-C0-0047 for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 1.)

52.     Pursuant to Contract No. 68-C8-0062 Science Applications International Corporation (SAIC) performed response activities in connection with the McColl Site.

53.     As of July 31, 2018, the United States has incurred costs of $38,953.00 in payment to SAIC pursuant to Contract No. 68-C8-0062 for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 1.)

54.     Pursuant to Contract No. 68-S2-9006 Edward Aul & Associates performed response activities in connection with the McColl Site.

55.     As of July 31, 2018, the United States has incurred costs of $12,250.00 in payment to Edward Aul & Associates pursuant to Contract

No. 68-S2-9006 for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 1.)

56.    Pursuant to Contract No. 68-W3-0023 Ronson Management Corporation performed response activities in connection with the McColl Site.

57.    As of July 31, 2018, the United States has incurred costs of $207.83 in payment to Ronson Management Corporation pursuant to Contract No. 68-W3-0023 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 1.)

58.    Pursuant to Contract Nos. 91091S0128, 9209PR0182, 93093S0047, 9309PR0028, 9809H8S075, and 9809H8S076, EPA used the California Newspaper Service Bureau, Inc. for performance of response activities related to the McColl Site.

59.    As of July 31, 2018, the United States has incurred costs of $41.00, $579.69, $553.67, $386.46, $342.00, and $580.62 in payment to California Newspaper Service Bureau, Inc. pursuant to Contract Nos. 91091S0128, 9209PR0182, 93093S0047, 9209PR0028, 9809H8S075, and 9809H8S076 for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 2.)

60.    Pursuant to Contract Nos. A8BK0000470 and B2BK0000983, EPA used the Daily Journal Corp. for performance of response activities related to the McColl Site.

61.   As of July 31, 2018, the United States has incurred costs of $623.52 in payment to Daily Journal Corp. pursuant to Contract No. B2BK0000983 for response activities related to the McColl Site.   (Wright Decl. Schedule 1 at 2.)

62.   Pursuant to Contract No. A8BK0000022, EPA used the Bakersfield California Newspaper for performance of response activities related to the McColl Site.

63.   As of July 31, 2018, the United States has incurred costs of $184.24 in payment to Bakersfield California Newspaper pursuant to Contract No. A8BK0000022 for response activities related to the McColl Site.   (Wright Decl. Schedule 1 at 2.)

64.   Pursuant to Contract No. DU1001NBLX, EPA used Dun and Bradstreet for the performance of response activities in connection with the McColl Site.

65.   As of July 31, 2018, the United States has incurred costs of $740.22 in payment to Dun and Bradstreet pursuant to Contract No. DU1001NBLX for response activities related to the McColl Site.   (Wright Decl. Schedule 1 at 2.)

66.   Pursuant to Contract Nos. FRL61283, 1963S60038, and 1963S80105 EPA used the Government Printing Office for performance of response activities in connection with the McColl Site.

67.   As of July 31, 2018, the United States has incurred costs of

$1,755.00 in payment to the Government Printing Office pursuant to Contract No. FRL61283, $2,132.00 pursuant to Contract No. 1963S60038, and $1,895.56 pursuant to Contract No. 1963S80105 for response activities related to the McColl Site.   (Wright Decl. Schedule 1 at 2.)

68.    Pursuant to Contract Nos. 68-R9-0101 and 68-WO-1002, ASRC Aerospace Corp. performed response activities in connection with the McColl Site.

69.    As of July 31, 2018, the United States has incurred costs of $57,394.79 and $419.10 in payment to ASRC Aerospace Corp. pursuant to Contract Nos. 68-R9-0101 and 68-WO-1002 for response activities related to the McColl Site.   (Wright Decl. Schedule 1 at 2.)

70.    Pursuant to Contract Nos. 68-W4-0028 and 68-W9-0052, Labat-Anderson performed response activities in connection with the McColl Site.

71.    As of July 31, 2018, the United States has incurred costs of $7,018.94 and $13,785.40 in payment to Labat-Anderson pursuant to Contract Nos. 68-W4-0028 and 68-W9-0052 for response activities related to the McColl Site.   (Wright Decl. Schedule 1 at 2.)

72.    Pursuant to Contract No. 68-W5-0024, Armstrong Data Services, Inc. performed response activities in connection with the McColl Site.

73.    As of July 31, 2018, the United States has incurred costs of

$43,649.90 in payment to Armstrong Data Services pursuant to Contract No. 68-W5-0024 for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 2.)

74.    Pursuant to Contract No. 68-01-7251, CH2M Hill performed response activities in connection with the McColl Site.

75.    As of July 31, 2018, the United States has incurred costs of $135,879.78 in payment to CH2M Hill pursuant to Contract No. 68-01-7251 for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 2.)

76.    Pursuant to State Cooperative Agreement (SCA) and Contract Nos. 937801, 937802, 940402, 940403, 940404, 940405 and 940406, DTSC performed response activities in connection with the McColl Site.

77.    As of July 31, 2018, the United States has incurred costs of $2,836,787.10, $1,229,850.32, $229,117.45, $136,313.58, $107,659.10, $120,564.24, $49,428.12 in payment to DTSC pursuant to the SCA and Contract Nos. 937801, 937802, 940402, 940403, 940404, 940405 and 940406 for response activities related to the McColl Site.    (Wright Decl. Schedule 1 at 2.)

78.    Pursuant to Contract Nos. 68–01-7368 and 68-W0-0037, Ecology and Environment, Inc. performed response activities in connection with the McColl Site.

79.    As of July 31, 2018, the United States has incurred costs of

$161,186.25 and $402,739.70 in payment to Ecology and Environment, Inc. pursuant to Contract Nos. 68-01-7368 and 68-W0-0037 for response activities related to the McColl Site.   (Wright Decl. Schedule 1 at 3.)

80.    Pursuant to Contract No. 68-W9-0008, SAIC performed response activities in connection with the McColl Site.

81.    As of July 31, 2018, the United States has incurred costs of $73,664.06 in payment to SAIC pursuant to Contract No. 68-W9-0008 for response activities related to the McColl Site.   (Wright Decl. Schedule 1 at 3.)

82.    Pursuant to Contract No. EPR90603, GRB Environmental Services performed response activities in connection with the McColl Site.

83.    As of July 31, 2018, the United States has incurred costs of $1,356.65 in payment to GRB Environmental Services pursuant to Contract No. EPR90603 for response activities related to the McColl Site.   (Wright Decl. Schedule 1 at 2.)

84.    Pursuant to Contract No. EPR91202, Toeroek-Herndon Joint Venture performed response activities in connection with the McColl Site.

85.    As of July 31, 2018, the United States has incurred costs of $49,960.34 in payment to Toeroek-Herndon Joint Venture pursuant to Contract Nos. EPR91202 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.)

86.    Pursuant to the Contract Lab Program, Rudd Group, Inc., Silver

Case No. CV 91-0589 RJK (Ex)
United States' Statement of Uncontroverted Facts
And Conclusions of Law in Support of Motion

Valley, Associated Laboratories, Inc., Columbia Analytical Services, Inc.,
Weyerhaeuser Analyt. & Testing Services; Chester Labnet, CKY
Incorporated Analytical Services; Viar & Company; and Computer Science
Corp. performed response activities in connection with the McColl Site.

87.    As of July 31, 2018, the United States has incurred costs of
$114,056.84 in payment to Rudd Group, Inc., Silver Valley, Associated
Laboratories, Inc., Columbia Analytical Services, Inc., Weyerhaeuser
Analyt. & Testing Services; Chester Labnet, CKY Incorporated Analytical
Services; Viar & Company; and Computer Science Corp. pursuant to the
Contract Lab Program for response activities related to the McColl Site.
(Wright Decl. Schedule 1 at 3.)

88.    Interest on the payment Defendants made under the 1994
Partial Consent Decree accruing from July 31, 1993 through the date of
payment also constitutes an on-going response cost.    Docket No. 270 ¶ 3.f.

89.    The interest that accrued starting July 31, 1993, through
January 11, 1995, the date of Defendants' payment, on the amount paid
under the 1994 Partial Consent Decree totals $939,708.75.    (Wright Decl.
¶ IV.K.)

90.    In the regular course of business, EPA uses the Superfund Cost
Recovery Package Image and On-Line System ("SCORPIOS") to track and
summarize the voluminous cost documentation for identifying costs for
Superfund Sites.

Case No. CV 91-0589 RJK (Ex)
United States' Statement of Uncontroverted Facts
And Conclusions of Law in Support of Motion

91.     The SCORPIOS report reflects the amount of each cost type (payroll costs, travel costs, indirect costs, contractor costs, interagency agreement costs, etc.) that EPA incurs at a Site.

92.     EPA issued two Records of Decision (ROD) relevant to the United States' Motion for Summary Judgment, a Source ROD dated June 30, 1993, and a Groundwater ROD dated May 15, 1996.

93.     The Oil Company Defendants generated the hazardous wastes dumped at the McColl Site.

94.     The Oil Company Defendants contracted with Eli McColl to transport and dump their waste at the McColl Site.

95.     William Kime, a CPA, describes the calculation for DOJ enforcement costs and indirect costs relative to the McColl Site in two Declarations submitted herewith in support of the United States' Motion for Summary Judgment.

96.     William Kime's Declarations summarize the underlying time sheets and other accounting records for direct labor costs and indirect costs incurred by the Justice Department in prosecuting the McColl case.

97.     The DOJ Cost Summaries were prepared under William Kime's supervision and control.    (Kime Decl. ¶ 4 & Ex. C ¶ 3.)

98.     The Department of Justice incurred $2,776,743.05 in response costs related to the McColl Site from October 1, 1990 through September 30, 2019.    (Wright Decl. ¶ IV.G.)

99.    Mr. Kime describes the indirect rate methodology used by the Department of Justice.    (Kime Decl. ¶ 14-15.)

100.    Pursuant to William A. Weinischke's Declarations, the attorneys' fees incurred by the United States Department of Justice in connection with the McColl enforcement action are reasonable. (Weinischke Decl. and attached Supp. Decl.)

101.    The United States EPA provided the entire Administrative Records related to remedial actions taken in connection with the McColl Site to the Defendants.

102.    The United States has provided the Defendants with all cost documentation relative to response costs incurred in connection with the McColl Site requested by the Defendants.

103.    The United States has been determined to be 100% responsible for the benzol waste costs at the McColl Site, and the Defendants are responsible for the remaining, non-benzol, waste costs at the McColl Site. United States v. Shell Oil Co., 294 F.3d 1045, 1062 (9th Cir. 2002).

104.    The United States and Defendants stipulated to allocate 6.25% of all response costs at the McColl Site as the share of benzol waste. Docket No. 507 at 2 n.1.

105.    The total response costs, $52,183,070.79, less 6.25% allocated to benzol waste, result in a total of $48,921,628.87 allocated to non-benzol waste.

## CONCLUSIONS OF LAW

1.      The costs incurred by the United States are for response activities associated with the McColl Site.

2.      The costs incurred by the United States were incurred in response to the release and threat of release of hazardous substances from the McColl Site into the environment.

3.      In ruling on a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact.

4.      Summary judgment is appropriate whenever the pleadings and evidence establish that there are no genuine issues of any material fact.

5.      Summary judgment should be granted so long as the evidence before the Court demonstrates that after reasonable time for discovery, there is an absence of evidence to support the nonmoving party's case.

6.      There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a "reasonable jury" to return a verdict for that party.

7.      Evidence that is merely colorable or that is not "significantly probative" does not raise a genuine issue of material fact and the mere possibility that the nonmoving party may discredit the moving party's testimony at trial will not suffice to defeat a properly presented motion.

8.      Pursuant to 42 U.S.C. § 9607(a), the United States is entitled to

Case No. CV 91-0589 RJK (Ex)
United States' Statement of Uncontroverted Facts
And Conclusions of Law in Support of Motion

recover all costs of response actions associated with the McColl Site incurred in a manner not inconsistent with the National Contingency Plan ("NCP").

9. Pursuant to 42 U.S.C. § 9613(j)(1), the scope of the Court's review of whether any response action selected by the United States is inconsistent with a specific provision of the NCP is limited to the administrative record before the United States at the time the response action was selected.

10. Pursuant to 42 U.S.C. § 9613(j)(2), the standard the Court shall apply in such review is the "arbitrary and capricious" standard of review.

11. Once the United States has established that the costs were incurred for response actions associated with the McColl Site, the burden shifts to the Defendants to show the response costs were incurred in a manner inconsistent with the NCP.

12. In evaluating a claim of inconsistency with the NCP, the NCP to be applied is the NCP in effect at the time the response action was undertaken, not the one in effect at the time the Court evaluates the claim for response costs.

13. The only challenge available to the Defendants is whether the selection of response actions underlying those costs was "not inconsistent with the NCP."

14. The Defendants must not only establish that selection of the

response actions was inconsistent with a specific provision of the NCP, they must also establish that the Governments were arbitrary and capricious in the discharge of their duties under the NCP, and that as a result of such actions the costs were demonstrably excessive.

15.   The issue of whether the response activities were incurred in a manner inconsistent with the NCP must be based on the administrative record applying the arbitrary and capricious standard of review.

16.   The response activities conducted by the United States with respect to the McColl were not inconsistent with the NCP.

17.   A summary of the voluminous cost documentation, which was maintained in the ordinary course of EPA's business, associated with the McColl Site is admissible in lieu of all the underlying documents pursuant to Fed. R. Evid. 1006.

18.   In CERCLA, Congress intended that the parties who contributed to hazardous waste sites such as the McColl Site, rather than the public, should bear all costs incurred by the United States in actions taken in response to the release and threat of release of hazardous substances at such sites.

19.   To achieve its purpose, Congress enacted the Section 107 strict liability and cost recovery provisions of CERCLA.

20.   Section 101(23) of CERCLA, 42 U.S.C. § 9601(23), defines the term "remove" or "removal" to mean:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.   The term includes, in addition . . . action taken under Section 9604(b) of this title, . . .

21.   The definition of removal also includes, by explicit reference, the kinds of actions specified in Section 104(b) of CERCLA, 42 U.S.C. § 9604(b). That Section provides:

Whenever the President is authorized to act pursuant to subsection (a) of this section, . . . he may undertake such investigations, monitoring, surveys, testing, and other information gathering as he may deem necessary or appropriate to identify the existence and extent of the release or threat thereof, the source and nature of the hazardous substances, pollutants or contaminants

Case No. CV 91-0589 RJK (Ex)
United States' Statement of Uncontroverted Facts
And Conclusions of Law in Support of Motion

1
2
3
4
5
6
7
8
9

> involved, and the extent of the danger to the public health or welfare or to the environment.    In addition, the President may undertake such planning, legal, fiscal, economic, engineering, architectural, and other studies or investigations as he may deem necessary or appropriate to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of this chapter.

10
11
12
13
14
15
16

     22.    Subsection (a), referred to in Section 104(b), provides authority to act "[w]henever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare . . . ."    42 U.S.C. § 9604(a)(1).

17
18
19
20

     23.    Investigation, site work, and enforcement activities such as those undertaken in connection with the McColl Site are all response actions expressly authorized by Section 104(b).

21
22
23
24
25
26
27

     24.    The term "remedy" or "remedial action" refers to long-term cleanups and is defined in Section 101(24) of CERCLA as:

> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release

28

of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.   The term includes, but is not limited to, such actions at the location of the release as . . . any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment . . . .

25.    The terms "removal" and "remedial" are both considered to be "response" actions.

26.    Section 101(25) of CERCLA defines "respond" or "response" to mean "remove, removal, remedy, and remedial action" and clarifies that "all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto."    42 U.S.C. § 9601(25).

27.    The recovery of "all costs of removal or remedial action" under Section 107(a)(4) includes recovery of all response costs incurred by the United States.

28.    Investigation and monitoring activities are expressly authorized under Section 101(23), which permits "such actions as may be necessary to monitor, assess and evaluate the release or threat of release of hazardous substances."    42 U.S.C. § 9601(23).

29.    Courts have held that investigative costs are recoverable from parties liable under Section 107(a)(4).

30.     Costs of designing and implementing response actions are specifically authorized under Section 104(b) of CERCLA, which provides that "the President may undertake such planning . . . engineering, architectural, and other studies or investigations . . . to plan and direct response actions . . . ."   42 U.S.C. § 9604(b).

31.     Enforcement and litigation costs are recoverable as Section 104(b) and Section 101(25) response actions.   Section 104(b) authorizes recovery of legal and enforcement expenses incurred in seeking to recover costs from responsible parties: "the President may undertake such planning, legal . . . and other studies and investigations . . . to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of the chapter."   42 U.S.C. § 9604(b).

32.     Courts have held that CERCLA explicitly allows the recovery of litigation costs from liable parties.

33.     Courts have held that the costs of investigations, including sampling and testing, are recoverable from liable parties.

34.     Costs of administration, including indirect costs, associated with cleanups and related enforcement activities are recoverable.

35.     Courts have upheld the Governments' right to recover administrative costs calculated on an indirect basis in CERCLA actions.

36.     Indirect costs are overhead costs for EPA and DTSC to administer the Superfund program and for the United States and California

Departments of Justice to litigate Superfund enforcement actions.

37.   Inconsistency with the NCP is the only defense to the United States' claim for cost recovery after they have established that response costs were incurred.   Terms used such as improper, speculative, remote, unreasonable, not cost-effective, and unnecessary do not state an appropriate challenge to the United States' response costs.

38.   Recovery of prejudgment interest is expressly authorized under Section 107(a)(4) of CERCLA, which provides for interest on the amounts recoverable under subparagraphs (A) through (D) of Section 107(a)(4). "Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned."   42 U.S.C. § 9607(a)(4).

39.   Recovery of "all costs of removal or remedial action" includes investigative, enforcement, litigation, indirect costs and interest, as well as direct costs of cleanup activities, all of which were undertaken in connection with the McColl Site.

40.   All of the costs for which the United States seeks reimbursement in this motion clearly fall within the categories of recoverable costs described herein.

41.   In accordance with CERCLA, the United States is entitled to recover from the Defendants the costs allocated to the non-benzol waste at the McColl Site, $48,921,628.87, and interest on the amount paid under the

1994 Consent Decree, $939,708.75, for a total of $49,861,337.62.

     42.    To the extent that any of the foregoing Conclusions of Law are deemed to be uncontroverted facts, they are incorporated into the Statement of Uncontroverted Facts.

                   Respectfully submitted,


                   _/s/ William A. Weinischke_____
               William A. Weinischke
               Senior Attorney
                   Environmental Enforcement Section
                   Environment and Natural Resources
                   Division


OF COUNSEL:

Madeline Gallo
Assistant Regional Counsel
Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105