WILLIAM A. WEINISCHKE
Bill.weinischke@usdoj.gov
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
MS State Bar No. 7082
4 Constitution Square
150 M Street, N.W., Suite 2.900
Washington, D.C. 20002
Telephone: (202) 514-4592
Telefax:    (202) 514-2583

NICOLA T. HANNA
United States Attorney for the
Central District of California
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | ) ) ) CASE N0. 91-0589 (CJC) |
| Plaintiffs, | ) |
| v. | ) UNITED STATES' MEMORANDUM |
| | ) IN OPPOSITION TO DEFENDANTS' |
| SHELL OIL COMPANY, et al., | ) EX PARTE APPLICATION TO |
| | ) CONTINUE SUMMARY |
| Defendants. | ) JUDGMENT HEARING |
| | ) Date |
| | ) Time:        1:30 p.m. |
| | ) Courtroom: 9B, Ronald Reagan Fed. |
| | ) Bldg. and Courthouse |
| | ) Judge:       Honorable Cormac J. |
| | ) Carney |

_____

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................2

II.    ARGUMENT.........................................................................................2

       A.    Defendants Cannot Meet Their Burden Under Fed. R. Civ. P.
             56(d) ..........................................................................................2

       B.    Defendants Fail to Satisfy Requirements to Modify Existing
             Scheduling Order ......................................................................8

       C.    Standard for Ex Parte Application .......................................14

III.   CONCLUSION .................................................................................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

## **TABLE OF AUTHORITIES**

3

**Federal Cases**

4

Brae Transp. Inc. v. Coopers & Lybrand, Inc.,
        790 F. 2d. 1439 (9th Cir. 1986).................................................4

5

6

Chance v. Pac-Tel Teletrac, Inc., 242 F.3d 1151 (9th Cir. 2001) .............................3

7

City of Pomona v. SQM N. Am. Corp., 886 F.3d 1060 (9th Cir. 2017)...........11, 12

8

Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox
        Co., 353 F.3d 1125 (9th Cir. 2004) ................................................3

9

10

Harris v. Duty Free Shoppers, Ltd., 940 F. 2d 1272 (9th Cir. 1991) ...................3, 4

Mackey v. Pioneer Nat'l Bank, 867 F. 2d. 520, 524 (9th Cir. 1989) .......................4

11

12

Mission Power Eng'g Co. v. Cont'l Cas. Co.,
        883 F. Supp. 488 (C.D. Cal. 1995)...........................................7, 15

13

14

Mortgage Grader, Inc. v. Lenderfi, Inc., No. 10-01521-CJC,
        2012 WL 13014970 (C.D. Cal. June 22, 2012).................................15

15

Shell Oil Co. v. United States, No. 19-1795C, 2020 WL 3618890 (Fed. Cl.
        June 29, 2020)................................................................16

16

State of California v. Campbell, 138 F.3d 772 (9th Cir. 1998)..............................3

17

Terrell v. R. D. Brewer, 935 F. 2d. 1015 (9th Cir. 1990)....................................4

18

19

United States v. Atchison, Topeka & Santa Fe Ry. Co., No. CV-F-92-5068
        OWW, 2003 WL 25518047 (E.D. Cal July 15, 2003)........................19

20

United States v. Chapman, 146 F.3d 1166 (9th Cir. 1998). ....................7, 17, 18

21

United States v. Chrysler Corp., 168 F. Supp. 2d 754 (N.D. Ohio 2001)..............19

22

United States v. Findett Corp., 220 F.3d 842 (8th Cir. 2000) ................................19

23

United States v. Shell Oil Co., 841 F. Supp. 962 (C.D. Cal. 1993) .................16, 17

24

United States v. W.R. Grace & Co.-Conn., 280 F. Supp. 2d 1149
        (D. Mont. 2003)...............................................................19

25

26

United States v. W.R. Grace & Co., 429 F.3d 1224 (9th Cir. 2005).......................19

27

United States ex rel. Schumer v. Hughes Aircraft Co.,
        63 F.3d 1512 (9th Cir. 1995).................................................12

28

iii

## Federal Regulations

42 U.S.C. § 9607(a) .............................................................................................. 19

42 U.S.C. § 9607(a)(4)(A) ................................................................................... 13

42 U.S.C. § 9613(j) ......................................................................................... 5, 15

Memorandum in Opposition to Ex Parte Application to Continue Summary Judgment Hearing  (CV 91-0589 CJC)

## INTRODUCTION

The United States ("Plaintiff") opposes Defendants' Ex Parte Application submitted four days before their response to the United States' properly noticed Summary Judgment Motion is due.   Defendants' Ex Parte Application is nothing more than a continuing pattern to further delay the United States' right to recover response costs for which the Defendants were found jointly and severally liable by this Court in 1993.  Transparency reveals that Defendants are presenting a Fed. R. Civ. P. 56(d) motion, as well as a motion to modify an existing scheduling order in their emergency ex parte application, which, as the court in Mission Power Eng'g Co. v. Cont'l Cas. Co. held, "are rarely justified."  883 F. Supp. 488, 490, 493 (C.D. Cal. 1995).  As shown below, Defendants fail to satisfy: (1) the requirements for delaying the United States' properly noticed Motion for Summary Judgment, (2) the burden established by this Court's scheduling order and Ninth Circuit case law for extending discovery in this ancient case, or (3) the legal standard required to support their ex parte application.

## ARGUMENT

A.      Defendants Cannot Meet Their Burden Under Fed. R. Civ. P. 56(d)

Fed. R. Civ. P. 56(d) allows for a continuance when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its decision."  In such circumstances, "the court may . . . allow time to obtain affidavits or declarations or to take discovery."  Id.  Defendants

"must show (1) that they have set forth in affidavit form the specific facts that they

hope to elicit from further discovery, (2) that the facts sought exist, and (3) that

these sought after facts are 'essential' to resist the summary judgment motion."

State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).  See also

Chance v. Pac-Tel Teletrac, Inc., 242 F.3d 1151, 1161, n.6 (9th Cir. 2001) ("The

burden is on the party seeking additional discovery to proffer sufficient facts to

show that the evidence sought exists, and that it would prevent summary

judgment.") (citation omitted). Defendants have failed to identify the "specific

facts" they hope to elicit or how they are "'essential' to resist the summary

judgment motion," nor can they.

      The Ninth Circuit has recognized the ability of a district court to deny further

discovery if the movant has failed to diligently pursue discovery in the past, as is

the case here, or if the movant fails to show how the information sought would

preclude summary judgment.  Employers Teamsters Local Nos. 175 and 505

Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129-30 (9th Cir. 2004).  In

Clorox, the movants did not notice depositions even after Clorox gave notice of its

plans to move for partial summary judgment.  As the court noted, "[t]his calls their

diligence into question."  Id. at 1130.  As shown below, Defendants here are not

entitled to a continuance because they have failed to meet *any* of requirements of

Rule 56(d).

      In Harris v. Duty Free Shoppers, Ltd., the court held that "[o]rdinarily,

summary judgment should not be granted where there are relevant facts remaining

to be discovered, but the party seeking discovery bears the burden of showing what

specific facts it hopes to discover that will raise an issue of material fact." 940 F.

2d 1272, 1276 (9th Cir. 1991). And, in Terrell v. R. D. Brewer, the court held that

denial of an application to stay a motion for summary judgment was proper when

the discovery being sought is the object of speculation. 935 F. 2d. 1015, 1018 (9th

Cir. 1990). The court in Terrell further held that the party seeking the stay of

summary judgment has the burden of showing that evidence exists that would

create a disputed issue of fact. Also see Mackey v. Pioneer Nat'l Bank, 867 F. 2d.

520, 524 (9th Cir. 1989) (citing Brae Transp. Inc. v. Coopers & Lybrand, Inc., 790

F. 2d. 1439, 1443 (9th Cir. 1986)). There the court held that a party seeking to

delay summary judgment "must show how additional discovery would preclude

summary judgment and why a party cannot immediately provide 'specific facts'

demonstrating a genuine issue of material fact." 867 F. 2d. at 524. The Ninth

Circuit has repeatedly held that "'[r]eferences in memoranda and declarations to a

need for discovery do not qualify as motions under Rule [56(d)] . . . . We have

stated that '[f]ailure to comply with the requirements of Rule [56(d)] is a proper

ground for denying discovery and proceeding to summary judgment.'" Campbell,

138 F.3d at 779 (quoting Brae Transp., 790 F.2d at 1443).

        The Defendants utterly failed in their application to meet the requirements

established by the Ninth Circuit to specify facts essential to their opposition.

4

Defendants' memorandum contains only a cursory Rule 56(d) argument in one paragraph, and elsewhere merely references numerous documents already in its possession and its inability to depose a declarant without explaining what specific facts would show a disputed issue of material fact.  Mem. In Supp. Of Ex Parte Application at 4, 5-6.  Moreover, Defendants have not, and cannot, point to "specific facts" casting any doubt on the knowledge or the credibility of the Governments' declarants that may be "essential" to resist summary judgment.  The Defendants' contention that they just learned of the claims presented in the United States' summary judgment motion is simply factually not true.  The Defendants have had a virtually identical motion since the United States' 2006 motion for summary judgment was filed.  There are two issues in the United States' motion for summary judgment:  whether EPA's selection of response actions was consistent with the National Contingency Plan, a determination made on the administrative records for those response action selections, see 42 U.S.C. § 9613(j) and Order by J. Kelleher dated Feb. 16, 1993 (attached as Exhibit A) and the amount of the United States' costs. Defendants have had the entire administrative record for well over fourteen years, and as detailed below, the United States provided all of the cost documents to Defendants well in advance of filing its motion.  (Weinischke Declaration, attached as Exhibit B.)

Like the Motion filed July 10, 2020, the 2006 motion provided similar cost summaries and supporting declarations – indeed, only eight of the "57 exhibits

**Commented [GM1]:** We need to attach this.

**Commented [GM2]:** Add paragraph numbers to citations to decl.

numbering in the thousands of pages," Mem. In Supp. Of Ex Parte Application at 6, contain some amount of new information, as the remaining forty-nine exhibits were filed with the 2006 motion.  The United States has continuously provided all cost documentation sought by the Defendants and has asked the Defendants to identify any cost documentation that the United States possesses that they may wish to see. The costs ranging from 1990 to 2004 are the same costs sought in 2006, for which Defendants have had the supporting documents since before the United States filed its 2006 Motion.  As to the costs after 2004, the United States provided extensive cost summaries to the Defendants for costs through December 31, 2012 in a demand dated November 21, 2013, and United States provided cost summaries for all costs through July 31, 2018, prior to a May 20, 2019, meeting of all Parties to this action, which it replaced with slightly revised versions of those cost summaries on December 5, 2019.  When EPA finished scanning all of the supporting documents underlying the post-2004 costs and secured a protective order to protect confidential information from being disclosed, it provided the electronic documents to the Defendants by overnight mail, delivered on February 3, 2020 – five and a half months ago.  Finally, when the United States' declarant Wiley Wright completed his review of the supporting cost documents and identified a few that were missing, EPA provided those few additional documents to the Defendants on May 27, 2020.  These are the very documents Defendants now refer to as "an unknown number of documents" and suggest that they lack.  Mem. In Supp. Of Ex

Parte Application at 4, 6.

In addition, the United States provided in 2019, upon the Defendants' request, a declaration explaining the United States' methodology in calculating certain costs. The content of that declaration is the same as the Osbourne Declaration filed with the United States' Motion for Summary Judgment.  The United States further provided, again at the Defendants' request, factual and legal grounds for the accrual of interest on the costs incurred by the United States on May 20 and 24, 2019.  Not only are the cost summaries and declarations attached to the 2020 Motion comparable to those attached to the 2006 motion, they are precisely like those which the Ninth Circuit has found sufficient to support the United States' motion to recover response costs.  See United States v. Chapman, 146 F.3d 1166, 1171 (9th Cir. 1998) (declarations from EPA staff, attorneys, accountants, and cost summaries sufficient to support grant of summary judgment on CERCLA response costs). Defendants' proposed discovery cannot change that fact.  It can only serve their goal of further frustrating one of the primary objectives of a remedial statute entitled to liberal construction.

Defendants have also failed to meet their burden of demonstrating diligence in pursuing discovery.  Defendants' memorandum notes that the case was stayed in 2007.  Mem. In Supp. Of Ex Parte Application at 2-3.  But Judge Kelleher's order did not entirely stay all aspects of the litigation; rather, he ordered that no additional dispositive motions were to be filed without his permission.  Docket No. 610 ¶ 3.

Discovery requests and motions to modify a scheduling order and to compel

discovery are not dispositive.  Even if Defendants misunderstood Judge Kelleher's

order, this Court lifted the stay on October 23, 2019 (Docket No. 669), providing

Defendants ample time to seek to reopen discovery, which had closed by Judge

Kelleher's April 21, 1992, order (attached as Exhibit C), or to seek reconsideration

of Judge Kelleher's February 16, 1993, order limiting the remaining issue in the

case to review on the administrative record, under which the Defendants' only

option was to move to supplement the administrative record.  Indeed, in

Defendants' opposition to Plaintiffs' motion to lift the stay, they argued that

"additional fact discovery and expert disclosures will be required prior to any

motion for summary judgment."  Docket No. 667 at 4.  Yet they made no such

attempt when the stay was lifted on October 23, 2019, nor following the first meet

and confer about the United States' motion on December 18, 2019, nor at the

second meet and confer on the motion on March 23, 2019.  Defendants' lack of

diligence fails to satisfy the Ninth Circuit's standards.

B.   Defendants Fail to Satisfy Requirements to Modify Existing Scheduling
     Order

Defendants acknowledge that they first served the discovery requests at issue

on May 8, 2020.  The Defendants withdrew their May 8 discovery and informed the

**Commented [GM3]:** Need to attach these old orders

United States (and State) that they would move the Court to reopen discovery.[1]  In

doing so, Defendants completely ignored this Court's prior scheduling orders

closing discovery on September 8, 1992.  The Court's first Order Re Discovery

Cut-Off and Notice of Pre-Trial Conference was issued on October 30, 1991

(attached as Exhibit D), and it required that the Defendants complete all discovery

no later than July 30, 1991, and only allowing for extensions "FOR LEGAL

CAUSE TIMELY SHOWN IN WRITING."  Order Re Discovery and Notice of

Pre-Trial Conference (Oct. 30, 1991) (emphasis in original) (Order attached hereto).

On April 21, 1992, the Court issued a Stipulation and Agreement Extending

Discovery Schedule Order Thereon which required the parties to complete all

discovery by September 8, 1992.  That Order is attached hereto.  No other

scheduling order was ever issued by the Court and no party ever sought leave in

writing for an extension of discovery as required by the Court's October 30, 1991,

Order.

     There is no argument that the discovery cut-off date has long-since passed, and

it is equally clear that Defendants have not made any request in writing for an

extension for their recently propounded discovery requests.  And, as explained in

---

[1] Defendants refer to this as the "Discovery Dispute," and the United States does
not concede that the Discovery Dispute is properly before the Court at this time.
L.R. 37-3 provides that, "[u]nless the Court in its discretion otherwise allows, no
discovery motions may be filed or heard on an ex parte basis absent a showing of
irreparable injury or prejudice not attributable to the lack of diligence of the moving
party."  Defendants have made no attempt to argue irreparable injury or prejudice
not attributable to the lack of diligence.

**Commented [GM4]:** Need to attach

more detail herein, Defendants already have all of relevant information they need and to which they are entitled.  Additionally, to the extent that Defendants believe that additional discovery is needed, they have had ample opportunity to request leave of the court to seek such discovery over the past 27 years.  Instead, Defendants have waited until now, days after Plaintiffs provided notice that they would be submitting updated versions of the motions for summary judgment originally filed in 2006 to seek discovery.

The Defendants undertook the exact same discovery tactic when they were notified that the United States was going to file a motion for summary judgment in 2006.  Then, despite having known full well of the costs incurred and being incurred by the United States, at the very least, since entry of the Partial Consent Decree in 1994, the Defendants never expressed any desire to conduct discovery until the United States moved for summary judgment.  In fact, the issue of whether the Defendants were entitled to discovery beyond the Court's discovery cutoff was fully briefed in 2006 by both the Plaintiffs and Defendants, following the filing of the summary judgment motions in 2006.  Having been fully briefed, the Court ruled that the Plaintiff s' Motions for Recovery of Costs were ripe for adjudication on the papers submitted.  The Court advised the parties that they would be notified when a decision on the cost recovery motions was reached.  See Minutes of in Chambers Order, March 20, 2006, (Docket No. 583), in which the Court referenced the Plaintiffs' Summary Judgment Motions for recovery of costs, the Defendants'

Motions for an Order Denying Plaintiffs' Premature Motions for Summary

Judgment, and the State's Motion for a Protective Order barring discovery by the

Oil Company Defendants.  The Court added that, pursuant to Rule 78 of the Federal

Rules of Civil Procedure and Local Rule 7-15, the Plaintiffs' Motions for Summary

Judgment are appropriate for decision without oral argument.  The scheduled

hearings were vacated and the matters were deemed submitted.

Ultimately, rather than decide the Motions, the Court vacated the March 20,

2006 Order to allow resolution of the Defendants' contract dispute in the Court of

Federal Claims before ruling on the Plaintiffs' summary judgment motions.  This

Court should recognize the Defendants' discovery tactics as nothing more than an

attempt to further delay reimbursing the United States' costs for which they have

been found jointly and severally liable.

Moreover, even if the Court were to overlook Defendants' abject failure to

comply with the prior discovery orders, Defendants cannot show legal cause to

extend the discovery period under the six factor test established by City of Pomona

v. SQM N. Am. Corp., 886 F.3d 1060 (9th Cir. 2017).  Pursuant to City of Pomona,

district courts should consider the following factors when evaluating a motion to

reopen discovery: "1) whether trial is imminent, 2) whether the request is opposed,

3) whether the non-moving party would be prejudiced, 4) whether the moving party

was diligent in obtaining discovery within the guidelines established by the court,

5) the foreseeability of the need for additional discovery in light of the time allowed

for discovery by the district court, and 6) the likelihood that discovery will lead to relevant evidence." Id. at 1066 (quoting United States ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1526 (9th Cir. 1995)).

First, while trial is not imminent, the other factors in the City of Pomona case expose the fatal flaws in Defendants' ex parte application. Defendants only propounded the discovery after the Plaintiffs scheduled a meet and confer, as required by Local Rules, with respect to their Motions for Summary Judgment.

With regard to the second and third factors, the United States does indeed object to the Defendants' belated attempt to conduct discovery, and, as it has been for the past fourteen years, the public is prejudiced by the Defendants' failure to reimburse the United States for response costs for which they have been found liable. United States v. Shell Oil Co., 841 F. Supp. 962, 975 (C.D. Cal. 1993). Clearly, with respect to the fourth factor, Defendants cannot contend that they were diligent in obtaining discovery within the guidelines established by this Court, and thus the fourth factor in Pomona by itself is sufficient to bar the Defendants' discovery requests.

Elaborating further on the fourth and fifth prongs set out in Pomona, the Defendants cannot make the requisite showing that they were diligent in obtaining discovery within the guidelines established by the Court, nor can they contend that any need for additional discovery was not foreseeable within the time allowed by the Court for discovery. As recently as the status conference before this

Court last August when the United States requested that the Court lift the stay barring the filing of dispositive motions, the United States made clear its intention to re-file its Motion for Summary Judgment for the recovery of response costs. But Defendants' full awareness of the United States' commitment to recovering response costs owed by the Defendants dates back much farther. For example, in an August 2003 Joint Submittal to the Court, under the heading "Determination of Outstanding Costs Not Previously Resolved," the Plaintiffs set forth the amount of money they were owed by the Defendants. Docket No. 507 at 18. The United States noted in the Joint Submittal that it had recently demanded reimbursement of costs from the Defendants and provided the Defendants with a standard cost summary and interest calculation. Id. at 19. The United States added that they would meet with the Defendants "for the purpose of conferring and negotiating a resolution of its cost claims." Id. In the same section of the Joint Submittal, the Defendants represented to this Court that they "recommend that the parties be directed to meet and confer and negotiate with respect to the outstanding cost claims of the United States and the State to determine if stipulations can be arrived at for presentation to the Court for incorporation in a further judgment." Id. at 19-20.

The next month (September 2003), the parties did in fact meet at EPA's offices in San Francisco to discuss Plaintiffs' cost claims. To accommodate the Defendants, the United States brought two cost recovery specialists from EPA,

Commented [GM5]: Need to attach

along with EPA's project manager for the McColl Site, to the meeting to answer

any questions the Defendants had about the costs.  Except for a few documents,

which the Defendants requested and EPA promptly provided, the Defendants said

they had everything they needed.  At the close of the meeting, the Defendants said

they would get back to us to address any concerns they had with the costs.  They

never did contact the United States.  And, while a resolution was not reached, the

Defendants never expressed any need or desire to conduct discovery or obtain

additional information or documentation.  See Ex. A to the United States' Motion

for a Protective Order (Mar. 9, 2006), Docket No. 567.

With respect to the sixth Pomona prong, the only issue that remains in this

case is whether the Defendants can show on the administrative records that the

United States' costs were incurred in a manner not consistent with the National

Contingency Plan ("NCP").  The Defendants have had the administrative records

for at least sixteen years.  They cannot show that discovery on the only issue in the

case will, therefore, lead to relevant evidence.

C.   Standard for Ex Parte Application

In order for the Defendants to meet their burden of showing that ex parte relief

is warranted, they must demonstrate that their opposition will be "irreparably

prejudiced" if the United States' summary judgment motion is heard according to

regularly noticed motion procedures, and that they are "without fault in creating the

crisis that requires ex parte relief, or that the crisis occurred as result of excusable

neglect." <u>Mortgage Grader, Inc. v. Lenderfi, Inc</u>., No. 10-01521-CJC, 2012 WL

13014970, at *1 (C.D. Cal. June 22, 2012) (quoting <u>Mission Power Eng'g Co.</u>, 883

F. Supp. at 492).

In light of the length of time in which the United States has endeavored to

recover response costs from the Defendants, this Court must not permit a further

delay of reimbursement due to the Defendants' failure to seek any discovery until

the United States informed them of what they already knew – the intention to file

for summary judgment.  "The moving party must show that it used the entire

discovery period efficiently and could not have, with due diligence, sought to

obtain the discovery earlier in the period." <u>Mission Power Eng'g Co.</u>, 883 F. Supp.

at 493.  Defendants cannot, with a straight face, contend that they could only seek

discovery when the United States moved for summary judgment.  They literally

have had years to do so.  Furthermore, Defendants cannot show that they are

irreparably prejudiced by this Court hearing the United States' summary judgment

motion because they are wholly unable to show what specific facts exist which

would create a genuine issue of disputed fact.  Defendants' burden is to

demonstrate on the administrative records that the United States response costs

were incurred in a manner inconsistent with the NCP.  <u>See</u> 42 U.S.C. § 9613(j).

They are not prejudiced by a denial of their ex parte application because the

discovery they are seeking is not in the administrative records, which they have had

at least since they were lodged with the Court in 2006.  Certainly, the Defendants

cannot maintain that their failure to reopen and conduct discovery over the past

fourteen years was not entirely of their own making.

When the Court granted the Plaintiffs' Motion to bifurcate the Defendants'

counterclaims and proceed on the Governments' cost recovery claims, it reasoned

that preventing the Governments' "expeditious recovery of response costs . . .

would inappropriately prejudice the public welfare by slowing replenishment of the

Superfund." Shell Oil Co., 841 F. Supp. at 975.  On the flip side, the Defendants

would not be unduly prejudiced because "they will be reimbursed in the future for

any costs . . . that are properly attributable to other parties." Id.   In lifting the stay,

this Court reinforced that conclusion, deciding that "[m]aintaining the stay may

damage 'the public welfare,' which is advanced by 'replenishment of the

Superfund,' and that, '[i]f it later turns out that the Oil Companies are entitled to

compensation, they will be reimbursed, so the hardship or inequity in being

required to go forward is low."  Order Granting Plaintiffs' Motion to Lift Stay (Oct.

23, 2019), Docket No. 669 at 3.  In fact, that is precisely what has occurred.  In

2018, the Defendants obtained a $99 million judgment against the United States for

costs they incurred related to the McColl Site, and three weeks ago they were

awarded another $1.6 million judgment.  Shell Oil Co. v. United States, No. 19-

1795C, 2020 WL 3618890, at *12 (Fed. Cl. June 29, 2020).  Presumably, the

Defendants will seek to recover any costs they are required to pay as a result of the

United States' Motion for Summary Judgment.

16

As previously stated, this Court ruled that there was only one issue remaining in this case and that is whether the costs claimed by the Governments were incurred in a manner consistent with the NCP.  Shell Oil Co., 841 F. Supp. at 975. Defendants' discovery far exceeds the scope of the issue that remains before the Court.  The Defendants' discovery requests cover the following three topics; (1) the work performed by the United States at the McColl Site and the consistency of that work with the National Contingency Plan, (2) the United States' methodology for allocating contractor costs that are associated with site-remediation generally but not any specific CERCLA clean-up site, a topic which does not appear in the Defendants' July 7, 2020, letter,[2] (3) the United States' calculation of interest, and (4) the United States' methodology and calculation of indirect costs from 1990 to 1994.

On the first issue, CERCLA and the law of the case is clear.  The United States' costs for the response actions at the McColl Site are recoverable so long as the actions are not inconsistent with the NCP.  42 U.S.C. § 9607(a)(4)(A); Chapman, 146 F.3d at 1169.    In evaluating this, the Plaintiff's actions are assumed to be consistent with the NCP unless the Defendants' can show otherwise.

_____

[2] The omission of annual allocations and the addition of 1990-1994 indirect costs in the July 7, 2020, letter may be a drafting error, as the latter has long been requested of Plaintiff State of California.  The United States views the primary purpose of the July 7, 2020, letter as not being a need for information, which is barely described in a footnote, but to delay resolution of this matter. Moreover, the letter represents a brazen attempt to confuse the issues between the breach of contract action in the Court of Federal Claims and the CERCLA action in this Court and verges on attempting to relitigate the liability ruling made by the Ninth Circuit in 2002.

Chapman, 146 F.3d at 1170-71.  And, important to this discovery dispute, the

Defendants' showing must be based on what is in the administrative record.  Id.

Judge Kelleher reached the same conclusion in 1993 when he limited discovery

regarding the selection of response actions at the McColl Superfund Site to the

administrative record, only allowing Defendants to move to supplement the record

upon specified grounds.  Order (Feb. 16, 1993, Exhibit A).

**Commented [GM6]:** Need to attach

With respect to the other discovery requests, the Defendants have already been

provided all relevant information on multiple occasions.  The costs at issue are, for

the most part, the same costs that the United States sought to recover by its Motion

for Summary Judgment filed with the Court in 2006.  The main difference today is

that additional interest has accrued on the unpaid costs sought in 2006, and the

United States has incurred relatively smaller additional litigation costs in their

efforts to recover their response costs and costs for oversight of the remedy.

The Defendants initially sought all documents related to Annual Allocations

claimed by the United States.[3]  Again, the United States has already provided all of

its cost records, including detailed annual allocation reports, to the Defendants, with

the most recent supplement of documents provided in January 2020.  Moreover, the

Defendants have the declaration of Charles Young, filed in 2006, explaining in

detail the Annual Allocations.  Finally, every court that has addressed the recovery

---

[3] "Annual Allocations" refers to the process by which EPA allocates to sites a
contractor's non-site-specifically charged costs that support, benefit, or relate to site
response actions.

of CERCLA response costs has found EPA's annual allocation to be appropriate and consistent with general accounting principles.  See, e.g., United States v. Atchison, Topeka & Santa Fe Ry. Co., No. CV-F-92-5068 OWW, 2003 WL 25518047, at *39 (E.D. Cal July 15, 2003); United States v. Findett Corp., 220 F.3d 842, 849 (8th Cir. 2000); United States v. Chrysler Corp., 168 F. Supp. 2d 754, 772 (N.D. Ohio 2001).

With respect to the Defendants request that the United States produce all documents related to any interest claimed as costs, once again, the United States has both provided all documents related to the initial accrual of interest on the costs as well as detailed explanations and documents as to how the interest was calculated. Of course, interest is expressly recoverable on all costs incurred by the United States pursuant to 42 U.S.C. § 9607(a).

Finally, as to the new request for the United States' methodology and calculation of indirect costs from 1990 to 1994, this information was already provided as early as 2003 and supported by the 2006 Young Declaration and the substantially similar 2020 Osbourne Declaration.  The Ninth Circuit has upheld district courts' finding that the United States' methodology used to calculate indirect costs "'is an appropriate accounting measure of its indirect costs charged to Superfund sites . . . .'"  United States v. W.R. Grace & Co., 429 F.3d 1224, 1250 (9thaxsza+" Cir. 2005) (quoting district court, 280 F. Supp. 2d 1149, 1169 (D. Mont. 2003)).

1
2
3                                **<u>CONCLUSION</u>**
4          The United States has acted in good faith to provide all of the cost information
5   sought by the Defendants well before the United States filed its motion for
6   summary judgment and before it met and conferred with Defendants on December
7
8   18, 2019, and March 23, 2020, regarding its motion. Defendants' belated discovery
9   is nothing more than another delay tactic in order to continue to postpone United
10  States' recovery of costs for which the Defendants have been found jointly and
11
12  several liable.  Their attempt to extend the deadlines for the Motion for Summary
13  Judgment on grounds that discovery is necessary fails to meet the standards under
14
15  Rule 56(d), and their application for ex parte relief fails to demonstrate that they
16  will be irreparably prejudiced or that they were without fault in creating this
17  "crisis."  Accordingly, the United States asks that the Court reject Defendants' ex
18
19  parte application to extend the deadlines to respond to the United States' motion for
20  summary judgment.
21
22                                          Respectfully submitted,
23
24                                          Plaintiff United States of America
25
26                                          <u>/s/ William A. Weinischke</u>
                                            William A. Weinischke
27                                          Senior Attorney
                                            Environmental Enforcement Section
28                                          Environment and Natural Resources

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Division
United States Department of Justice
(202) 514-4592
Bill.weinischke@usdoj.gov