GREG CHRISTIANSON (SBN 181231)
**ALSTON & BIRD LLP**
560 Mission St.
Suite 2100
San Francisco, CA 94105
Telephone:    415-243-1000
Facsimile:    415-243-1001
E-mail:        greg.christianson@alston.com

Attorney for Defendants
SHELL OIL COMP ANY, TEXACO INC., ATLANTIC
RICHFIELD COMPANY, AND UNION OIL
COMPANY OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | Case No. CV 91-0589 (CJC) |
| Plaintiffs, | **DEFENDANTS' OPPOSITION TO PLAINTIFF UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; REQUEST FOR ORAL ARGUMENT** |
| v. | |
| SHELL OIL COMPANY, et al., | |
| Defendants. | |
| | Date:        October 5, 2020 |
| | Time:        1:30 p.m. |
| | Judge:       Hon. Cormac J. Carney |
| | Ctrm.:        9B, Ronald Reagan Federal Building |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.    INTRODUCTION. ........................................................................... 1

II.   BACKGROUND. ............................................................................ 4

    A.   Factual and Procedural Background ........................................ 4

    B.   Prior Litigation, Stay of Proceedings, and Partial Consent Decrees Between the United States and State of California. ................................ 5

    C.   Current Procedural Posture ...................................................... 7

III.  LEGAL STANDARD ...................................................................... 8

IV.   ARGUMENT .................................................................................. 9

    A.   The US Failed to Disclose Five Witnesses Whose Declarations Were Filed In Support of The Motion in Violation of FRCP 26(a). ........ 9

    B.   The US Failed to Explain Accounting Irregularities Identified at the Site By the EPA's Inspector General. ........................................... 9

    C.   The United States Cannot Continue to Pursue a Claim Under CERCLA Section 107, 42 U.S.C. § 9607; It Must Pursue a Claim Under CERCLA Section 113(f), 42 U.S.C. § 9613(f). .............. 10

    D.   Because the United States is Not Entitled to the Favorable Standard and Rebuttable Presumption in CERCLA Section 107(4)(A), the United States Must Show That Its Alleged Response Costs are  "Consistent with the National Contingency Plan." ................................................................. 20

    E.   Even if the United States Can Proceed with A Claim Under CERCLA Section 107, 42 U.S.C. § 9607, The United States has Failed to Establish that Its Alleged Response Costs Are Recoverable and There is A Genuine Question of Fact as to the United States' Ability to Recover Its Asserted Response Costs. .......... 21

V.    CONCLUSION ............................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcoa, Inc. v. Alcan Rolled Products-Ravenswood LLC*,
439 F. Supp. 3d 325 (D. Del. 2020), *reconsideration denied*, No. CV 06-451-JFB-SRF, 2020 WL 1180713 (D. Del. 2020) *reconsideration denied*, No. CV 06-451-JFB-SRF, 2020 WL 1180713 (D. Del. Mar. 11, 2020) ........................................................................................................ 13, 14, 15, 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................... 8

*Aviall Services, Inc. v. Cooper Indus. LLC*,
572 F.Supp.2d 676 (N.D. Tex. 2008) ........................................................ 22

*Burlington Northern and Santa Fe Ry. Co. v. United States*,
556 U.S. 599 (2009) ..................................................................................... 12

*Cadillac Fairview/California, Inc. v. Dow Chem. Co.*,
299 F.3d 1019 (9th Cir. 2002) ...................................................................... 3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................................... 8

*City of Fresno v. NL Indus., Inc.*,
No. CV-F 93-5091 REC/DLB, 1995 WL 641983 (E.D. Cal. July 9, 1995) .......................................................................................................... 18

*Comparing United States v. Hunter*,
70 F.Supp.2d 1100 (C.D. Cal 1999) ..................................................... 18, 19

*Cranbury Brick Yard, LLC v. United States*,
943 F.3d 701 (3d Cir. 2019)......................................................... 2, 14, 16, 19

*El Paso Nat. Gas Co., LLC v. United States*,
390 F. Supp. 3d 1025 (D. Ariz. 2019) ........................................................ 12

*Fireman's Fund Ins. Co. v. City of Lodi, California*,
271 F.3d 911 (9th Cir. 2001), *as amended* (Jan. 8, 2002), *opinion withdrawn sub nom. Fireman's Fund Ins. Co. v. City of Lodi, CA*, 287 F.3d 810 (9th Cir. 2002), *and superseded sub nom. Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Oct. 8, 2002) ...................................... 18

*Fireman's Fund Ins. Co. v. City of Lodi, California*,
   302 F.3d 928 (9th Cir. 2002), *as amended on denial of reh'g and reh'g*
   *en banc* (Oct. 8, 2002)...................................................................... 16, 17, 18

*Group v. Newmont Mining Corp.*,
   118 F.3d 1298 (9th Cir. 1997) ................................................................ 17

*In re Kaiser Grp. Int'l, Inc.*,
   289 B.R. 597 (Bankr. D. Del. 2003) ....................................................... 18

*New York v. Moulds Holding Corp.*,
   196 F. Supp. 2d 210 (N.D.N.Y. 2002) .................................................... 19

*Porter v. Cal. Dep't of Corr.*,
   419 F.3d 885 (9th Cir. 2005) ..................................................................... 8

*Ricci v. DeStefano*,
   557 U.S. 557 (2009).................................................................................. 8

*Shell Oil Co. v. United States*,
   130 Fed. Cl. 8 (2017) ...................................................................... 5, 7, 11

*Shell Oil Co. v. United States*,
   896 F.3d 1299 (Fed. Cir. 2018)............................................................ 5, 7

*Shell Oil Co. v. United States*,
   No. 19-1795C, ---Fed.Cl.---, 2020 WL 3618890 (Fed. Cl. June 29, 2020).............. 4, 15

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*,
   809 F.2d 626 (9th Cir. 1987) .................................................................... 9

*Tolan v. Cotton*,
   572 U.S. 650 (2014).................................................................................. 9

*U.S. v. Nat'l R.R. Passenger Corp.*,
   No. CIV.A. 86-1094, 2004 WL 1335723 (E.D. Pa. June 15, 2004)............................ 17

*United States v. Alcan Aluminum Corp.*,
   964 F.2d 252 (3d Cir. 1992)..................................................................... 11

*United States v. Atlantic Research Corp.*,
   551 U.S. 128 (2007)..................................................................... 12, 13, 19

*United States v. Findett Corp.*,
   220 F.3d 842 (8th Cir. 2000) .............................................................. 23, 24

*United States v. Newmont USA Ltd.*,
 504 F. Supp. 2d 1050 (E.D. Wash. 2007) ................................................... 12

*United States v. Shell Oil Co.*,
 294 F.3d 1045 (9th Cir. 2002) ............................................................... *passim*

*United States v. Simon Wrecking, Inc.*,
 481 F. Supp. 2d 363 (E.D. Pa. 2007) ......................................................... 19

*Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*,
 No. 1:10-CV-044 JD, 2018 WL 2328447 (N.D. Ind. May 22, 2018) ........................ 24

*Whittaker Corp. v. United States*,
 825 F.3d 1002 (9th Cir. 2016) ........................................................... 12, 13

*Wilson v. Pier 1 Imports (US), Inc.*,
 439 F. Supp. 2d. 1054 (E.D. Cal 2006) ....................................................... 8

**Statutes**

42 U.S.C. § 9601 ................................................................... *passim*

42 U.S.C. § 9607 ................................................................... *passim*

42 U.S.C. § 9613 ................................................................... *passim*

42 U.S.C. § 9620 ............................................................... 2, 12, 16

Comprehensive Environmental Response, Compensation, and Liability Act,
 41 U.S.C. §§ 9601-9675 .......................................................... *passim*

Freedom of Information Act, 5 U.S.C. § 552 ......................................... 22, 23

**Other Authorities**

40 C.F.R. § 300 ....................................................................... 2

Fed. R. Civ. P. 56(c) ................................................................. 8

Fed. R. Civ. P. 26(a) ................................................................. 9

Fed. R. Civ. P. 37(c)(1) .............................................................. 9

Fed. R. Civ. P. 801(d)(1)(A), (d)(2) ................................................. 10

Fed. R. Civ. P. 803(16) .............................................................. 10

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Shell Oil Company, Texaco Inc., Atlantic Richfield Company, and Union Oil Company of California (collectively, the "Companies") hereby submit this response (the "Response") to the Motion for Partial Summary Judgment as to the Amount of Recoverable Response Costs filed by Plaintiff United States of America ("US") on July 10, 2020 (the "Motion").

## I.      INTRODUCTION.

This Court should deny the Motion as the US has failed to carry its burden of proof and there are numerous triable issues of material fact. Specifically, the US has submitted objectionable declarations and evidence that should be struck by the Court; the US has made admissions against interest as to unexplained accounting irregularities related to costs purportedly incurred at the McColl Superfund Site in Fullerton, California ("Site") during the periods at issue; and the US—an adjudged liable polluter at the Site—is limited to a claim for contribution and has failed to submit sufficient appropriate evidence in support of its Motion.

In addition to its other evidentiary objections, the Companies object to and ask the Court to strike in their entirety the declarations of Christopher S. Osborne; Wiley R. Wright; Rusty Harris-Bishop; Magdalen Mak; and Lisa Ouyang, filed in support of the Motion based on the failure of the US to disclose these witnesses at any time prior to filing its Motion.

Furthermore, the US' Motion should be denied because the US has admitted through the Office of the Inspector General of the Environmental Protection Agency ("OIG") to unexplained accounting irregularities (and possible fraud) at the Site, which have likely resulted in the US seeking ineligible costs through this Motion. As the non-moving party, the evidence must be viewed in a light most favorable to the Companies and all inferences must be drawn in the Companies favor. Neither the US' Motion nor the documents submitted in support thereof explain the nature and extent of the ineligible costs or indicate how they

were segregated from those costs sought in this Motion, if at all.

Finally, the US failed to meet its evidentiary burden of consistency with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), 40 C.F.R. § 300. The instant dispute presents, among other objections, a narrow issue of first impression arising from a unique procedural posture: whether the US—which has been adjudged a liable polluter at the Site—is entitled to pursue an action under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675 ("CERCLA"), 42 U.S.C. § 9607(a)(4)(A), and whether the US is entitled to the rebuttable presumption of consistency with the NCP in Section 107(a) for its alleged response costs associated with the Site solely due to its status as the "United States Government." *See* 42 U.S.C. § 9607(a)(4)(A); 42 U.S.C. § 9607(f). The US incorrectly assumes that it is. (*See* Motion, at 15-16, ECF No. 680.) The US wishes to pursue its claim under Section 107 because "[i]f a cost-recovery suit succeeds, the defendants are strictly as well as jointly and severally liable." *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 704 (3d Cir. 2019). And under Section 107(a)(4)(A), the US would then be allowed to recover "all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." The US is mistaken.

It would be contrary to CERCLA's intent to allow the US—which for over a decade acted as an uncooperative potentially responsible party ("PRP") at the Site—to take advantage of statutory presumptions reserved for cooperating PRPs by not holding it to the proper evidentiary standard applicable in contribution for recovery of its alleged response costs and interest. Specifically, because the US has been adjudged a liable party at the Site[1] and has entered into partial consent

---

[1] *See* "The United States conceded that it was an arranger for the 'benzol' waste." *United States v. Shell Oil Co.*, 294 F.3d 1045, 1048, 1062 (9th Cir. 2002) (citing *United States v. Shell Oil Co.*, No. 91-cv-00589, at 14-19 (C.D. Cal. Sept. 18, 1995)); *id.* at 1048 ("The district court also held that the United States had waived its sovereign immunity to suit under 42 U.S.C. § 9620(a)(1). After trial, the district court held that 100% of the cleanup

decrees with the state of California,[2] the US is limited to a claim for contribution and must prove that its "necessary costs of response incurred" were "consistent with the national contingency plan" in accordance with 42 U.S.C. § 9607(a)(4)(B) (*see United States v. Shell Oil Co.*, 294 F.3d 1045, 1048 (9th Cir. 2002)). The verified and unverified information provided by the US to the Companies to date is incomplete and does not meet this standard, and to the extent that the US intends to rely on additional supporting evidence and data, the Companies are entitled to test the sufficiency of such evidence.[3]

Alternatively, even if the Court concludes that the US can proceed with a CERCLA Section 107(a) cost recovery claim, which the Companies strongly dispute, there is numerous genuine issues of material fact as to whether the US' claimed response costs are appropriate and whether they meet the statutory standards.

/ / /

/ / /

/ / /

---

costs for all the waste, including the non-benzol waste, should be allocated to the United States, and 0% to the Oil Companies, under 42 U.S.C. § 9613(f)(1).") (citation omitted). On appeal, the district court's holding was reversed as to the US' status as an arranger for non-benzol waste only (i.e., the US remains liable as an arranger for benzol waste at the Site). *Shell Oil Co.*, 294 F.3d 1048-1049.

*See also* Partial Consent Decree Between Plaintiff State of California and the United States as Counterclaim Defendant Regarding State Response Costs for the Period July 2008 through June 2011 and [Proposed] Order ("2008-2011 Partial Consent Decree"), at 4; Partial Consent Decree Between Plaintiff State of California and the United States as Counterclaim Defendant Regarding State Response Costs for the Period July 2011 through June 2016 and [Proposed] Order ("2011-2016 Partial Consent Decree"), at 4-5 (same).

[2] 2008-2011 Partial Consent Decree, at 5-6; 2011-2016 Partial Consent Decree, at 5-6.

[3] The recent related decisions by the United States Court of Federal Claims finding the US liable as indemnitor in partial breach of contract for these same costs, the value of avoiding further unnecessary litigation, and the interests of economy of public and private resources, and judicial efficiency provide a solid basis for equitable reallocation under 42 U.S.C. § 9613(f) at the Site. *See Cadillac Fairview/California, Inc. v. Dow Chem. Co.*, 299 F.3d 1019, 1025 (9th Cir. 2002). And the Companies intend to file a motion for reallocation of costs based on these same factors.

DEFENDANTS' OPPOSITION TO UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2

## II.   BACKGROUND.

### A.   Factual and Procedural Background.

Because the US' statement of the case is deficient, the Companies present a more complete and detailed statement of the background of this dispute. The United States Court of Federal Claims has recently summarized the background of the litigation between the Companies and the US related to the Site. *See, Shell Oil Co. v. United States*, No. 19-1795C, ---Fed.Cl.---, 2020 WL 3618890 (Fed. Cl. June 29, 2020) (Request for Judicial Notice ("RJN"), Ex. 2.) The court's summaries provide useful context for the current dispute.[4]

The events underlying this dispute date back to World War II. (RJN, Ex. 2 at 3.) As the US entered World War II, high-octane aviation gasoline ("avgas") became critical to the war effort. At the onset of the war, production levels were insufficient to support military operations. As a result, the US entered into contracts with the American petroleum industry to purchase large quantities of avgas and rapidly expand avgas production facilities. The contracts required the Companies to sell large quantities of avgas to the government at artificially low profit margins in return for the "[g]overnment's assumption of certain risks outside of the [o]il [c]ompanies' control," including the "risks of such increased productions." (*Id.* at 2 (internal quotation mark and citation omitted).) The government further agreed in each of the contracts to "pay *any new or additional taxes*, fees, or *charges*, ... which [the oil companies] may be *required by any* municipal, state, or *federal law* in the United States or any foreign country to collect or pay *by reason of the production, manufacture, sale or delivery of* [*avgas*]." (*Id.* (internal quotation marks and citation omitted).)

These contracts resulted in significantly increased avgas production

_____

[4] The Companies acknowledge that the Court of Federal Claims' recitations of the background "do not constitute findings of fact by the court. Instead, the recited factual elements [were] taken from the complaint, the parties' briefs and attached appendices, and previous opinions in related litigation." *Shell Oil Co.*, 2020 WL 3618890, at *1 n.1.

and proved crucial to the war effort; however, the exigencies of this effort also resulted in environmental contamination, including "ultimately requiring the oil companies to dump 'spent alkylation acid, along with acid sludge, on property in California owned by Eli McColl.'" (RJN, Ex. 2 at 3.) The Companies disposed of acid waste on the Site from 1942 until shortly after the war ended in 1945, when the government terminated the contracts. The McColl site closed on September 6, 1946. (*Id.*) There is no dispute that the response costs claimed by the US in this litigation are the very same costs for which the US has a contractual obligation to indemnify the Companies. *See*, *Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 34 (2017) (heading) (capitalization omitted); *Shell Oil Co.*, 896 F.3d at 1316.

**B.      Prior Litigation, Stay of Proceedings, and Partial Consent Decrees Between the United States and State of California.**

In the early 1990s, the US and the State sued the Companies under CERCLA, seeking to recover costs from cleaning up the Site. In response, Companies counterclaimed for breach of contract, arguing that indemnification provisions in the avgas contracts required the US to pay for the cleanup. (Docket No. 669 at 2.) Specifically, the Companies sought reimbursement costs of the non-benzol acid waste cleanup based on breach of contract. *Shell Oil Co. v. United States*, 896 F.3d 1299, 1305 (Fed. Cir. 2018).

This matter has a lengthy procedural history as noted by the Court of Federal Claims. (RJN, Ex. 2 at pgs. 3-4). Relevant for this Motion, on September 18, 1995, this Court adjudged the US, in its capacity as a counterclaim defendant, to be a liable party at the Site under CERCLA Section 107(a)(3), 42 U.S.C. § 9607(a)(3). The Companies were also found liable, and, as a result, have borne nearly all the clean-up costs incurred since 1994.

On June 28, 2002, the United States Court of Appeals for the Ninth Circuit affirmed the portion of this Court's judgment that found the US liable for 100% of costs associated with benzol waste (*Shell Oil Co.*, 294 F.3d at 1059-61),

despite the US' ongoing attempts to avoid liability. (2011-2016 Partial Consent Decree, Docket No. 635 at 4.)[5]

The Companies and the US subsequently reached a compromise stipulation that the US' share of the costs at the Site amounted to 6.25 percent. (Joint Request For Status Conference (Aug. 12, 2003) at 1-2 n.1 (Docket No. 507).) This agreement constituted an equitable allocation, recognizing that the US shares liability under CERCLA at the Site. As an adjudicated PRP and liable party, the US is responsible in this action under CERCLA for reimbursing the Companies for the US' 6.25 percent share of the costs paid to the State under the 1994 Consent Decree. (Docket No. 635 at 4-5.)

Later, this Court concluded that the Court of Federal Claims had exclusive jurisdiction over the contract counterclaims encompassing the very same costs the US is seeking here, so the Companies re-filed those claims in that Court. In 2007, recognizing the relatedness of the claims, this Court imposed a stay of the proceedings pending resolution of the Companies' contract indemnity claims against the US in the Court of Federal Claims. (Docket Nos. 665-2 at 2; 669 at 2.)

While the case was pending in the Court of Federal Claims, the State and the US agreed that under CERCLA and prior proceedings in this case, the State was entitled to recover from the US the portion of State's response costs for the periods of October 1990 through June 2008, July 2008 through June 2011, and July 2011 through June 2016 that constituted the US' allocable share of such costs incurred by the State in connection with the release or threatened release of hazardous substances at the Site. The US made settlement payments to the State to resolve the US' allocable share of liability under CERCLA for those periods. These agreements were memorialized by the State and the US and approved by this Court in partial consent decrees on July 10, 2009 (Docket No. 620), on March 21, 2012

---

[5] For ease of reference a copy of Docket No. 635 is attached as Ex. L to the Christianson Decl., ¶ 22.

(Docket No. 624), and on September 19, 2017. (Docket 635 at 5-6.)

In early 2016, the Court of Federal Claims held a trial on the Companies' claims for breach of contract for reimbursement of CERCLA costs related to the non-benzol acid waste clean-up; found that "all of the acid waste disposed of at the McColl site was 'by reason of' the avgas contracts'"; and awarded the Companies $99,509,847.32 in damages, which represented 100 percent of the costs the Companies incurred at the Site through November 30, 2015, plus statutory interest. *Shell Oil Co. v. United States*, 130 Fed. Cl. 8, 34 (2017) (heading) (capitalization omitted). The Federal Circuit unanimously affirmed the judgment on July 18, 2018. *Shell Oil Co.*, 896 F.3d at 1316. Significantly, in 2017, the Court of Federal Claims noted:

> "the United States . . . reneged on contractual promises made during World War II to American oil companies that voluntarily agreed to 'work night and day,' without regard to shareholder obligations, to increase the production of military aviation gas. In 2014, the United States Court of Appeals for the Federal Circuit held the Government was liable for a breach of contract . . . . After affording the parties additional discovery and an evidentiary hearing, the court has determined that the above captioned *oil companies collectively are entitled to $99,590,847.32, including $30,991,111.02 in interest which the U.S. taxpayers could have avoided paying, if the Government had lived up to its obligations, instead of wasting years in litigation.*"
> (RJN, Ex. 1 at 1 (emphasis added).)

## C.   Current Procedural Posture.

As mentioned above, in 2007, this Court imposed a stay of the proceedings pending resolution of the Companies' related contract claims against the US in the Court of Federal Claims. A year or so after the Court of Federal Claims case was finally affirmed by the Federal Circuit opinion issued on July 18,

2018, the US initiated the filing of a joint status report and status conference with the Court to get the stay of the enforcement case lifted. (Declaration Supplement of William A. Weinischke in Support of United States' Motion for Partial Summary Judgment for Recovery of Costs. ("Weinischke Suppl. Decl") ¶¶ 8, 10-11.) The Companies opposed lifting the stay because the US, despite losing in the Court of Federal Claims,[6] continued to dispute liability for the costs at issue in this Court. (Weinischke Suppl. Decl. ¶¶ 10-11.) By order of the Court, the stay was lifted on October 23, 2019. (Weinischke Suppl. Decl. ¶ 11.)

### III.    LEGAL STANDARD

Summary judgment is not appropriate where a movant cannot establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine dispute regarding a material fact arises when the existence or non-existence of the fact could lead a jury to different outcomes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating that there are no genuine disputes of material facts lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In resolving the motion, the Court must view material facts about which there is a genuine dispute "in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). The opposing party's evidence is to be believed, "and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party." *Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d. 1054, 1062-1063 (E.D. Cal 2006). "At the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citation omitted). To establish a factual dispute, the

---

[6] The Companies reserve all rights, claims and defenses under the avgas contracts to seek all available relief from the US for any amounts the Companies may be held liable for in this action.

1  opposing party does not have to establish a material issue of fact conclusively in its

2  favor; it is sufficient that "the claimed factual dispute be shown to require a jury or

3  judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.,*

4  *Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (*quoting*

5  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

## IV.   ARGUMENT

### A.   The United States failed to disclose five witnesses whose declarations were filed in support of the Motion in violation of FRCP 26(a).

9  The Companies object to and ask the Court to strike the declarations of

10  Christopher S. Osborne; Wiley R. Wright; Rusty Harris-Bishop; Magdalen Mak;

11  and Lisa Ouyang filed in support of the Motion based on the US' failure to disclose

12  these witnesses at any time prior to filing the Motion. Federal Rule of Civil

13  Procedure 37(c)(1) forbids the use at trial or on a motion of any information not

14  properly disclosed under Rule 26(a) unless the failure to disclose is substantially

15  justified or harmless. The failure to disclose these additional witnesses violates the

16  US' discovery obligations and, after 29 years of litigation, was in no way justified

17  and prejudiced the Companies' ability to conduct materially relevant discovery.

### B.   The United States failed to explain accounting irregularities identified at the Site by the EPA's Inspector General.

20  As the non-moving party, all evidence must be viewed in a light most

21  favorable to the Companies and all inferences must be drawn in the Companies'

22  favor. *See, Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

23  Here, the evidence clearly shows a genuine question of material fact

24  exists as to the US' entitlement to the costs sought in this Motion. The OIG

25  conducts audits and issues reports to "identify potential fraud, waste and abuse;

26  assess program compliance and management of agency processes." (Christianson

27  Decl. ¶ 43, Ex. R.) The OIG's Semiannual Report to Congress for the period

28

1     October 1, 1995, through March 31, 1996,[7] provided the following summary of an

2     audit related to the Site:

3     S5BGN3-09-0140-5300027        CA DOH-MCCOLL NPL SITE CA        8/ 1/95

4     Summary:  INELIGIBLE COST OF $895,268 INCLUDES $29,892 COSTS NOT
      SUPPORTED BY DOCUMENTATION; $687,123 OF UNALLOWABLE COSTS; AND
5     $178,253 OF FUNDS DRAWN IN EXCESS OF THE APPROPRIATE AMOUNTS.

6     (Christianson Decl. ¶ 44, Ex. S.)

7              Neither the US' Motion nor the documents submitted in support

8     thereof explain the above ineligible costs or indicate their segregation and removal

9     from those costs sought in this Motion.

10             This example is one of many that illustrate systemic issues with

11    respect to the US' cost recovery efforts at Superfund sites in general and the Site in

12    particular as documented and admitted by the OIG. (*See,* examples of OIG reports

13    finding numerous issues with EPA's Superfund cost recovery efforts involving the

14    same contractors the EPA employed at the Site during the same period in which the

15    US now seeks to recover costs, at Christianson Decl. ¶¶ 45-48, Exs. T-W.)

16             In light of the US' failure to explain the above ineligible costs or

17    indicate their removal from the costs sought in this Motion, and the inference that

18    must be drawn in the Companies' favor, the Motion must fail because there is

19    insufficient evidence to sustain the US's burden of proof and clearly a question of

20    material fact as to whether the US is entitled to the amount it seeks.

21    **C.    The United States cannot pursue a claim under CERCLA Section
22           107, 42 U.S.C. § 9607; it is limited to a claim under CERCLA
             Section 113(f), 42 U.S.C. § 9613(f).**
23

24             After a decades long coast-to-coast crusade to avoid its obligations, the

25    US is still seeking to foist its responsibilities on the Companies. The Companies

26    answered the US' call to service and "voluntarily agreed to 'work day and night,'

27    _____
      [7] The OIG Report is admissible nonhearsay evidence due to the Party Admission, Prior
      Inconsistent Statement, and Ancient Document exclusions. *See* Fed. R. Civ. P.
28    801(d)(1)(A), (d)(2); Fed. R. Civ. P. 803(16).

without regard to shareholder obligations, to increase the production of military aviation gas." *Shell Oil Co.*, 130 Fed. Cl. at 11 (RJN, Ex. 1). Ignoring this history and its own obligations, the US is still attempting to recover from the Companies its alleged response costs, for which it has provided inadequate evidentiary support, under inapplicable authority. (*See* Motion at 15.) In addition, the US wishes to benefit from having its response costs—which were allegedly incurred in relation to the Site after the close of discovery in the Lawsuit—reviewed under the favorable standard of CERCLA Section 107(4)(a)(A), which is reserved for non-liable "persons."[8] That cannot be so; a recalcitrant party—even if it happens to be the federal government—is not entitled to such deference for its costs. Or in CERCLA terms, an adjudicated polluter which has been found liable under CERCLA 107(a) and has entered into partial consent decrees with a state to pay for a state's response costs cannot escape the more rigorous standard under CERCLA Section 107(a)(4)(B). "[*A*]*ny person* who accepts or accepted any hazardous substances . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for— . . . any other necessary costs of response incurred by *any other person* consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B) (emphasis added); 42 U.S.C. § 9601(21).[9]

Congress enacted CERCLA "to force polluters to pay for costs associated with remedying their pollution." *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 257-58 (3d Cir. 1992) (citation omitted). CERCLA "was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of

---

[8] *See* Motion at 2 ("As discussed below, the cleanup of hazardous substances at the Site is governed by CERCLA, 42 U.S.C. §§ 9601-9675, as amended. If the United States conducts a response action, it is entitled to recover 'all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan.' 42 U.S.C. § 9607(a)(A)(4).")

[9] "The term 'person' means a[] . . . corporation, . . . United States Government, State, municipality, . . . or any interstate body." 42 U.S.C. § 9601(21).

such cleanup efforts were borne by those responsible for the contamination." *Burlington Northern and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 602 (2009) (internal quotation marks and citation omitted). This statutory mandate is equally applicable to the US, which has waived sovereign immunity. *Shell Oil Co.*, 294 F.3d at 1052 (*citing* 42 U.S.C. § 9620(a)(1)).[10]

CERCLA provides two distinct procedural mechanisms for a party who has incurred costs associated with the cleanup of hazardous substances to recover some or all of those costs from another PRP. One method is a cost-recovery action under 42 U.S.C. § 9607(a); the other is a contribution claim under 42 U.S.C. § 9613(f). In *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138-39 (2007), the U.S. Supreme Court explained the difference between the two "clearly distinct" remedies: Section 113(f) explicitly grants PRPs a right to contribution defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." (*Quoting* Black's Law Dictionary 353 (8th ed. 2004).). A PRP may seek contribution during or following a suit under Section 106 or Section 107(a), before or after the establishment of common liability. *Id.* at 138 (citing 42 U.S.C. § 9613(f)(1)). By contrast, Section 107(a) permits a PRP to recover the costs it has "incurred" in cleaning up a site without establishing liability to a third party, but does not create a right to contribution. *Id.* at 139; *see also Whittaker Corp. v. United States*, 825 F.3d 1002, 1007 (9th Cir. 2016) ("A party uses contribution to get reimbursed for being made to pay more than its fair share to someone else, and uses cost recovery to get reimbursed for its own voluntary cleanup costs.").

---

[10] *See, e.g.*, *United States v. Newmont USA Ltd.*, 504 F. Supp. 2d 1050, 1069 (E.D. Wash. 2007) (holding that the federal government was a CERCLA PRP, due to mining activities that occurred on tribal land "owned" by the United States); *El Paso Nat. Gas Co., LLC v. United States*, 390 F. Supp. 3d 1025, 1042 (D. Ariz. 2019) ("The United States is liable as a CERCLA operator for its role in rim stripping at these three Mine Sites.").

CERCLA does not provide for a choice of remedies. "The remedies available in CERCLA §§ 107(a) and 113(f) complement each other 'by providing causes of action to persons in different procedural circumstances.'" *Atlantic Research*, 551 U.S. at 139 (*quoting Consolidated Edison Co. of N.Y. v. UGI Utilities, Inc.*, 423 F.3d 90, 99 (2nd Cir. 2005)). A PRP that pays money to satisfy a settlement agreement or a court judgment may pursue Section 113(f) contribution by reimbursing response costs paid by other parties, but has not incurred its own response costs and cannot recover under Section 107(a). *Id.* "*As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).*" *Id.* (emphasis added). Similarly, a PRP cannot avoid CERCLA Section 113(f) by choosing to impose joint and several liability against a PRP under CERCLA Section 107(a). *Id.* at 140. "[A] party who may bring a contribution action for certain expenses must use the contribution action, even if a cost recovery action would otherwise be available." *Whittaker Corp.*, 825 F.3d at 1007 (*citing Kotrous v. Goss-Jewett Co. of N. Cal.*, 523 F.3d 924, 932 (9th Cir. 2008) ("A PRP cannot choose remedies, but must proceed under § 113(f)(1) for contribution if the party has paid to satisfy a settlement agreement or a court judgment pursuant to an action instituted under . . . § 107 [for cost recovery].")). A PRP who settles its CERCLA liability with the federal or state government enjoys immunity under 42 U.S.C. § 9613(f)(2) from contribution claims and may seek contribution from any non-settling party. *Alcoa, Inc. v. Alcan Rolled Products-Ravenswood LLC*, 439 F. Supp. 3d 325, 334 (D. Del. 2020), *reconsideration denied*, No. CV 06-451-JFB-SRF, 2020 WL 1180713 (D. Del. 2020) *reconsideration denied*, No. CV 06-451-JFB-SRF, 2020 WL 1180713 (D. Del. Mar. 11, 2020) (footnote omitted) (*citing Cranbury*, 943 F.3d at 705).

/ / /

/ / /

/ / /

In *Alcoa, Inc.*, the Court explained that CERCLA prohibits polluters from using CERCLA as a "sword and shield":

> A polluter who enjoys immunity from contribution claims under § 9613(f)(2) cannot bring a cost recovery claim, but may only bring a contribution claim. *Cranbury*, 943 F.3d at 705; *see Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 229 (3d Cir. 2010)). "[T]he *Agere Systems* rule helps apportion cleanup costs equitably by keeping polluters from using their immunity as both sword and a shield." *Id.* Without that rule, settling polluters could wield the immunity § 9613(f)(2) offensively to escape liability by imposing on[e]-hundred percent of its liability on a nonsettling polluter through joint and several liability under § 9607(a). *See Cranbury*, 943 F.3d at 706.

*Alcoa, Inc.*, 439 F. Supp. 3d at 334.

In *Cranbury*, the Third Circuit also explained the prohibition:

> So if a polluter like LexCorp who is immune from contribution claims could bring a cost-recovery action, it could use that immunity to eschew equitable apportionment, impose the harshness of joint and several liability against other polluters, and shift its own liability in the process. To avoid this perverse result, we held in *Agere Systems* that a polluter who has contribution-claim immunity under § 9613(f)(2) cannot bring a cost-recovery claim. Instead, it can bring only a contribution claim.

*Cranbury*, 943 F.3d at 706 (internal quotations and citations omitted)

/ / /

/ / /

/ / /

/ / /

In this case, the US should not be allowed to proceed with a Section 107(a)(4)(A) claim and to take advantage of the favorable standards and presumptions in that provision despite its status as the federal government for the following reasons:

1. the Companies prevailed against the US under CERCLA Section 107(a) for 100 percent of the benzol waste (and cleanup costs) at the Site, *Shell Oil Co.*, 294 F.3d at 1048-49;

2. the Companies prevailed against the US under a breach of contract theory for reimbursement for CERCLA costs of the non-benzol acid waste clean-up, *Shell Oil Co.*, 2020 WL 3618890, at *1;

3. the US has entered into partial consent decrees (i.e., settlements) with the State for the State's responses costs related to the Site; and

4. the parties have stipulated to an allocation of cleanup costs at the Site under CERCLA Section 113(f) (Docket No. 507 at 2 n.1).

In sum, either the US never had a viable cost recovery claim under CERCLA Section 107(a), but rather only a contribution claim under CERCLA Section 113(f), *or* if the US had a cost recovery claim, it lost it as a result of being adjudicated liable under CERCLA, losing on the Companies' contract claims, and settling with the State. Therefore, the US is limited to a CERCLA Section 113(f) contribution claim against the Companies. Put another way, because it is itself a liable party, the US is limited to an action for contribution (i.e., reimbursement for paying more than its fair share) under CERCLA Section 113(f).

The US—an adjudicated and settling polluter—cannot now wield CERCLA—namely, the Section 113(f) immunity "offensively to escape liability by imposing on[e]-hundred percent of its liability on a nonsettling polluter through joint and several liability under § 9607(a)." *Alcoa, Inc.*, 439 F. Supp. 3d at 334 (citing *Cranbury*, 943 F.3d at 706). The US has not fully acknowledged and resolved its liability at the Site despite the fact that "CERCLA encourages polluters

to settle . . . to get cleanups started sooner" and that "[c]ontribution-claim immunity under § 9613(f)(2) promotes those efficient settlements." *Cranbury*, 943 F.3d at 706. In fact, the US has vehemently opposed imposition of liability every step of the way, but time and time again (whether in this Court or in the Court of Federal Claims), the US has lost and been forced to pay. Its recalcitrant conduct is contrary to CERCLA's purpose, and it should not be rewarded with the favorable standard in CERCLA Section 107(a)—which is reserved for cases where the government bears no liability, or at a minimum is not a recalcitrant PRP.

A Ninth Circuit case also supports the conclusion that the government, which itself is a PRP, cannot wear two hats and seek to impose joint and several liability on non-governmental PRPs.[11] In *Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928, 946-47 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Oct. 8, 2002), the Ninth Circuit considered whether a local ordinance enacted by a city ("Lodi") (known by its acronym "MERLO"), which permitted Lodi to investigate and remediate the hazardous waste contamination of its soil and groundwater, was preempted by CERCLA. The plaintiff argued, in part, that MERLO conflicts with CERCLA because under MERLO, "Lodi may impose joint and several liability for the entire clean-up cost onto any one PRP, whereas

---

[11] Additional support for this position can be found in an oft-cited article by a team of preeminent CERCLA PRP attorneys who wrote:

> It is not at all obvious why the government should be allowed to impose joint and several liability at every CERCLA site, no matter the factual context, especially in cases where it is the most significant remaining party, or the most significant of those parties that still remain viable. . . . [T]his principle has little force as applied to a site where the government itself has caused some or all of the contamination. In such a case, the public, no less than a private party, has profited from environmental contamination and should be forced to internalize those costs.

Kevin A. Gaynor, Benjamin S. Lippard, Sean M. Lonnquist, *Unresolved CERCLA Issues After Atlantic Research and Burlington Northern*, 40 Envtl. L. Rep. News & Analysis 11198, 11203-04 (2010) (footnote omitted).

*See also Shell Oil Co.*, 294 F.3d at 1053 ("We recognize that by making the United States liable 'in the same manner and to the same extent' as a private party, § 9620 does subject the government to significant risk of liability.").

CERCLA does not permit a PRP such as Lodi to impose joint and several liability on other PRPs." *Id.* at 946-47 (internal quotation marks omitted). The circuit court concluded that this provision of MERLO conflicts with CERCLA:

> Our circuit has held that a PRP may not bring a CERCLA § 107 cost recovery action, and instead may bring only a claim for contribution under CERCLA § 113(f). This means that a PRP does not have a claim for the recovery of the totality of its cleanup costs against other PRPs, and a PRP cannot assert a claim against other PRPs for joint and several liability. In support of our decision in *Pinal Creek* [*Group v. Newmont Mining Corp.*, 118 F.3d 1298 (9th Cir. 1997)], we noted that allowing a party responsible for part of the contamination to impose joint and several liability on other PRPs would result in unfair cost shifting and guarantee[ ] inefficiency, potential duplication, and prolongation of the litigation process in a CERCLA case. *We have not recognized any exception to* Pinal Creek *for municipal PRPs and we decline to do so now.*
>
> Thus, if the district court determines that Lodi is a PRP, Lodi may not escape its share of responsibility by imposing all the costs of cleanup on others. Allowing it to do so would interfere with CERCLA's PRP cost allocation scheme, and would implicate the same policy concerns relied upon by this court in *Pinal Creek* in rejecting a § 107 cost recovery action for PRPs. For these reasons, we find that MERLO is preempted to the extent that it legislatively insulates Lodi from bearing its share of responsibility by imposing joint and several liability on other PRPs.

*Fireman's Fund*, 302 F.3d at 947 (internal quotation marks and citations omitted and emphasis added); *see also U.S. v. Nat'l R.R. Passenger Corp.*, No. CIV.A. 86-1094, 2004 WL 1335723, at *4 (E.D. Pa. June 15, 2004) ("since ["the Southeastern

Pennsylvania Transportation Authority"] is a PRP relating to its retrofilling claims, it cannot pursue a Section 107 CERCLA claim against [American Premier Underwriters, Inc.]"); *In re Kaiser Grp. Int'l, Inc.*, 289 B.R. 597, 605 (Bankr. D. Del. 2003) ("We consequently conclude that a governmental entity, if it is a PRP, may not proceed under section 107(a) but is limited to seeking contribution under section 113.").

Significantly, in the opinion that the Ninth Circuit originally issued in *Fireman's Fund* (which was later withdrawn), the Ninth Circuit declined to address this preemption issue, stating that "[w]e have not yet considered, however, whether a government PRP such as a municipality that similarly incurs response costs may bring a cost-recovery action under CERCLA § 107."[12] The Ninth Circuit's initial reliance on *Hunter* suggests that the Ninth Circuit views the answer to the preemption issue in this case as equally applicable to the federal government (U.S. Environmental Protection Agency ("EPA") was the CERCLA plaintiff in *Hunter*, 70 F. Supp. 2d at 1101).

Accordingly, because the US—an adjudicated and settling PRP and polluter—was sued in *Shell Oil Co.*, found liable under Section 107(a) and under breach of contract theory at the Site, and entered into partial consent decrees with the state of California, the US is limited to a CERCLA Section 113(f) contribution claim against the Companies. *See Fireman's Fund*, 302 F.3d at 947. The US cannot now wield CERCLA Section 113(f) immunity "offensively to escape liability by imposing on[e]-hundred percent of its liability on a nonsettling polluter through

---

[12] *Fireman's Fund Ins. Co. v. City of Lodi, California*, 271 F.3d 911, 948-49 (9th Cir. 2001), *as amended* (Jan. 8, 2002), *opinion withdrawn sub nom. Fireman's Fund Ins. Co. v. City of Lodi, CA*, 287 F.3d 810 (9th Cir. 2002), *and superseded sub nom. Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Oct. 8, 2002) (*Comparing United States v. Hunter*, 70 F.Supp.2d 1100, 1108 (C.D. Cal 1999) (holding that the government PRP may bring a cost-recovery action under CERCLA § 107, thereby imposing joint and several liability on the defendant PRP), *with City of Fresno v. NL Indus., Inc.*, No. CV-F 93-5091 REC/DLB, 1995 WL 641983, at *2-5 (E.D. Cal. July 9, 1995) (holding that because the City of Fresno was a PRP, it was "limited to an action for contribution under CERCLA").

joint and several liability under § 9607(a)." *Alcoa, Inc.*, 439 F. Supp. 3d at 334 (*citing Cranbury*, 943 F.3d at 706).

To be clear, some district courts have concluded that the federal government is entitled to impose joint and several liability, even at sites where it is also a PRP,[13] *but* those cases were decided before the Supreme Court's ground-breaking decision in *Atlantic Research*. Since *Atlantic Research*, circuit courts, have clarified this issue. For example, in 2019, the Third Circuit, without differentiating between government and non-governmental entities, wrote:

> A polluter who settles its CERCLA liability with . . . a state government enjoys immunity under § 9613(f)(2) from contribution claims. In *Agere Systems*, we held that if a polluter is immune from contribution claims, it cannot bring cost-recovery claims. *Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 229 (3d Cir. 2010). Instead, it can bring only contribution claims. *Id.*

Six other circuits have addressed this issue. All agree. *Cranbury*, 943 F.3d at 705 (citations omitted). Significantly, the Third Circuit discussed the issue in terms of "polluter" making no distinction between "governmental or nongovernmental" and all of the cited decisions were decided after *Atlantic Research*.

Accordingly, this Court should hold that the US cannot maintain a cost recovery claim under CERCLA Section 107(a) and that if the US wishes to recover response costs associated with the Site, it must do so through a contribution claim under CERCLA Section 113(f). And to the extent the US responds that it is bringing a contribution claim, then the Court should not allow the US to game the playing field with the lower evidentiary standard normally reserved for non-

---

[13] *See, e.g.*, *United States v. Simon Wrecking, Inc.*, 481 F. Supp. 2d 363, 367 (E.D. Pa. 2007); *New York v. Moulds Holding Corp.*, 196 F. Supp. 2d 210, 214 (N.D.N.Y. 2002); *Hunter*, 70 F. Supp. 2d at 1101.

1  polluting governmental entities. It must, just like other adjudicated and settling

2  PRPs, deal with the more rigorous standard, otherwise a recalcitrant adjudicated

3  PRP has an inequitable advantage.

4      **D.**    **Because the United States is not entitled to the favorable standard**
**and rebuttable presumption in CERCLA Section 107(4)(a), the**

5                  **Unites States must show that its alleged response costs are**
**"consistent with the national contingency plan."**

6

7          The US is not entitled to the "rebuttable presumption" of consistency

8  with the NCP under Section 107, and there is a genuine question of fact as to

9  whether the US' claimed response costs are consistent with the NCP. The level of

10  consistency with the NCP that the US must establish in order for it to recover its

11  response costs varies depending on whether the US was acting solely as a regulator

12  or PRP in incurring response costs. In this case, as declared by this Court and the

13  Court of Federal Claims, the US was acting as a liable party in incurring the

14  response costs. As a result, the US is not entitled to the rebuttable presumption of

15  consistency with the NCP in Section 107 with regard to its response costs.

16          CERCLA Section 107(a) lists four classes of potentially responsible

17  "persons" (PRPs) and provides that they "shall be liable for--(A) all costs of

18  removal or remedial action incurred by the United States Government or a State or

19  an Indian tribe not inconsistent with the national contingency plan." 42 U.S.C.

20  § 9607(a)(4)(A). The term "person" under the statute includes the United States

21  Government. 42 U.S.C. § 9601(21). CERCLA Section 107(a) further provides that

22  PRPs shall be liable for "any other necessary costs of response incurred by *any*

23  *other person* consistent with the national contingency plan." *See* 42 U.S.C.

24  § 9607(a)(4)(B) (emphasis added). The purpose of the phrase "any other person" in

25  Section 107(a)(4)(B) is to differentiate the nature, scope, and conditions of cost

26  recovery by governmental entities under Section 107(a)(4)(A), from the nature,

27  scope, and conditions of recovery by entities under Section 107(a)(4)(B). Not only

28  do governmental entities operating under Section 107(a)(4)(A) recover all of their

response costs, as opposed to necessary costs of response recoverable by entities proceeding under Section 107(a)(4)(B), but it is undisputed that the purpose of the phrase "not inconsistent with the national contingency plan" is to make clear that when governmental entities seek to recover response costs under Section 107(a)(4)(A) (i.e., in their role as a regulator as opposed to PRP), it is presumed the costs incurred are consistent with the NCP, thereby imposing on PRPs the burden of proving otherwise (i.e., that the response action was arbitrary and capricious). *See* 42 U.S.C. §§ 9607(a)(4)(B), 9613(j)(2).

In this case, the US incurred substantial response costs after having been adjudicated a PRP and is limited to seeking recovery under Section 107(a)(4)(B), not as a non-liable governmental entity under Section 107(a)(4)(A). The evidence presented by the US does not even attempt to parse out which costs were incurred when the US was acting as a PRP, contesting its liability, such as defense costs, document review costs, or otherwise. Instead, the US lumps all costs together in an attempt to circumvent the appropriate evidentiary standard. If the US claims to be able to wear two hats, then it must, at a minimum, meet the two evidentiary standards depending on which hat it was wearing when the costs were incurred. Accordingly, the US is not entitled to the rebuttable presumption of consistency with the NCP contained in Section 107, which is applicable only when the US has no liability of its own and is operating solely in its traditional regulator role.[14]

**E.    Even if the United States can proceed with a claim under CERCLA Section 107, 42 U.S.C. § 9607, the US has failed to establish that its alleged response costs are recoverable and there is a genuine question of fact as to the United States' ability to recover its asserted response costs.**

---

[14] Alternatively, if the Court concludes that the US is allowed to pursue a cost recovery claim under Section 107, in light of the recent United States Supreme Court and Circuit Court decisions and Ninth Circuit precedent, the Court should also conclude that the US must pursue its Section 107 cost recovery claim in conjunction with a Section 113(f) contribution claim and establish the recoverability of its costs accordingly.

The issue of whether a plaintiff has complied with the NCP, so as to support a finding that plaintiff is entitled to recover its response costs under CERCLA, is a question of fact. *See Aviall Services, Inc. v. Cooper Indus. LLC*, 572 F.Supp.2d 676, 688 (N.D. Tex. 2008) ("[C]onsistency with the NCP is a peculiarly fact intensive question that can normally only be determined at trial, or at least after a full pretrial record has been prepared.") (internal citations and quotation marks omitted.) This issue, like any other fact question, can only be resolved on summary judgment where the evidence *is undisputed*. 42 U.S.C. § 9607(a). Here, the Companies have objected to and contest the proffered evidence supporting costs that the US incurred after the discovery cut-off date. The US has refused to produce verified supporting information and such information does not exist in the administrative record. As a result, the US has not met its burden of proof for summary judgment by providing the required documentation and the Companies are prejudiced in that they are precluded from completing discovery to challenge such costs and establish triable issues of fact.

Despite the US' claim that there are no genuine issues of material fact with respect to these costs, there are several potentially triable issues with the US' alleged costs.

First, there is a genuine issue of material fact with regards to the US' alleged direct costs. Approximately one quarter of the US' total alleged costs constitute actual agency staff time and contract payments for work at the Site. In his 2006 Declaration, Mark Johns of Exponent identified certain issues with the US' prior work at the Site. (Declaration of Mark W. Johns, ¶¶ 5.2-5.10.) For example, Mr. Johns noted that the EPA failed to provide either the Companies or the public prompt and adequate information, which required the Companies to pursue more than two years of Freedom of information Act ("FOIA"), 5 U.S.C. § 552, as amended, efforts to access information; and the EPA failed to timely implement a

remedy. (*Id*.) The record shows disputes regarding the US' direct costs remain unresolved, thus, summary judgment is premature.

Second, there are material disputed issues with the US' alleged indirect costs. The US claims $6,899,217.86 in indirect costs, for which it seeks $6,468,016.75 after deducting 6.25 percent for its own liability. The US calculated its indirect costs by applying an annual multiplier that ranged from 27.46 percent to 64.80 percent. This unsupported multiplier was applied not only to agency staff time but also to contractor payments, which already included the contractors' own overhead charges. Some of the indirect costs therefore constitute overhead on overhead. The US cites no statutory authority supporting these types of charges.

Third, there is a disputed issue with the US' alleged "annual allocations" that it also claims on payments to contractors. For those charges, the US has also applied its indirect cost multiplier for each year the annual allocations were incurred plus interest. These charges, which were calculated for each contractor, ranged from 16 to 145 percent of the billings by contractors,' without an adequate explanation or justification of the disparity.

While the US has asserted that annual allocations are just another form of overhead, it has not explained how this purported "overhead" differs from the regular overhead charges that already appear in contractors' bills or why these multipliers are so excessive as noted in the 2006 Declaration of Richard Pimentel, especially when those charges are further subject to an indirect cost multiplier. (Declaration of Richard A. Pimentel, ¶¶ 11, 15-25.) In fact, the US has not met its *prima facie* burden of showing that these costs constitute response costs incurred as a result of a release or threatened release at the Site. To support these charges, the US relies on an Eighth Circuit decision, which concluded that certain cost documentation was sufficient. *See United States v. Findett Corp.*, 220 F.3d 842, 848-49 (8th Cir. 2000). However, there, the defendant's challenge of those costs was limited to arguments regarding the sufficiency of the documentation and there

is no indication that the defendant challenged the basis or recoverability of the underlying costs themselves. *Id.*

Finally, the US has miscalculated its alleged interest. The US claims $26,850,574.05 in interest, which it has calculated from the date on which each cost was incurred rather than from the date on which the US first demanded each specified amount. Applying the 6.25 percent deduction to the purported direct and indirect costs, the US seeks interest totaling $25,172,413.18. This approach conflicts with the plain language of CERCLA and overstates the amount of interest.

Under CERCLA, interest does not begin to accrue until "**the later of** (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned." 42 U.S.C. § 9607(a) (emphasis added.) The US has argued that its approach is justified asserting that its 1991 complaint constituted a written demand for costs, thereby satisfying the demand requirement for all subsequent costs. While a few courts have held that a complaint can constitute a written demand under CERCLA's interest provision, "the majority of cases demonstrate that while an exact amount need not be demanded, some specified amount must be identified," especially because the plaintiffs in those cases "needed only to send a letter demanding payment of the amount of the expenditures." *See, e.g.*, *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co.*, No. 1:10-CV-044 JD, 2018 WL 2328447, at *7 (N.D. Ind. May 22, 2018) (finding that "statute clearly and unambiguously requires a written demand for a 'specified amount'" and denying interest on costs prior to "when plaintiffs demanded payment of a specified amount in writing"). In its 2006 reply brief on its prior motion for summary judgment, the US admitted that the 1991 complaint "did not specify an exact amount." (*See* Docket No. 584.) In fact, the complaint did not identify any dollar figure at all for post-1991 costs, merely referencing the sum of "at least $15,000,000" for *past* costs of the US and State combined. The Companies already reimbursed the US for all costs incurred as of the 1991 complaint, so that amount is no longer at issue. The Ninth Circuit has

not yet addressed interest accrual under CERCLA. However, under the plain language of the statute, interest on later costs did not begin to accrue until those "specified amounts" were first demanded in the US' subsequent cost computations.

Furthermore, as an equitable matter, the Court should not allow the US to charge the Companies interest incurred during the 12-year stay while the US contested its own liability (and was ultimately unsuccessful) in the Court of Federal Claims and Federal Circuit Court of Appeals.

As discussed above, the evidence supporting costs that the US incurred after the discovery cutoff date is very much at issue. The US' refusal to participate in discovery and produce verified supporting information (which does not exist in the administrative record) has prejudiced the Companies' ability to access and review the documentation that the US is relying on to support such costs. The propriety and the evidentiary support for US' claimed right to recover its asserted response costs are genuine issues of material fact that precludes summary judgment.

## V.   CONCLUSION

For the reasons stated above, the Companies respectfully request that this Court deny the US' Motion for Partial Summary Judgment As to the Amount of Recoverable Responses Costs. The Companies further request that the Court permit oral argument on the Motion.

Dated:  August 10, 2020          **ALSTON & BIRD LLP**


                                  By:  /s/Greg A. Christianson
                                       Greg Christianson

                                  Attorney for Defendants
                                  SHELL OIL COMP ANY, TEXACO INC.,
                                  ATLANTIC RICHFIELD COMPANY, AND
                                  UNION OIL COMPANY OF CALIFORNIA