GREG CHRISTIANSON (SBN 181231)
**ALSTON & BIRD LLP**
560 Mission St.
Suite 2100
San Francisco, CA 94105
Telephone:     415-243-1000
Facsimile:     415-243-1001
E-mail:        greg.christianson@alston.com

Attorney for Defendants
SHELL OIL COMP ANY, TEXACO INC., ATLANTIC
RICHFIELD COMPANY, AND UNION OIL
COMPANY OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SHELL OIL COMPANY, et al.,<br><br>Defendants. | Case No. CV 91-0589 (CJC)<br><br>**DEFENDANTS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       October 5, 2020<br>Time:       1:30 p.m.<br>Judge:      Hon. Cormac J. Carney<br>Ctrm.:      9B, Ronald Reagan Federal Building |

Defendants, Shell Oil Company, Texaco, Inc., Atlantic Richfield Company, and Union Oil Company (collectively, the "Companies") respectfully submit the following Statement of Genuine Disputes under Federal Rule of Civil Procedure 56(c) and Central District of California Local Rule 56-2 in opposition to Motion of Plaintiffs United States of America for Partial Summary Judgment As to the Amount of Recoverable Response Costs filed by Plaintiff United States of America (the "Motion"). Facts 1 through 105 and Conclusions of Law 1 through 42 below correspond to the facts and supporting evidence presented in the Statement of Uncontroverted Facts and Conclusions of Law filed by the moving party. These facts are followed by additional material facts, supporting evidence and the Companies response to showing a genuine issue.

## PLAINTIFFS' ALLEGED UNCONTROVERTED FACTS

| | Alleged Uncontroverted Facts | Companies' Response |
|---|---|---|
| 1 | This Court entered a judgment on September 29, 1993, against the Defendants holding them liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") Section 107(a), 42 U.S.C. § 9607(a). 841 F. Supp. 962 (C.D. Cal. 1993). | The cited judgment speaks for itself. However, this statement is misleading because the United States has also been adjudicated a responsible party at the McColl Superfund Site in Fullerton, California (the "Site"). The United States purposely omits the fact that it refused to settle its liabilities or to even recognize its obligations as a potentially responsible party ("PRP") and had to be forced to accept its CERCLA responsibility at the Site. The United States fully waived its sovereign immunity in regards to CERCLA and is fully responsible for its own polluting |

| | | |
|---|---|---|
| | | activities.  Furthermore, the United States has been found to owe full indemnity obligations to the Companies' for their response costs at the Site in the United States Court of Federal Claims.  *See* Declaration of Greg A. Christianson ("Christianson Decl.") ¶¶ 21, 30, Exs. K, P.  The Court of Federal Claims also attributed the increase in interest resulting from the delayed payment to the United States' refusal to accept responsibility for its actions.  *See Shell Oil Co. v. United States*, 130 Fed.Cl. 8, 11 (2017), *aff'd*, 896 F3d 1299 (Fed. Cir. 2018). (The Companies "are entitled to $99,590,847.32, including $30,991,111.02 in interest which the U.S. taxpayers could have avoided paying, if the Government had lived up to its obligations, instead of wasting years in litigation."); Christianson Decl. ¶21, Ex. K. |
| 2 | On December 9, 1994, the Court approved and entered a Partial Consent Decree between the Plaintiffs and Defendants under which the | The cited Partial Consent Decree speaks for itself.  The Companies agreed to pay the United States $13,248,000 and the State of California |

| | | |
|---|---|---|
| | Defendants agreed to pay the Plaintiffs $18 million in past response costs. Docket No. 270. | $4,752,000 under the 1994 Consent Decree.  Docket No. 270 ¶¶ 4(a),(b). However, the Companies also reserved their rights to challenge any "Ongoing Response Costs," such as those the United States seeks through this motion.  *Id.* ¶ 10.  Moreover, this proposition is misleading because the United States has also been adjudicated a responsible party at the Site. Christianson Decl. ¶3, Exs. A, B. |
| 3 | Pursuant to the December 9, 1994, Consent Decree, the $18 million paid by the Oil Company Defendants represented a compromised amount for activities and costs incurred through June 30, 1990, September 30, 1990, and June 30, 1991, and interest through July 31, 1993, depending on the category of costs. *Id.* ¶¶ 3-4. | The cited Partial Consent Decree speaks for itself. |
| 4 | Under the December 1994 Consent Decree, the parties agreed that the September 29, 1993 judgment constituted a declaratory judgment under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) in favor of the United States (and State) against the | Disputed to the extent that the term "on-going response costs" as used by the United States is not consistent with the definition provided in Section IV(3)(f) of the 1994 Consent Decree. *See* Declaration of James J. Dragna filed concurrently herewith ("Dragna |

| | | |
|---|---|---|
| | Defendants for on-going response costs, i.e., those costs generally post-dating the costs recovered under the 1994 Consent Decree. *Id.* ¶ 10. | Decl."), Ex. A.  In addition, this alleged fact is misleading in that it omits the fact that the Companies also reserved their rights to challenge any "Ongoing Response Costs," such as those the United States seeks through this motion.  Docket No. 270 ¶ 10. Moreover, this proposition is misleading because the United States has also been adjudicated a responsible party at the Site.  Christianson Decl. ¶ 3, Exs. A, B. |
| 5 | The United States has made available all supporting documents relevant to the costs incurred in relation to the McColl Superfund Site. | Disputed.  The United States has not provided verified copies of the underlying documents for the costs allegedly incurred in relation to the Site.  Christianson Decl., at ¶¶ 4, 8-18, 24-38; *see also* the Companies' Evidentiary Objections in support of its Motion for Partial Summary Judgment, filed concurrently herewith ("Companies' Evidentiary Objections").  Since February 2006, the United States has thwarted the Companies' efforts to take discovery by failing to appear or make witnesses available for nine out of ten duly- |

- 4 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

noticed depositions, and failing to provide meaningful responses to the Companies' interrogatories or requests for production of documents. Christianson Decl., at ¶¶ 4, 8-18, 24-- 38.  During a meet and confer between the parties on January 18, 2006, the Companies confirmed that they would need to conduct discovery on the United States' cost claims if the Companies did not prevail on their claims against the United States. *See* Declaration of Cynthia L. Burch, filed concurrently herewith ("Burch Decl."), at ¶¶ 11.  Again, on February 27, 2006, the Companies informed the United States of their need for additional discovery.  In response, the Companies were instructed that they were not entitled to conduct any discovery. *See* Dragna Decl., at ¶¶ 7-9.  The Companies propounded additional discovery and deposition notices to the Plaintiffs, dated May 7, 2020. Christianson Decl., at ¶ 25, Ex. L.  The United States objected that the additional discovery was not authorized

by the Court's prior 1992 scheduling order and the Companies withdrew their discovery requests under a meet and confer telephone call conducted between the parties on June 18, 2020. Christianson Decl., at ¶¶ 27-29.  On July 7, 2020, the Companies sent the Plaintiffs a meet and confer letter regarding their intent to file a motion to modify the scheduling order to allow for additional limited discovery regarding the Plaintiffs' supplemental cost claims.  Christianson Decl., at ¶ 31, Ex. Q.  The parties meet and conferred on this issue on July 20, 2020. Christianson Decl., ¶¶ 32-33.  The Companies requested that the United States stipulate to a two-week extension of time to allow the parties to address the scheduling issue to the Court, but the United States refused. As a result of the Plaintiffs' refusals, the Companies have not had the opportunity to conduct discovery and rely upon verified discovery responses on this issue, and on this basis, dispute the fact and requests a continuance to conduct

| | | additional discovery. |
|---|---|---|
| 6 | The October 12, 1999, Final Judgment Pursuant to Federal Rule of Civil Procedure 54(b) states that the United States retains all of its rights to pursue its claims for response costs to judgment in this Court. Docket No. 489 at 4. | The cited Final Judgment speaks for itself.  However, this alleged fact is misleading in that it omits the fact that the Final Judgment states that the Companies retain all of their rights to seek allocation of such response costs. Docket No. 489 at 4. |
| 7 | The total costs incurred by the United States for response activities in connection with the McColl Site are at least $52,183,070.79 including prejudgment interest calculated through September 30, 2019, for EPA's costs from July 1, 1990, through July 31, 2018, and DOJ's costs from October 1, 1990, through September 30, 2019. (Wright Decl. ¶ VI.) | Disputed. The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to evaluate the veracity of these facts.  *See* Christianson Decl. ¶¶ 4, 8-18, 28, 40; Pimentel Decl. 14-43.  Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 8 | As of July 31, 2018, the United States has incurred a total of at least $8,554,829.81 for intramural | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this |

| | | |
|---|---|---|
| | expenditures in relation to the McColl Site, not including Department of Justice (DOJ) costs. (Wright Decl. ¶ IV.E.) | Court or the Companies to assess the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl.¶¶ 14-43. |
| 9 | As of July 31, 2018, the United States has incurred a total of at least $8,423,381.57 for contractor costs and $4,339,565.45 in federal interagency agreements for response activities in connection with the McColl Site, including DOJ costs from October 1, 1990, through September 30, 2019. (Wright Decl. ¶¶ IV.F, IV.G.) | Disputed. The United States has failed to submit competent evidence to support this allegation, or to permit the Court or the Companies to assess the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 10 | As of July 31, 2018, the United States | Disputed. The United States has failed |

| | | |
|---|---|---|
| | has incurred a total of at least $4,709,719.91 in State of California contract expenditures for response activities in connection with the McColl Site. (Wright Decl. ¶ IV.H.) | to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response actions," as that term is defined by 42 U.S.C. § 9607. |
| 11 | As of July 31, 2018, the United States has collected a total of $695,000 from the Defendants. (Wright Decl. ¶ IV.I.) | Disputed. Under the 1994 Partial Consent Decree between the Parties, the United States collected $13,248,000 from the Companies. Docket No. 270 ¶ 4.a. |
| 12 | As of September 30, 2019, the prejudgment interest on unrecovered costs incurred by the United States for response activities in connection with the McColl Site is $26,934,007.81, which began to accrue on September 17, 1990. (Wright Decl. ¶ IV.J.) | Disputed. The United States has failed to comply with 42 U.S.C. § 9607(a) in calculating its alleged prejudgment interest, which requires the United States to calculate the prejudgment interest from the *later* of the date payment of a specified amount is |

| | | | demanded in writing or the date the cost was incurred. Here, the purported method by which the United States calculated the prejudgment costs was inconsistent with Section 9607. *See* Fong. Decl. ¶¶ 62, 63; Pimentel Decl. ¶¶ 36-37. Moreover, the United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim. *See* the Companies Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to assess the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 13 | Environmental Protection Agency ("EPA") Headquarters' employees performed response activities in connection with the McColl Site. | Undisputed, except as to the extent to which those response activities were "necessary" and "consistent with the NCP" to which the United States has |

| | | |
|---|---|---|
| | (Fong Decl. ¶ 25; Mak Decl. ¶ 26.) | failed to submit sufficient competent evidence to support. |
| 14 | As of July 31, 2018, the United States has incurred costs for response activities performed in connection with the McColl Site in the form of payroll expenses of EPA Headquarters' employees in the amount of a least $13,659.42. (Wright Decl. ¶ IV.E.) | Disputed.  The United States has failed to submit competent evidence to support this allegation or to permit this Court or the Companies assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 15 | EPA Region 9 employees have performed response activities in connection with the McColl Site. (Fong Decl. ¶ 24; Mak Decl. ¶ 25.) | Disputed.  The evidence submitted by the United States does not support this assertion.  *See* Fong Decl. ¶¶ 24; Mak Decl. ¶ 25.  Nothing in the evidence submitted by the United States shows that activities taken were "response actions" as that term is defined by 42 U.S.C. § 9607. |

STATEMENT OF GENUINE DISPUTES

| 16 | As of July 31, 2018, the United States had incurred costs for the response activities in connection with the McColl Site in the form of payroll expenses of EPA Region 9's employees in the amount of at least $1,372,429.33. (Wright Decl. ¶ IV.E.) | Disputed.  The  United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to assess the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 17 | As of July 31, 2018, the United States has incurred costs of at least $5,167.25 for travel expenses of EPA Headquarters employees in connection with response activities related to the McColl Site. (Wright Decl. ¶ IV.E.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to assess the veracity of this |

STATEMENT OF GENUINE DISPUTES

|    |    |    |
|----|----|----|
|    |    | fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 18 | EPA Region 9 personnel have traveled in connection with response activities related to the McColl site. (Fong Decl. ¶ 27; Mak Decl. ¶ 27.) | Disputed.  The evidence submitted by the United States does not support this assertion.  *See* Fong Decl. ¶ 27; Mak Decl. ¶ 27.  Nothing in the evidence submitted by United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 19 | As of July 31, 2018, the United States has incurred costs of at least $264,355.95 in paying for travel expenses of Region 9 employees traveling in connection with response activities related to the McColl Site. (Wright Decl. ¶ IV.E.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted |

STATEMENT OF GENUINE DISPUTES

| | | by the United States shows that activities taken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
|---|---|---|
| 20 | DTSC personnel have traveled in connection with response activities related to the McColl Site. (Fong Decl. ¶ 56.) | Disputed.  The evidence submitted by the United States does not support this assertion.  *See* Fong Decl. ¶ 56.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 21 | In the ordinary course of business, EPA Region IX processes State Cooperative Agreement ("SCA") Costs, under which the United States makes payments to State agencies such as the California Department of Toxic Substances Control ("DTSC"). The Region maintains custody of vouchers and the U.S. Treasury confirmation | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | schedules, inputs accounting information into the EPA accounting system, and scans vouchers and Treasury confirmation schedules into the SCORPIOS system. (Fong Decl. ¶ 56.) | essential to assessing the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |
| 22 | As of July 31, 2018, the United States has incurred costs of at least $4,709,719.91 in SCA costs in connection with the McColl Site. (Wright Decl. ¶ IV.H.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to assessing the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |
| 23 | As of July 31, 2018, the United States has incurred costs of at least $6,899,217.86 in indirect costs in connection with response activities related to the McColl Site. (Wright Decl. ¶ IV.E.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need |

| | | | |
|---|---|---|---|
| | | | additional discovery to obtain facts essential to assessing the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 24 | The U.S. Department of Health & Human Services, Agency for Toxic Substances Disease Registry ("ATSDR") performed response activities in connection with the McColl Site. | | Disputed. The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 25 | As of July 31, 2018, the United States | | Disputed. The United States has failed |

- 16 -

| | | |
|---|---|---|
| | has incurred costs of at least $62,090.67 in payment to ATSDR for the response activities it performed in connection with the McColl Site. (Wright Decl. ¶ IV.G.) | to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to assess the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 26 | CH2M Hill performed response activities in connection with the McColl Site pursuant to Contract No. 68-W9-0031 and Contract No. 68-W9-8225. | Disputed. The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, |

| | | | |
|---|---|---|---|
| | | | 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 27 | As of July 31, 2018, United States has incurred costs of at least $192,288.17 in payment to CH2M Hill for the response activities it performed in connection with the McColl Site pursuant to Contract No. 68-W9-0031, and at least $845.35 pursuant to Contract No. 68-W9-8225. (Wright Decl. Schedule 1 at 1-2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 28 | ICF Technology, Inc. performed response activities in connection with the McColl Site pursuant to Contract No. 68-W9-0059. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' |

| | | |
|---|---|---|
| | | Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 29 | As of July 31, 2018, United States has incurred costs of at least $4,782,149.74 in payment to ICF Technology for the response activities it performed in connection with the McColl Site, pursuant to Contract No. 68-W9-0059. (Wright Decl. Schedule 1 at 1.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities undertaken were "response |

| | | | |
|---|---|---|---|
| | | | actions" as that term is defined by 42 U.S.C. § 9607. |
| 30 | Bechtel Environmental performed response activities in connection with the McColl Site pursuant to Contract No. 68-W9-0060. | | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 31 | As of July 31, 2018, United States has incurred costs of at least $635,687.90 in payment to Bechtel Environmental for the response activities it performed in connection with the McColl Site, pursuant to Contract No. 68-W9-0060. (Wright Decl. Schedule 1 at 1.) | | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need |

| | | |
|---|---|---|
| | | additional discovery to obtain facts essential to evaluating the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities undertaken were "response actions" as that term is defined by 42 U.S.C. § 9607. |
| 32 | CET Environmental Services performed response activities in connection with the McColl Site pursuant to Contract No. 68-W1-0012. | Disputed. The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |
| 33 | As of July 31, 2018, United States has incurred costs of at least $14,121.33 in payment to CET Environmental Services for the response activities it performed in connection with the McColl Site, pursuant to Contract No. | Disputed. The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim. *See* Companies' Evidentiary Objections. As |

| | | |
|---|---|---|
| | 68-W1-0012. (Wright Decl. Schedule 1 at 1.) | demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 34 | Roy F. Weston performed response activities in connection with the McColl Site pursuant to Contract No. 68-03-3482. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 35 | As of July 31, 2018, United States has | Disputed.  The United States has failed |

| | | |
|---|---|---|
| | incurred costs of at least $50,035.50 in payment to Roy F. Weston for Emergency Response Unit response activities it performed in connection with the McColl Site, pursuant to Contract No. 68-03-3482. (Wright Decl. Schedule 1 at 1.) | to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 36 | Pursuant to Contract Nos. 68-01-7456 and 68-D1-0135, ICF Technology, Inc. performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |

| | | |
|---|---|---|
| | | Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 37 | As of July 31, 2018, United States has incurred costs of at least $143,463.70 in payment to ICF Technology, Inc. for response activities it performed in connection with the McColl Site pursuant to Contract No. 68-01-7456, and $157,117.33 pursuant to Contract No. 68-D1-0135. (Wright Decl. Schedule 1 at 1.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 38 | Pursuant to Contract Nos. EPW13029 and EPW06041, ICF Incorporated performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson |

| | | |
|---|---|---|
| | | Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 39 | As of July 31, 2018, United States has incurred costs of at least $2,511.49 in payment to ICF Incorporated for response activities it performed in connection with the McColl Site pursuant to Contract No. EPW13029, and $7,627.59 pursuant to Contract No. EPW06041. (Wright Decl. Schedule 1 at 1.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 40 | Pursuant to Contract Nos. DW96955310, DW6955452, | Disputed.  The United States has failed to submit competent evidence to |

| | | |
|---|---|---|
| | DW96955536, DW96955588, DW96922738, and DW96957990 and through an Interagency Agreement, the U.S. Army Corps of Engineers performed response activities in connection with the McColl Site. | support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 41 | As of July 31, 2018, the United States has incurred costs of at least $348,803.00 in payment to the U.S. Army Corps of Engineers pursuant to the Interagency Agreement and Contract No. DW96955310, $625,047.19 pursuant to Contract No. DW69455452, $99,440.23 pursuant to Contract No. DW96955536, $346,942.92 pursuant to Contract No. DW96955588, $41,445.10 pursuant to Contract No. DW6922738, and $39,053.29 pursuant to Contract No. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by |

| | | |
|---|---|---|
| | DW96957990 for activities performed in connection with the McColl Site. (Wright Decl. Schedule 1 at 1.) | the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 42 | Pursuant to Contract No. 68-W0-0001 Techlaw, Inc. performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 43 | As of July 31, 2018, the United States has incurred costs of $5,093.33 in payment to Techlaw, Inc. for response activities it performed in connection with the McColl Site pursuant to Contract No. 68-W0-0001. (Wright Decl. Schedule 1 at 1.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need |

STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | | additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| | 44 | Pursuant to Contract No. 4U2000NDLX and Contract No. 8U1020NALX, EPA used Federal Express for performance of response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| | 45 | As of July 31, 2018, the United States has incurred costs of $3.99 in payment to Federal Express pursuant to Contract | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this |

| | | |
|---|---|---|
| | No. 4U2000NDLX, and $3.75 pursuant to Contract No. 8U1020NALX for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 1-2.) | Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 46 | Pursuant to Contract No. 68–02-4284, PEI Associates, Inc. performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities |

| | | |
|---|---|---|
| | | taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 47 | As of July 31, 2018, the United States has incurred costs of $1,009,087.02 in payment to PEI Associates, Inc., pursuant to Contract No. 68-02-4284 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 1.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 48 | Pursuant to Contract No. 68-03-3267, ACZ, Inc. Laboratory Division performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts |

STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | | essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| | 49 | As of July 31, 2018, the United States has incurred costs of $1,008.82 in payment to ACZ, Inc. Laboratory Division pursuant to Contract No. 68-03-3267 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 1.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| | 50 | Pursuant to Contract No. 68-C0-0047 PRC/SSC performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing |

| | | | the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 51 | As of July 31, 2018, the United States has incurred costs of $300,000 in payment to PRC/SSC pursuant to Contract No. 68-C0-0047 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 1.) | | Disputed. The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that |

| | | |
|---|---|---|
| | | term is defined by 42 U.S.C. § 9607. |
| 52 | Pursuant to Contract No. 68-C8-0062 Science Applications International Corporation (SAIC) performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 53 | As of July 31, 2018, the United States has incurred costs of $38,953.00 in payment to SAIC pursuant to Contract No. 68-C8-0062 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 1.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this |

| | | |
|---|---|---|
| | | fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 54 | Pursuant to Contract No. 68-S2-9006 Edward Aul & Associates performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 55 | As of July 31, 2018, the United States has incurred costs of $12,250.00 in payment to Edward Aul & Associates pursuant to Contract No. 68-S2-9006 for response activities related to the | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | McColl Site. (Wright Decl. Schedule 1 at 1.) | Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 56 | Pursuant to Contract No. 68-W3-0023 Ronson Management Corporation performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |

| | 57 | As of July 31, 2018, the United States has incurred costs of $207.83 in payment to Ronson Management Corporation pursuant to Contract No. 68-W3-0023 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 1.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| | 58 | Pursuant to Contract Nos. 91091S0128, 9209PR0182, 93093S0047, 9309PR0028, 9809H8S075, and 9809H8S076, EPA used the California Newspaper Service Bureau, Inc. for performance of response activities related to the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, |

STATEMENT OF GENUINE DISPUTES

| | | 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
|---|---|---|
| 59 | As of July 31, 2018, the United States has incurred costs of $41.00, $579.69, $553.67, $386.46, $342.00, and $580.62 in payment to California Newspaper Service Bureau, Inc. pursuant to Contract Nos. 91091S0128, 9209PR0182, 93093S0047, 9209PR0028, 9809H8S075, and 9809H8S076 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 60 | Pursuant to Contract Nos. A8BK0000470 and B2BK0000983, EPA used the Daily Journal Corp. for performance of response activities related to the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As |

| | | |
|---|---|---|
| | | demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 61 | As of July 31, 2018, the United States has incurred costs of $623.52 in payment to Daily Journal Corp. pursuant to Contract No. B2BK0000983 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 62 | Pursuant to Contract No. | Disputed.  The United States has failed |

- 38 -

| | | |
|---|---|---|
| | A8BK0000022, EPA used the Bakersfield California Newspaper for performance of response activities related to the McColl Site. | to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 63 | As of July 31, 2018, the United States has incurred costs of $184.24 in payment to Bakersfield California Newspaper pursuant to Contract No. A8BK0000022 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |

- 39 -

| | | |
|---|---|---|
| | | Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 64 | Pursuant to Contract No. DU1001NBLX, EPA used Dun and Bradstreet for the performance of response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 65 | As of July 31, 2018, the United States has incurred costs of $740.22 in payment to Dun and Bradstreet pursuant to Contract No. DU1001NBLX for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson |

| | | |
|---|---|---|
| | | Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 66 | Pursuant to Contract Nos. FRL61283, 1963S60038, and 1963S80105 EPA used the Government Printing Office for performance of response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 67 | As of July 31, 2018, the United States has incurred costs of $1,755.00 in | Disputed.  The United States has failed to submit competent evidence to |

- 41 -

| | | |
|---|---|---|
| | payment to the Government Printing Office pursuant to Contract No. FRL61283, $2,132.00 pursuant to Contract No. 1963S60038, and $1,895.56 pursuant to Contract No. 1963S80105 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 68 | Pursuant to Contract Nos. 68-R9-0101 and 68-WO-1002, ASRC Aerospace Corp. performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by |

STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | | the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 69 | As of July 31, 2018, the United States has incurred costs of $57,394.79 and $419.10 in payment to ASRC Aerospace Corp. pursuant to Contract Nos. 68-R9-0101 and 68-WO-1002 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. | |
| 70 | Pursuant to Contract Nos. 68-W4-0028 and 68-W9-0052, Labat-Anderson performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need | |

STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | | additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 71 | As of July 31, 2018, the United States has incurred costs of $7,018.94 and $13,785.40 in payment to Labat-Anderson pursuant to Contract Nos. 68-W4-0028 and 68-W9-0052 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 72 | Pursuant to Contract No. 68-W5-0024, Armstrong Data Services, Inc. performed response activities in | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this |

- 44 -

| | | connection with the McColl Site. | Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 73 | As of July 31, 2018, the United States has incurred costs of $43,649.90 in payment to Armstrong Data Services pursuant to Contract No. 68-W5-0024 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities |

| | | |
|---|---|---|
| | | taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 74 | Pursuant to Contract No. 68-01-7251, CH2M Hill performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 75 | As of July 31, 2018, the United States has incurred costs of $135,879.78 in payment to CH2M Hill pursuant to Contract No. 68-01-7251 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts |

| | | |
|---|---|---|
| | | essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 76 | Pursuant to State Cooperative Agreement (SCA) and Contract Nos. 937801, 937802, 940402, 940403, 940404, 940405 and 940406, DTSC performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶14-43. Nothing in the evidence submitted by United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 77 | As of July 31, 2018, the United States has incurred costs of $2,836,787.10, $1,229,850.32, $229,117.45, $136,313.58, $107,659.10, | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing |

| | | |
|---|---|---|
| | $120,564.24, $49,428.12 in payment to DTSC pursuant to the SCA and Contract Nos. 937801, 937802, 940402, 940403, 940404, 940405 and 940406 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 78 | Pursuant to Contract Nos. 68–01-7368 and 68-W0-0037, Ecology and Environment, Inc. performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that |

STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | | term is defined by 42 U.S.C. § 9607. |
| | 79 | As of July 31, 2018, the United States has incurred costs of $161,186.25 and $402,739.70 in payment to Ecology and Environment, Inc. pursuant to Contract Nos. 68-01-7368 and 68-W0-0037 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 3.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| | 80 | Pursuant to Contract No. 68-W9-0008, SAIC performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts |

- 49 -

| | | |
|---|---|---|
| | | essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 81 | As of July 31, 2018, the United States has incurred costs of $73,664.06 in payment to SAIC pursuant to Contract No. 68-W9-0008 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 3.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 82 | Pursuant to Contract No. EPR90603, GRB Environmental Services performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing |

| | | |
|---|---|---|
| | | the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 83 | As of July 31, 2018, the United States has incurred costs of $1,356.65 in payment to GRB Environmental Services pursuant to Contract No. EPR90603 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | | term is defined by 42 U.S.C. § 9607. |
| 84 | Pursuant to Contract No. EPR91202, Toeroek-Herndon Joint Venture performed response activities in connection with the McColl Site. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 85 | As of July 31, 2018, the United States has incurred costs of $49,960.34 in payment to Toeroek-Herndon Joint Venture pursuant to Contract Nos. EPR91202 for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 2.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this |

STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | | fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 86 | Pursuant to the Contract Lab Program, Rudd Group, Inc., Silver Valley, Associated Laboratories, Inc., Columbia Analytical Services, Inc., Weyerhaeuser Analyt. & Testing Services; Chester Labnet, CKY Incorporated Analytical Services; Viar & Company; and Computer Science Corp. performed response activities in connection with the McColl Site. | | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 87 | As of July 31, 2018, the United States has incurred costs of $114,056.84 in payment to Rudd Group, Inc., Silver Valley, Associated Laboratories, Inc., Columbia Analytical Services, Inc., | | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' |

| | | |
|---|---|---|
| | Weyerhaeuser Analyt. & Testing Services; Chester Labnet, CKY Incorporated Analytical Services; Viar & Company; and Computer Science Corp. pursuant to the Contract Lab Program for response activities related to the McColl Site. (Wright Decl. Schedule 1 at 3.) | Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |
| 88 | Interest on the payment Defendants made under the 1994 Partial Consent Decree accruing from July 31, 1993 through the date of payment also constitutes an on-going response cost. Docket No. 270 ¶ 3.f. | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Nothing in the evidence submitted by the United States shows that activities taken were "response" activities as that term is defined by 42 U.S.C. § 9607. |

STATEMENT OF GENUINE DISPUTES

| 89 | The interest that accrued starting July 31, 1993, through January 11, 1995, the date of Defendants' payment, on the amount paid under the 1994 Partial Consent Decree totals $939,708.75. (Wright Decl. ¶ IV.K.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |
| 90 | In the regular course of business, EPA uses the Superfund Cost Recovery Package Image and On-Line System ("SCORPIOS") to track and summarize the voluminous cost documentation for identifying costs for Superfund Sites. | Undisputed. |
| 91 | The SCORPIOS report reflects the amount of each cost type (payroll costs, travel costs, indirect costs, contractor costs, interagency agreement costs, etc.) that EPA incurs at a Site. | As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |
| 92 | EPA issued two Records of Decision | Undisputed. |

| | | | |
|---|---|---|---|
| | | (ROD) relevant to the United States' Motion for Summary Judgment, a Source ROD dated June 30, 1993, and a Groundwater ROD dated May 15, 1996. | |
| | 93 | The Oil Company Defendants generated the hazardous wastes dumped at the McColl Site. | Undisputed.  However, this proposition is misleading because the United States has also been adjudicated a responsible party at the Site as an arranger for certain hazardous wastes at the Site. Christianson Decl. ¶3, Exs. A, B. |
| | 94 | The Oil Company Defendants contracted with Eli McColl to transport and dump their waste at the McColl Site. | Undisputed. |
| | 95 | William Kime, a CPA, describes the calculation for DOJ enforcement costs and indirect costs relative to the McColl Site in two Declarations submitted herewith in support of the United States' Motion for Summary Judgment. | Disputed to the extent that this statement implies that the calculations are accurate or valid. |
| | 96 | William Kime's Declarations summarize the underlying time sheets and other accounting records for direct labor costs and indirect costs incurred by the Justice Department in | Disputed to the extent that the calculations of the costs allegedly incurred by the DOJ are accurate or valid. |

| | | |
|---|---|---|
| | prosecuting the McColl case. | |
| 97 | The DOJ Cost Summaries were prepared under William Kime's supervision and control. (Kime Decl. ¶ 4 & Ex. C ¶ 3.) | Undisputed. |
| 98 | The Department of Justice incurred $2,776,743.05 in response costs related to the McColl Site from October 1, 1990 through September 30, 2019. (Wright Decl. ¶ IV.G.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |
| 99 | Mr. Kime describes the indirect rate methodology used by the Department of Justice. (Kime Decl. ¶ 14-15.) | Disputed as to the validity, accuracy or the appropriateness of the methodology. |
| 100 | Pursuant to William A. Weinischke's Declarations, the attorneys' fees incurred by the United States Department of Justice in connection with the McColl enforcement action are reasonable. (Weinischke Decl. and attached Supp. Decl.) | Disputed.  The United States has failed to submit competent evidence to support this allegation, or to permit this Court of the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary Objections.  In fact, Mr. Kime has testified that he could not |

| | | |
|---|---|---|
| | | testify as to the reasonableness of any of DOJ's costs. *See* Preliminary, Unverified Deposition Transcript of William Kime, 81: 12-17, attached to the Christianson Declaration as Ex. I. |
| 101 | The United States EPA provided the entire Administrative Records related to remedial actions taken in connection with the McColl Site to the Defendants. | Disputed. The United States EPA has made the Administrative Records available to the Companies. However, the United States, through the instant motion, seeks costs well beyond those addressed in the Administrative Record. The Administrative Records are dated June 30, 1993, and May 15, 1996. *See* Motion at 5 n. 6. However, the United States seeks costs through July 31, 2018. *Id.* at 25. |
| 102 | The United States has provided the Defendants with all cost documentation relative to response costs incurred in connection with the McColl Site requested by the Defendants. | Disputed. Since February 2006, the United States has thwarted the Companies' efforts to take discovery by failing to appear or make witnesses available for ten out of eleven duly-noticed depositions, and not providing sufficient responses to the Companies' interrogatories or requests for production of documents. Christianson Decl., ¶ 4, 8-18, 24-28, 40. In fact, during a meet and confer between the |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

parties on January 18, 2006, the Companies confirmed that they would need to conduct discovery on the United States' cost claims if the Companies did not prevail on their claims against the United States. *See* Burch Decl., at ¶ 11.  On February 27, 2006, the Companies informed the United States of its need for additional discovery.  In response, the Companies were instructed that they were not entitled to conduct any discovery. *See* Dragna Decl., ¶¶ 7-9.  The Companies propounded additional discovery and deposition notices on the United States, dated May 7, 2020.  Christianson Decl., ¶ 25, Ex. M.  The United States objected and the Companies withdrew their discovery requests pursuant to a meet and confer telephone call conducted between the parties on June 18, 2020.  Christianson Decl., ¶ 27-29, Ex. O.  On July 7, 2020, the Companies sent the United States a meet and confer letter regarding their intent to file a motion to modify the scheduling order to allow for additional limited

|  |  | discovery regarding the United States' alleged response costs.  Christianson Decl., ¶ 29, Ex. O.  The parties met and conferred on this issue on July 20, 2020.  Christianson Decl., ¶ 38.  As described further in the Companies' Evidentiary Objections, the United States has failed to provide sufficient documentation with respect to its claim. |
|---|---|---|
| 103 | The United States has been determined to be 100% responsible for the benzol waste costs at the McColl Site, and the Defendants are responsible for the remaining, non-benzol, waste costs at the McColl Site. United States v. Shell Oil Co., 294 F.3d 1045, 1062 (9th Cir. 2002). | The cited opinion speaks for itself. However, this alleged fact is misleading in that it omits the fact that the United States has already been adjudged liable for the Companies' costs incurred at the Site in a related contract action in the Court of Federal Claims for which this action was stayed for a period of twelve years pending a final determination of the United States' contested liability. *See* Christianson Decl., ¶¶ 3, 21, Exs. A, B, K. |
| 104 | The United States and Defendants stipulated to allocate 6.25% of all response costs at the McColl Site as the share of benzol waste. Docket No. 507 at 2 n.1. | The cited stipulation speaks for itself. However, this alleged fact is misleading in that it omits the fact that the United States has already been adjudged liable for the Companies' costs incurred at the Site in a related contract action in the |

STATEMENT OF GENUINE DISPUTES

| | | Court of Federal Claims for which this action was stayed for a period of twelve years pending final determination of the United States' contested liability. *See* Christianson Decl., ¶¶ 3, 21, Exs. A, B, K. |
|---|---|---|
| 105 | The total response costs, $52,183,070.79, less 6.25% allocated to benzol waste, result in a total of $48,921,628.87 allocated to non-benzol waste. | Disputed.  The Companies have not had the opportunity to fully conduct verified discovery on this issue, and on this basis, dispute the fact and request a continuance to conduct additional discovery. |

The Companies also contend the following supplemental material facts:

**DEFENDANTS' SUPPLEMENTAL MATERIAL FACTS**

| | **The Companies' Supplemental Material Facts** | **Supporting Evidence** |
|---|---|---|
| 1 | On December 12, 1994, the Court entered a consent decree in this action (the "1994 Consent Decree"). | Dragna Decl., Ex. A. |
| 2 | Under the 1994 Consent Decree, the Companies paid $18 million to reimburse Plaintiffs a portion of their alleged costs at the Site. | Dragna Decl., Ex. A |

| 3 | In exchange for the Companies' payments under the 1994 Consent Decree, Plaintiffs agreed not to seek a final judgment on their alleged costs until the Companies' counterclaims are resolved. | Dragna Decl., Ex. A. |
|---|---|---|
| 4 | The 1994 Consent Decree provides: "No final judgment has been entered in this action from which an appeal as of right may be taken and, by agreement of the parties, no such final judgment shall be entered against the Settling Defendants prior to the entry of judgment on the counterclaims asserted by these defendants in this action." | Dragna Decl., Ex. A. |
| 5 | Given jurisdictional issues, the 1994 | Dragna Decl., Ex. A. |

STATEMENT OF GENUINE DISPUTES

|   | | |
|---|---|---|
| | Consent Decree expressly contemplated that it may be necessary for the Companies to re-file their counterclaims in the Court of Federal Claims. | |
| 6 | The Decree therefore clarifies that "counterclaims" include any claims that, by necessity, would be re-filed in other courts. | Dragna Decl., Ex. A. |
| 7 | Paragraph 14(b) of the 1994 Consent Decree provides:  "Settling Defendants reserve their rights to pursue the claims set forth in their current counterclaims or related claims against the currently named counter defendants ... in either this Court or any other court of appropriate jurisdiction and may name such other agencies of the United States as shown by the evidence to be the appropriate successor agencies to the wartime instrumentalities of the United States." | Dragna Decl., Ex. A. |
| 8 | After entry of the 1994 Consent Decree, the Court subsequently granted summary judgment for the Companies, assigning a 100 percent allocation of costs to the United States. | Taft Decl., ¶ 11; Dragna Decl., Ex. B. |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| 9 | On October 13, 1999, the Court entered a Rule 54(b) Judgment, clearing the way for liability and allocation issues to be appealed. | Dragna Decl., Ex. B. |
| 10 | This 1999 Rule 54(b) Judgment did not nullify the 1994 Consent Decree, nor did it constitute a final judgment of all of claims. | Dragna Decl., Ex. B. |
| 11 | The 1999 Rule 54(b) Judgment provided that the Court retains "jurisdiction over outstanding consent decrees and claims not yet adjudicated"—including the 1994 Consent Decree and the Companies' remaining claims. *Id*. | Dragna Decl., Ex. B. |
| 12 | At no time did the Companies waive their rights under paragraph 14 of the 1994 Consent Decree. | Taft Decl., ¶¶4, 9-11, 14-17 |
| 13 | While the 1999 Rule 54(b) Judgment includes a "whereas" clause reciting the parties' agreement that Plaintiffs "retain all of their rights to pursue their claims for response costs to judgment in this Court," it says nothing as to the timing of such judgments as set forth by the 1994 Consent Decree. | Dragna Decl., Ex. B. |
| 14 | In September 2003, the parties met at | Declaration of Cynthia L. Burch |

- 64 -

| | | |
|---|---|---|
| | EPA's offices in San Francisco. | ("Burch Decl."), ¶3. |
| 15 | The Companies requested the 2003 meeting at EPA to explore a possible stipulation on the amount of Plaintiffs' costs at issue and to obtain relevant cost documents. | Burch Decl., ¶3; Taft Decl., ¶4. |
| 16 | At no time, did the Companies suggest that they would consider waiving their rights under the 1994 Consent Decree to have their contract claims resolved first. | Taft Decl., ¶9. |
| 17 | During the September 2003 meeting at EPA, an EPA records clerk presented several carts of documents she described as supporting Plaintiffs' claims. | Burch Decl., ¶3-4. |
| 18 | In fact, a large portion of the documents presented to the Companies at EPA headquarters in 2003 were technical reports and public comments unrelated to cost documentation. | Burch Decl., ¶3-4. |
| 19 | However, the carts of documents presented to the Companies at EPA headquarters in 2003 also contained actual backup documentation of EPA's past costs, which had not previously been produced. | Burch Decl., ¶3-4. |

| 20 | During the September 2003 meeting at EPA headquarters, the Companies asked counsel for the United States whether these files also included DOJ's costs. | Burch Decl., ¶5. |
|----|---|---|
| 21 | During the September 2003 meeting at EPA headquarters, the United States responded that DOJ' s costs were not included, stating that Plaintiffs needed more time to collect and organize such documents. | Burch Decl., ¶5. |
| 22 | Since the EPA backup documents were presented to the Companies for the first time during the September 2003 meeting and DOJ had not yet compiled its materials, the documentation could not be discussed in any detail at that meeting. | Burch Decl., ¶4. |
| 23 | The Companies subsequently obtained copies of the EPA cost documents made available at the September 2003 meeting. | Burch Decl., ¶6-7. |
| 24 | DOJ failed to provide its own cost documents until January 2006 – only after Plaintiffs notified the Companies of their intent to seek summary judgment. | Burch Decl., ¶6-7. |

STATEMENT OF GENUINE DISPUTES

| 25 | Following the September 2003 meeting, the parties' attention turned to the Companies' contract claims in accordance with the 1994 Consent Decree. | Burch Decl., ¶8. |
| 26 | The parties did not engage in any substantive inquiry into Plaintiffs' cost documentation following the 2003 meeting at EPA headquarters. | Burch Decl., ¶8-9. |
| 27 | After the September 2003 meeting at EPA headquarters, it was understood that Plaintiffs' costs would be examined if necessary after the Companies' claims against the United States are resolved. | Burch Decl., ¶6-11. |
| 28 | By Order dated April 8, 2005, this Court transferred Defendant's contract counterclaims to the Court of Federal Claims following a jurisdictional challenge. | Burch Decl., ¶15. |
| 29 | In 2007, the district court stayed this action to allow the Companies and the United States to resolve their dispute regarding the United States' contract liability in the Court of Federal Claims. | Christianson Decl., ¶19. |
| 30 | The Companies' claims in the Court of Federal Claims are a direct | Taft Decl., ¶15; Christianson Decl., Ex. H. |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | continuation of the counterclaims previously asserted in this Court, seeking the same damages based on the same contract rights. *Id.* | |
| 31 | The Companies were required to file a demand with the United States General Services Administration ("GSA") before proceeding in the Court of Federal Claims. | Christianson Decl., Ex. H. |
| 32 | The Companies submitted their demand to GSA on November 23, 2005, which the GSA rejected on February 15, 2006, clearing the way for the Companies to pursue their claims in the Court of Federal Claims. | Christianson Decl., Ex. H. |
| 33 | On February 24, 2006, the Companies filed their complaint in the Court of Federal Claims. | Christianson Decl., Ex. H. |
| 34 | On February 28, 2006, the Companies' noticed the depositions of Plaintiffs and declarants and served one set of interrogatories and requests for production of documents on each Plaintiff. | Christianson Decl., ¶4. |
| 35 | On March 3, 2006, Plaintiffs filed *ex parte* applications for a protective order, seeking to deprive the | Christianson Decl., ¶12. |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | Companies of their right to this fundamental discovery. | |
| 36 | On March 7, 2006, the Companies filed an opposition to Plaintiffs' *ex parte* applications. | Christianson Decl., ¶12. |
| 37 | As of this date, this Court has not granted Plaintiffs' request for a protective order. | Christianson Decl., ¶12. |
| 38 | Plaintiffs and their declarants failed to appear for nine of the ten depositions noticed for March 9 and 10, 2006. | Christianson Decl., ¶16-18. |
| 39 | Of the depositions noticed, the only one to proceed was of a third-party, responding to a deposition subpoena. | Christianson Decl., ¶16-18. |
| 40 | In late 2016, the Court of Federal Claims held a trial, finding that "all of the acid waste disposed of at the McColl site was 'by reason of' the avgas contracts," *Shell Oil Co. v. United States*, 130 Fed.Cl. 8, 34 (2017), *aff'd*, 896 F.3d 1299 (Fed. Cir. 2018), and awarding the Companies $99,509,847.32 in damages.  (*Id.* at 40) That amount "represented 100 percent of the costs that the [o]il [c]ompanies had incurred at the McColl [s]ite through November 30, 2015, plus the | Christianson Decl., ¶ 21, Ex. K. |

| | | |
|---|---|---|
| | statutory interest on those costs that had accrued up to that point in time." (*Id.*)  The Federal Circuit unanimously affirmed the judgment on July 18, 2018, *see Shell Oil Co. v. United States*, 896 F.3d 1299, 1316 (Fed. Cir. 2018). | |
| 41 | On June 29, 2020, the Court of Federal Claims issued an Opinion and Order further awarding the Companies indemnification and associated interest through the date of payment for remediation costs incurred after November 30, 2015, through November 15, 2019.  *Shell Oil Co. v. United States*, No. 19-1795C, --- Fed.Cl.---, 2020 WL 3618890, at *12 (Fed. Cl. June 29, 2020). | Christianson Decl., ¶ 21, Ex. K. |
| 42 | In reliance on the 1994 Consent Decree, the Companies deferred discovery on Plaintiffs' costs before Plaintiffs' premature summary judgment motions. | Taft Decl., ¶8. |
| 43 | The Companies never stated that they have all the information they need. | Taft Decl., ¶17; Burch Decl., ¶11. |
| 44 | The Companies made clear that discovery will be necessary if the | Burch Decl., ¶11. |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | contract claims do not dispose of all of the United States' claims. | |
| 45 | The Companies propounded additional discovery and deposition notices on the United States dated May 7, 2020. | Christianson Decl., ¶ 25, Ex. M. |
| 46 | The United States objected and the Companies withdrew said discovery requests under a meet and confer telephone call conducted between the parties on June 18, 2020, with the intention of filing a motion to modify the scheduling order to allow for additional necessary discovery. | Christianson Decl., ¶¶ 26-29, Ex. O. |
| 47 | On July 7, 2020, the Companies sent the United States a meet and confer letter regarding their intent to file a motion to modify the scheduling order to all for additional limited discovery. The parties intend to meet and confer on this issue on July 20, 2020. | Christianson Decl., ¶ 31, Ex. Q. |

## DEFENDANT COMPANIES' RESPONSE TO PLAINTIFF'S
## CONCLUSIONS OF LAW

| | MOVING PARTIES ALLEGED CONCLUSIONS OF LAW | RESPONSE |
|---|---|---|
| 1 | The costs incurred by the United States are for response activities associated with the McColl Site. | Disputed.  This is a conclusion of fact and law.  As for the factual portion, the United States has failed to submit |

| | | | |
|---|---|---|---|
| | | | competent evidence to support this allegation, or to permit this Court or the Companies from assessing the truth of this claim.  *See* Defendants' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this mixed question of fact and law. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |
| 2 | The costs incurred by the United States were incurred in response to the release and threat of release of hazardous substances from the McColl Site into the environment. | | Disputed.  This is a conclusion of fact and law.  As for the factual portion, the United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies from assessing the truth of this claim.  *See* Defendants' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this mixed question of fact and law. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. |
| 3 | In ruling on a motion for summary judgment, the Court must determine | | Undisputed. |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact. | |
| 4 | Summary judgment is appropriate whenever the pleadings and evidence establish that there are no genuine issues of any material fact. | Disputed.  The moving party must also be entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(c). |
| 5 | Summary judgment should be granted so long as the evidence before the Court demonstrates that after reasonable time for discovery, there is an absence of evidence to support the nonmoving party's case. | Disputed.  The United States fails to provide any authority for this proposition.  Moreover, the moving party must also be entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).  In any event, the United States' failure to cooperate in the Companies' reasonable discovery requests has deprived the Companies of the opportunity to obtain relevant evidence necessary to test the veracity of the United States' claims |
| 6 | There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a "reasonable jury" to return a verdict for that party. | Disputed.  The United States fails to provide any authority for this proposition. Moreover, the United States' failure to cooperate in the Companies' reasonable discovery requests has deprived the Companies of the opportunity to obtain relevant |

| | | |
|---|---|---|
| | | evidence necessary to test the veracity of the United States' claims. |
| 7 | Evidence that is merely colorable or that is not "significantly probative" does not raise a genuine issue of material fact and the mere possibility that the nonmoving party may discredit the moving party's testimony at trial will not suffice to defeat a properly presented motion. | Disputed.  The United States fails to provide any authority for this proposition. Moreover, the United States' failure to cooperate in the Companies' reasonable discovery requests has deprived the Companies of the opportunity to obtain relevant evidence necessary to test the veracity of the United States' claims. |
| 8 | Pursuant to 42 U.S.C. § 9607(a), the United States is entitled to recover all costs of response actions associated with the McColl Site incurred in a manner not inconsistent with the National Contingency Plan ("NCP"). | Disputed.  The Court may disallow costs improperly claimed as a result of accounting or other factual errors such as double-counting and if the response costs were not incurred at the site in question.  *See US. v. Hardage*, 733 F. Supp. 1424, 1433 (W.D. Okla. 1989); *U.S. v. American Cyanamid Co.*, 786 F. Supp. 152, 158-166 (D.R.I. 1992).  In addition, the United States may only recover attorney fees and costs related to enforcement litigation which are reasonable.  *U.S. v. Chapman*, 146 F.3d 1166, 1176 (9th Cir. 1998).  Moreover, this is a conclusion of fact and law.  As for the factual portion, the United States |

| | | | has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluate the veracity of this mixed question of fact and law.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Furthermore, the United States, as an adjudicated responsible party and a party that has settled liabilities at the Site, cannot now seek to rely on the lower evidentiary standard of "not inconsistent" while conceding that at least some costs were incurred while acting as a Potentially Responsible Party ("PRP") and therefore must be established to be "consistent with" the NCP.  In this case, the government has litigated its own liability, has negotiated and entered into Consent Decrees as a PRP, and has otherwise been active as a PRP in the litigation.  The United States should be |

| | | | |
|---|---|---|---|
| | | | held to the higher standard as a PRP. |
| | 9 | Pursuant to 42 U.S.C. § 9613(j)(1), the scope of the Court's review of whether any response action selected by the United States is inconsistent with a specific provision of the NCP is limited to the administrative record before the United States at the time the response action was selected. | Undisputed to the extent that this is the general rule.  However, courts have recognized exceptions such as where the United States introduces evidence outside of the administrative record or if there is evidence that the United States acted improperly in withholding information from the administrative record. |
| | 10 | Pursuant to 42 U.S.C. § 9613(j)(2), the standard the Court shall apply in such review is the "arbitrary and capricious" standard of review. | Undisputed to the extent that this is the general rule.  The Court, however, may conduct *de novo* review of the United States' remedy challenges under certain circumstances.  Reviewing for costs improperly claimed as a result of accounting or other factual errors such as double-counting and if the response costs were not incurred at the site in question are reviewed *de novo*.  *See Hardage*, 733 F. Supp. at 1433; *American Cyanamid*, 786 F. Supp. at 158-166.  Moreover, where the administrative record is deficient, Court may review challenges to the government's selection of response |

| | | | |
|---|---|---|---|
| | | | actions *de novo*. As Congress has stated: "If major deficiencies are shown to exist in the administrative record that has been assembled, judicial review of the response in an enforcement or cost recovery action may be *de novo*, i.e., open to the introduction of evidence by all parties." (S. Rep. No. 99-11 at 57-58 (1985).) This recognition by Congress is consistent with prior United States Supreme Court precedent holding that *de novo* review of agency action may be appropriate under certain circumstances. (*See* 42 U.S.C. § 9613(j)(l); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).) |
| 11 | Once the United States has established that the costs were incurred for response actions associated with the McColl Site, the burden shifts to the Defendants to show the response costs were incurred in a manner inconsistent with the NCP. | | Disputed to the extent that the United States claims that NCP inconsistency is the only way to challenge its cost claim. The Court may also disallow costs improperly claimed as a result of accounting or other factual errors such as double-counting and if the response costs were not incurred at the site in question. *See Hardage*, 733 F. Supp. at |

- 77 -

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | | 1433; *American Cyanamid*, 786 F. Supp. at 158-166.  In addition, the United may only recover attorney fees and costs related to enforcement litigation that are reasonable.  *Chapman*, 146 F.3d at 1176.  Furthermore, the United States, as an adjudicated responsible party and a party that has settled liabilities at the Site, cannot now seek to rely on the lower evidentiary standard of "not inconsistent" while conceding that at least some costs were incurred while acting as a PRP and therefore must be established to be "consistent with" the NCP.  In this case, the government has litigated its own liability, has negotiated and entered into Consent Decrees as a PRP, and has otherwise been active as a PRP in the litigation.  The United States should be held to the higher standard as a PRP. |
| 12 | In evaluating a claim of inconsistency with the NCP, the NCP to be applied is the NCP in effect at the time the response action was undertaken, not the one in effect at the time the Court evaluates the claim for response costs. | Undisputed. |

| 13 | The only challenge available to the Defendants is whether the selection of response actions underlying those costs was "not inconsistent with the NCP." | Disputed.  The Companies may also challenge costs improperly claimed as a result of accounting or other factual errors such as double-counting. *American Cyanamid Co.*, 786 F. Supp. at 158-166.  Furthermore, the United States, as an adjudicated responsible party and a party that has settled liabilities at the Site, cannot now seek to rely on the lower evidentiary standard of "not inconsistent" while conceding that at least some costs were incurred while acting as a PRP and therefore must be established to be "consistent with" the NCP.  In this case, the government has litigated its own liability, has negotiated and entered into Consent Decrees as a PRP, and has otherwise been active as a PRP in the litigation.  The United States should be held to the higher standard as a PRP. |
| 14 | The Defendants must not only establish that selection of the response actions was inconsistent with a specific provision of the NCP, they must also establish that the Governments were arbitrary and capricious in the | Disputed.  The Companies may also demonstrate and the Court may disallow costs improperly claimed as a result of accounting or other factual errors such as double-counting and if the response costs were not incurred at the site in |

| | | |
|---|---|---|
| | discharge of their duties under the NCP, and that as a result of such actions the costs were demonstrably excessive. | question. *See Hardage*, 733 F. Supp. at 1433; *American Cyanamid*, 786 F. Supp. at 158-166.  Furthermore, the United States, as an adjudicated responsible party and a party that has settled liabilities at the Site, cannot now seek to rely on the lower evidentiary standard of "not inconsistent" while conceding that at least some costs were incurred while acting as a PRP and therefore must be established to be "consistent with" the NCP.  In this case, the government has litigated its own liability, has negotiated and entered into Consent Decrees as a PRP, and has otherwise been active as a PRP in the litigation. |
| 15 | The issue of whether the response activities were incurred in a manner inconsistent with the NCP must be based on the administrative record applying the arbitrary and capricious standard of review. | Undisputed to the extent that this is the general rule.  The Court, however, may conduct *de novo* review of the United States' remedy challenges under certain circumstances.  As Congress has stated: "If major deficiencies are shown to exist in the administrative record that has been assembled, judicial review of the response in an enforcement or cost recovery action may be *de novo*, i.e., |

STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | | open to the introduction of evidence by all parties." (S. Rep. No. 99-11 at 57-58 (1985).) This recognition by Congress is consistent with prior United States Supreme Court precedent holding that *de novo* review of agency action may be appropriate under certain circumstances. (*See* 42 U.S.C. § 9613(j)(1); *Volpe*, 401 U.S. at 415.) |
| 16 | The response activities conducted by the United States with respect to the McColl were not inconsistent with the NCP. | | Disputed. This is a conclusion of fact. The United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies from assessing the truth of this claim. *See* Defendants' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this mixed question or fact and law. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. Furthermore, the United States, as an adjudicated responsible party and a party that has settled liabilities at the Site, cannot now seek to rely on the lower evidentiary standard of "not |

| | | | |
|---|---|---|---|
| | | | "inconsistent" while conceding that at least some costs were incurred while acting as a PRP and therefore must be established to be "consistent with" the NCP.  In this case, the government has litigated its own liability, has negotiated and entered into Consent Decrees as a PRP, and has otherwise been active as a PRP in the litigation. |
| 17 | A summary of the voluminous cost documentation, which was maintained in the ordinary course of EPA's business, associated with the McColl Site is admissible in lieu of all the underlying documents pursuant to Fed. R. Ev*id.* 1006. | | Disputed.  The summaries provided by United States in support of its motion for partial summary judgment is inadmissible because (1) it failed to make available the person who prepared those summaries, (2) the summaries are based on inadmissible evidence, and (3) the United States failed to provide all underlying documents.  *See* Companies' Evidentiary Objections. |
| 18 | In CERCLA, Congress intended that the parties who contributed to hazardous waste sites such as the McColl Site, rather than the public, should bear all costs incurred by the United States in actions taken in response to the release and threat of release of hazardous substances at such | | Disputed.  The United States provides no authority for this proposition. Moreover, this is neither a conclusion of fact or law, but rather, speculation as to Congressional intent, about which the United States provides no evidence. This proposition is misleading because the United States has also been |

| | |
|---|---|
| sites. | adjudicated a responsible party at the Site.  The United States purposely omits the fact that it refused to settle its liabilities or to even recognize its obligations as a PRP and had to be forced to accept its CERCLA responsibility at the Site.  The United States fully waived its sovereign immunity in regards to CERCLA as such the United States is fully responsible for its own polluting activities.  As such, in this case the term "parties" as cited by the United States here, includes the United States itself.  Furthermore, the United States has been found to owe full indemnity obligations to the Companies' for their response costs at the Site in the Court of Federal Claims.  *See* Christianson Decl. ¶¶ 21, 30, Exs. K, P.  The Court of Federal Claims also attributed the increase in interest to the United States' refusal to accept responsibility for its actions.  *See Shell Oil Co.*, 130 Fed. Cl. at 11. (The Companies "are entitled to $99,590,847.32, including $30,991,111.02 in interest which the |

| | | |
|---|---|---|
| | | U.S. taxpayers could have avoided paying, if the Government had lived up to its obligations, instead of wasting years in litigation.") (emphases added); Christianson Decl. ¶ 21, Ex. K. |
| 19 | To achieve its purpose, Congress enacted the Section 107 strict liability and cost recovery provisions of CERCLA. | Disputed.  The United States provides no authority for this proposition. Moreover, this is neither a conclusion of fact or law, but rather, speculation as to Congressional intent, about which the United States provides no evidence. This proposition is also misleading in that it omits that Congress also enacted the CERCLA Section 113 contribution provisions to allocate costs among PRPs where, as here, the plaintiff is itself liable for response costs at the site. |
| 20 | Section 101(23) of CERCLA, 42 U.S.C. § 9601(23), defines the term "remove" or "removal" to mean:  the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to | Undisputed. |

| | | |
|---|---|---|
| | monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition . . . action taken under Section 9604(b) of this title, . . . | |
| 21 | The definition of removal also includes, by explicit reference, the kinds of actions specified in Section 104(b) of CERCLA, 42 U.S.C. § 9604(b). That Section provides: Whenever the President is authorized to act pursuant to subsection (a) of this section, . . . he may undertake such investigations, monitoring, surveys, testing, and other information gathering as he may deem necessary or appropriate to identify the existence and extent of the release or threat thereof, the source and nature of the hazardous substances, pollutants or | Undisputed. |

| | | |
|---|---|---|
| | contaminants involved, and the extent of the danger to the public health or welfare or to the environment. In addition, the President may undertake such planning, legal, fiscal, economic, engineering, architectural, and other studies or investigations as he may deem necessary or appropriate to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of this chapter. | |
| 22 | Subsection (a), referred to in Section 104(b), provides authority to act "[w]henever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare . . . ." 42 U.S.C. § 9604(a)(1). | Undisputed. |
| 23 | Investigation, site work, and enforcement activities such as those undertaken in connection with the McColl Site are all response actions | Disputed.  This is a conclusion of fact and law.  As for the factual portion, the United States has failed to submit competent evidence to support this |

| | |
|---|---|
| expressly authorized by Section 104(b). | allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to assess the veracity of this mixed question of fact and law.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  Moreover, CERCLA does not permit recovery of all litigation costs, but only those "reasonable costs" incurred in relation to enforcement of CERCLA.  42 U.S.C. § 9601(25).  This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not recoverable.  Christianson Decl. ¶¶ 21, 30, Exs. K, P. |

| 24 | The term "remedy" or "remedial" action refers to long-term cleanups and is defined in Section 101(24) of CERCLA as: those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as . . . any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment . . . . | Undisputed. |
| 25 | The terms "removal" and "remedial" are both considered to be "response" actions. | Undisputed. |
| 26 | Section 101(25) of CERCLA defines "respond" or "response" to mean "remove, removal, remedy, and remedial action" and clarifies that "all | Undisputed. |

| | | such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25). | |
|---|---|---|---|
| | 27 | The recovery of "all costs of removal or remedial action" under Section 107(a)(4) includes recovery of all response costs incurred by the United States. | Disputed.  This is a conclusion of fact and law.  As for the factual portion, the United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to assess the veracity of this mixed question of fact and law.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not recoverable. The United States purposely omits the fact that it refused to settle its liabilities |

- 89 -

| | | |
|---|---|---|
| 1 | | or to even recognize its obligations as a |
| 2 | | PRP and had to be forced to accept its |
| 3 | | CERCLA responsibility at the Site.  The |
| 4 | | United States fully waived its sovereign |
| 5 | | immunity in regards to CERCLA as |
| 6 | | such the United States is fully |
| 7 | | responsible for its own polluting |
| 8 | | activities.  As such, in this case the term |
| 9 | | "parties" as cited by the United States |
| 10 | | here, includes the United States itself. |
| 11 | | Furthermore, the United States has been |
| 12 | | found to owe full indemnity obligations |
| 13 | | to the Companies' for their response |
| 14 | | costs at the Site in the Court of Federal |
| 15 | | Claims.  *See* Christianson Decl. ¶¶21, |
| 16 | | 30, Exs. K, P.  The Court of Federal |
| 17 | | Claims also attributed the increase in |
| 18 | | interest to the United States' refusal to |
| 19 | | accept responsibility for its actions.  *See* |
| 20 | | *Shell Oil Co.*, 130 Fed. Cl. at 11. (The |
| 21 | | Companies "are entitled to |
| 22 | | $99,590,847.32, including |
| 23 | | $30,991,111.02 in interest which the |
| 24 | | U.S. taxpayers could have avoided |
| 25 | | paying, if the Government had lived up |
| 26 | | to its obligations, instead of wasting |
| 27 | | years in litigation.")  *Id*. (emphases |
| 28 | | |

| | | added). |
|---|---|---|
| 28 | Investigation and monitoring activities are expressly authorized under Section 101(23), which permits "such actions as may be necessary to monitor, assess and evaluate the release or threat of release of hazardous substances." 42 U.S.C. § 9601(23). | Undisputed. |
| 29 | Courts have held that investigative costs are recoverable from parties liable under Section 107(a)(4). | Undisputed.  However, the Companies contest the fact that any such costs are at issue in this action. |
| 30 | Costs of designing and implementing response actions are specifically authorized under Section 104(b) of CERCLA, which provides that "the President may undertake such planning . . . engineering, architectural, and other studies or investigations . . . to plan and direct response actions . . . ." 42 U.S.C. § 9604(b). | Undisputed. |
| 31 | Enforcement and litigation costs are recoverable as Section 104(b) and Section 101(25) response actions. Section 104(b) authorizes recovery of legal and enforcement expenses incurred in seeking to recover costs from responsible parties: "the | Disputed.  Costs of enforcement activities related to response actions are generally recoverable as response costs under CERCLA.  *See* 42 U.S.C § 9601(25).  The United States, however, may only recover attorney fees and costs related to enforcement litigation that are |

| | | | |
|---|---|---|---|
| | | President may undertake such planning, legal . . . and other studies and investigations . . . to plan and direct response actions, to recover the costs thereof, and to enforce the provisions of the chapter." 42 U.S.C. § 9604(b). | reasonable.  *Chapman*, 146 F.3d at 1176.  This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not recoverable.  Christianson Decl. ¶ 21, 30, Exs. K, P. |
| | 32 | Courts have held that CERCLA explicitly allows the recovery of litigation costs from liable parties. | Disputed.  The United States provides no authority for this proposition.  Costs of enforcement activities related to response actions are generally recoverable as response costs under CERCLA.  *See* 42 U.S.C. § 9601(25).  The United States, however, may only recover attorney fees and costs related to enforcement litigation that are reasonable.  *Chapman*, 146 F.3d at 1176.  This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not |

| | | |
|---|---|---|
| | | recoverable.  Christianson Decl. ¶¶ 21, 30, Exs. K, P. |
| 33 | Courts have held that the costs of investigations, including sampling and testing, are recoverable from liable parties. | Undisputed as a general statement of the law, subject to a demonstration that the costs sought are part of a necessary response action and incurred consistent with the NCP.  This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not recoverable.  Christianson Decl. ¶¶ 21, 30, Exs. K, P. |
| 34 | Costs of administration, including indirect costs, associated with cleanups and related enforcement activities are recoverable. | Undisputed as a general statement of the law.  The United States, however, may only recover attorney fees and costs related to enforcement litigation that are reasonable.  *Chapman*, 146 F.3d at 1176.  This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not |

| | | | |
|---|---|---|---|
| | | | recoverable.  Christianson Decl. ¶¶ 21, 30, Exs. K, P. |
| 35 | Courts have upheld the Governments' right to recover administrative costs calculated on an indirect basis in CERCLA actions. | | Undisputed as a general statement of the law, subject to an adequate demonstration that such costs relate to the site and are otherwise not inconsistent with NCP.  This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not recoverable.  Christianson Decl. ¶¶ 21, 30, Exs. K, P. |
| 36 | Indirect costs are overhead costs for EPA and DTSC to administer the Superfund program and for the United States and California Departments of Justice to litigate Superfund enforcement actions. | | Disputed.  This is a conclusion of fact and law.  As for the factual portion, the United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to contesting this mixed question of fact and law.  *See* |

- 94 -

| | | |
|---|---|---|
| | | Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not recoverable. Christianson Decl. ¶¶ 21, 30, Exs. K, P. |
| 37 | Inconsistency with the NCP is the only defense to the United States' claim for cost recovery after they have established that response costs were incurred. Terms used such as improper, speculative, remote, unreasonable, not cost-effective, and unnecessary do not state an appropriate challenge to the United States' response costs. | Disputed.  This statement contradicts the United States' conclusion of law number 13.  The Companies may also demonstrate and the Court may disallow costs improperly claimed as a result of accounting or other factual errors such as double-counting and if the response costs were not incurred at the site in question.  *See Hardage*, 733 F. Supp. at 1433; *American Cyanamid Co.*, 786 F. Supp. at 158-166.  Furthermore, the United States, as an adjudicated responsible party and a party that has settled liabilities at the Site, cannot now seek to rely on the lower evidentiary standard of "not inconsistent with the NCP" while conceding that at least some |

| | | |
|---|---|---|
| | | costs were incurred while acting as a PRP and therefore such costs must be established to be "consistent with" the NCP.  In this case, the government has litigated its own liability, has negotiated and entered into Consent Decrees as a PRP, and has otherwise been active as a PRP in the litigation.  Therefore, the United States, due to its own actions, is limited to the same evidentiary standard as any other party, at a minimum for those costs that were incurred as a PRP rather than an oversight agency. |
| 38 | Recovery of prejudgment interest is expressly authorized under Section 107(a)(4) of CERCLA, which provides for interest on the amounts recoverable under subparagraphs (A) through (D) of Section 107(a)(4). "Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned." 42 U.S.C. § 9607(a)(4). | Undisputed as a general statement of the law, subject to an adequate demonstration of entitlement to such interest.  Although this proposition is misleading in that it omits that fact that the Court of Federal Claims found the Companies "are entitled to $99,590,847.32, including $30,991,111.02 *in interest which the U.S. taxpayers could have avoided paying, if the Government had lived up to its obligations, instead of wasting years in litigation*." *Shell Oil Co.*, 130 Fed. Cl. at 11 |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | | (emphases added). *See* Christianson Decl. ¶¶ 21, 30, Exs. K, P. |
| 39 | Recovery of "all costs of removal or remedial action" includes investigative, enforcement, litigation, indirect costs and interest, as well as direct costs of cleanup activities, all of which were undertaken in connection with the McColl Site. | Disputed. This is a conclusion of fact and law. As for the factual portion, the United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim. *See* Companies' Evidentiary Objections. As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this mixed question of fact and law. *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not recoverable. Christianson Decl. ¶¶ 21, 30, Exs. K, P. |
| 40 | All of the costs for which the United States seeks reimbursement in this | Disputed. This is a conclusion of fact and law. As for the factual portion, the |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | motion clearly fall within the categories of recoverable costs described herein. | United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies to assess the truth of this claim.  *See* Companies' Evidentiary Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this mixed question of law and fact.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43.  This proposition is misleading since the United States has also been adjudicated a responsible party at the Site with its own costs related to its status as a PRP (i.e., costs associated with negotiating Consent Decrees with the State of California) which are not recoverable.  Christianson Decl. ¶¶ 21, 30, Exs. K, P. |
| 41 | In accordance with CERCLA, the United States is entitled to recover from the Defendants the costs allocated to the non-benzol waste at the McColl Site, $48,921,628.87, and interest on the amount paid under the 1994 Consent Decree, $939,708.75, for | Disputed.  This is a conclusion of fact and law.  As for the factual portion, the United States has failed to submit competent evidence to support this allegation, or to permit this Court or the Companies from assessing the truth of this claim.  *See* Companies' Evidentiary |

STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | a total of $49,861,337.62. | Objections.  As demonstrated in the Christianson Declaration, the Companies need additional discovery to obtain facts essential to evaluating the veracity of this mixed question of fact and law.  *See* Christianson Decl. ¶¶ 4, 8-18, 24-28, 40; Pimentel Decl. ¶¶ 14-43. In addition, the allocation was to the parties not to the waste type. There is no part of CERCLA that allocates liability to a waste type.  The United States is attempting to mislead the Court into believing that the United States is not an adjudicated, recalcitrant PRP at the Site and is subject to CERCLA both substantively and procedurally. |
| 42 | To the extent that any of the foregoing Conclusions of Law are deemed to be uncontroverted facts, they are incorporated into the Statement of Uncontroverted Facts | This is a legal conclusion to which L.R. 56-2 requires no response here.  This is an improper attempt to ask the Court to mischaracterize the law.  For the reasons stated above, the United States' asserted Conclusions of Law should be stricken. |

STATEMENT OF GENUINE DISPUTES

1    Respectfully submitted,

2    Dated:   August 10, 2020        **ALSTON & BIRD LLP**

3

4                                     By:   /s/Greg A. Christianson
                                             Greg Christianson

5                                     Attorney for Defendants
                                      SHELL OIL COMP ANY, TEXACO INC.,
6                                     ATLANTIC RICHFIELD COMPANY, AND
                                      UNION OIL COMPANY OF CALIFORNIA
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATEMENT OF GENUINE DISPUTES